1

2

3

4

5

6

7 **IN THE UNITED STATES DISTRICT COURT**

8 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10 MARK STAMAS and JUDY CASTLES,          CASE NO. CV F 09-0753 LJO SMS

11                     Plaintiffs,        **ORDER ON DEFENDANTS'**
                  vs.                   **MOTION TO DISMISS AND TO STRIKE**
12
   COUNTY OF MADERA, et al.,
13
                     Defendants.
14 _____/

15          By notice filed on July 1, 2009, Defendants County of Madera, Board of Supervisors of the

16 County of Madera ("Madera"), David Herman, Shawn Huston and David Prentice (all collectively

17 referred to as "defendants") move for dismissal of Plaintiffs' First, Second, Third, Sixth, Seventh,

18 Eighth, Ninth, and Tenth Causes of Action in the Complaint, pursuant to Fed.R.Civ.P 12(b)(6).

19 Madera also moves to strike the allegations pertaining to punitive damages pursuant to Rule 12(f).

20 Plaintiffs Mark Stamas and Judy Castles filed an opposition on July 30, 2009.  Defendants filed a

21 reply brief on August 7, 2009.  Pursuant to Local Rule 78-230(h), this matter is submitted on the

22 pleadings without oral argument.  Therefore, the hearing set for August 20, 2009 is VACATED.

23 Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court

24 issues the following order.

25                          **FACTUAL BACKGROUND**

26 **A.      Factual Overview**

27          This action involves a complicated set of facts relating to conflicting claims to an easement

28 or private right-of-way, which was created, modified, or revised over a 100-year time span and

1

whose ownership is in dispute.  In plaintiffs' 32-page, 133-paragraph complaint, the Court gleams that plaintiffs claim a right to an easement on Cascadel Road.  Plaintiffs contend they are entitled to access to a 60-foot wide street, and not a 6-foot to 12-foot road, which plaintiffs complain Madera now limits plaintiffs.  Plaintiffs contend the County of Madera has not done enough to ensure the right-of-way is granted or has it enforced its ordinances as they pertain to the right-of-way.  Plaintiffs contend that Madera wrongfully prosecuted plaintiff Mark Stamas for attempting to maintain Cascadel Road. It appears that plaintiffs seek to compel Madera to accept an offer of dedication of a 60-foot wide easement.

At issue in this motion are the First, Second, Third, Sixth, Seventh, Eighth, Ninth, and Tenth causes of action, as follows:

1.      First Cause of Action - Abuse of Process;

2.      Second Cause of Action - Violation of Due Process, 42 U.S.C. §1983;

3.      Third Cause of Action - Violation of Equal Protection, 42 U.S.C. §1983;

4.      Sixth Cause of Action - Breach of Contract;

5.      Seventh Cause of Action - Public Nuisance;

6.      Eighth Cause of Action - Violation of Due Process under the California Constitution;

7.      Ninth Cause of Action - Violation of Equal Protection under the California; Constitution;

8.      Tenth Cause of Action - Enforcement of Easement Maintenance Rights (Civ. Code §845).

**B.      Summary of Pertinent Allegations**

Plaintiffs are the owners of Lot 38 of Subdivision No. 4 in the Cascadel Woods Subdivision in Madera County.  The Cascadel Woods Subdivision is located in a mountainous portion of the County.  Plaintiffs' property abuts Cascadel Road which is the main ingress and egress to the Subdivision. (Doc. 1, Complaint ¶3.)  Cascadel Road through the subdivision is a privately owned and maintained public access road.  (Doc. 1, Complaint ¶8.)  When the Cascadel Woods Subdivision map was recorded in 1963, the map showed all roads as having a sixty (60) foot easement dedicated

1   for private roads.[1]   (Doc. 1, Complaint ¶23.)  The developer of the Cascadel Woods Subdivision,

2   Cascadel Ranch Properties, Inc., offered for dedication the sixty (60) foot right-of-way as a street

3   right-of-way ("1967 Dedication"). The offer of dedication was recorded but never accepted by

4   Madera. (Doc.1, Complaint ¶24-25.)

5        Cascadel Ranch Properties, Inc. originally owned the property which is now owned by

6   defendants Gerald Houston[2] and Linda Barlow, who own Lot 1 in the Cascadel Woods Subdivision.

7   (Doc. 1, Complaint ¶ 25.)  The Houston/Barlow property abuts and "incorporates" portions of

8   Cascadel Road.  (Doc. 1, Complaint ¶5.)  On May 26, 1972, the property underlying the Cascadel

9   Road right-of-way was excepted from the deed for the property now owned by Houston/Barlow.

10  This exception appeared in the deed to Houston and Barlow, and refers to the 60 foot right-of-way

11  offered for dedication recorded on July 11, 1969. (Doc. 1, Complaint ¶ 26.)  The excepted,

12  underlying property is owned by Cascadel New Life Foundation, Inc., which is an affiliate of the

13  developer Cascadel Ranch Properties.  (Doc. 1, Complaint ¶ 26.)

14       A dispute arose among the parties to this litigation as to the use of Cascadel Road and the

15  ownership of the underlying property.  Houston/Barlow claimed ownership to the underlying

16  property of Cascadel Road as the road passes over their property.  Houston/Barlow filed a civil

17  action in Madera County Superior Court against Madera County and plaintiffs Stamas and Castles,

18  among others. (Doc.1, Complaint ¶¶31-34.)  Houston/Barlow and Madera settled the dispute in

19  which Madera executed a Quit Claim deed ("2007 Quitclaim Deed") quitclaiming any interest in

20  Cascadel Road and the ownership of the underlying property.  As part of the settlement,

21  Houston/Barlow offered for dedication an area consisting of 12 foot wide portion of Cascadel Road

22  as it passes through the Houston/Barlow property.  Plaintiffs contend that the Houston/Barlow

23  dedication attempts to deprive the plaintiffs to at least 48 feet of longstanding deeded and historical

24

25       [1] The Complaint does not indicate if the map filed in 1963 was a parcel map or a subdivision map.  For subdivisions of five or more parcels, the currently enacted Subdivision Map Act (Govt Code §§66410-66499.37), generally establishes the standards and procedures for all division of land in California.  A parcel map is required for subdivision of four or fewer

26  parcels and has limited conditions.  See Govt Code §§66426, 66428, 66463.

27       [2] The names of two of parties are similar, but are spelled differently.  Defendant Shawn **Huston** is an employee of Madera County.  Defendant Gerald **Houston** is the property owner in the Cascadel Woods Subdivision.  (See Doc. 33,

28  Request for Judicial Notice, p. 10 of 18.)  For purposes of this motion, the Court will accept these spellings.

1  public access.  (Doc. 1, Complaint ¶38.)

2  <u>**ANALYSIS AND DISCUSSION**</u>

3  **A.**    **Standards for The Motions**

4       **1.**    <u>**Standard for Motion to Dismiss**</u>

5       A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of

6  the pleadings set forth in the complaint.   A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there

7  is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

8  cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  In

9  considering a motion to dismiss for failure to state a claim, the court generally accepts as true the

10 allegations of the complaint in question, construes the pleading in the light most favorable to the

11 party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v.*

12 *Behrens,* 546 F.3d 580, 588 (9th Cir. 2008); *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*,

13 396 U.S. 869 (1969).

14      To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to

15 relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974

16 (2007).  A claim has facial plausibility,"when the plaintiff pleads factual content that allows the court

17 to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

18 *Iqbal*, – U.S. –, 129 S.Ct. 1937 (2009).  "[F]or a complaint to survive a motion to dismiss, the

19 non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

20 suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, – F.2d –, 2009

21 WL 2052985, 6 (9th Cir. 2009).

22      A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences

23 and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v.*

24 *American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted).  "While a complaint

25 attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

26 obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

27 conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

28 550 U.S. 554,127 S. Ct. 1955, 1964-65 (internal citations omitted).  Moreover, a court "will dismiss

4

1  any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently

2  all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629,

3  634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either direct or inferential

4  allegations respecting all the material elements necessary to sustain recovery under some viable legal

5  theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969.  If a plaintiff fails to state a claim, a court

6  need not permit an attempt to amend a complaint if "it determines that the pleading could not

7  possibly be cured by allegation of other facts."  *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection

8  Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

9       **2.    Standards for Motion to Strike**

10       Fed. R. Civ. P. 12(f) empowers a court to strike from a pleading "any redundant, immaterial,

11  impertinent, or scandalous matter."  Motions to strike may be granted if "it is clear that the matter to

12  be stricken could have no possible bearing on the subject matter of the litigation."  *LeDuc v.

13  Kentucky Central Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992); *Colaprico v. Sun

14  Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991).  "[T]he function of a Rule 12(f)

15  motion to strike is to avoid the expenditure of time and money that must arise from litigating

16  spurious issues by dispensing with those issues prior to trial."  *Sidney-Vinstein v. A.H. Robins Co.*,

17  697 F.2d 880, 885 (9th Cir. 1983); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993),

18  *rev'd on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023 (1994).  "[A] motion

19  to strike may be used to strike any part of the prayer allege relief when the damages sought are not

20  recoverable as a matter of law."  *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479, n. 34 (C.D. Cal.

21  1996).

22       With these standards in mind, this Court turns to Madera's challenges to plaintiffs' claims.

23  **B.    First Cause of Action for Abuse of Process**

24       The First Cause of Action for Abuse of Process alleges that plaintiff Stamas was charged

25  with criminal violations for allegedly asserting the rights of the residents for adequate access to the

26  subdivision.  Plaintiff Stamas was charged with various forms of "obstruction" to "county highways"

27  while he was attempting to perform road maintenance.  (Doc. 1, Complaint ¶74.)  Plaintiff Stamas

28  alleges that defendants wrongfully used the criminal courts for County Code enforcement efforts

related to the plaintiff's road maintenance efforts.  (Doc. 1, Complaint ¶76.)  Plaintiff alleges that the defendants used "willful abuse of the criminal legal process for improper purposes."  (Doc. 1, Complaint ¶ 77.)  The First Cause of Action names as, as relevant to this motion, defendants David Herman, Shawn Huston and David Prentice.  The complaint alleges the capacity of the named defendants as follows.  The County of Madera is a Political Subdivision of the State of California.  Defendant Shawn Huston is a Madera County Deputy District Attorney. Defendant David Herman is a Deputy County Counsel for the County of Madera and responsible for the criminal prosecution of plaintiff.  Defendant David Prentice is Madera County Counsel.  (Complaint ¶¶12-14.)

Defendants argue that the First Cause of Action is not one for abuse of process, but a cause of action for malicious prosecution.  In their opposition, however, plaintiffs confirm that they are seeking "redress for abuse of process."  (Doc. 31, Plaintiff's Opposition p.3.)

Under California law, the tort of abuse of process requires misuse of a judicial process. *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019 (9th Cir.), *cert. denied*, 129 S.Ct 174 (2008).  The essence of the tort lies in the misuse of the power of the court. It is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice. *Woodcourt II Limited v. McDonald Co.*, 119 Cal.App.3d 245, 252, 173 Cal.Rptr. 836, 840 (1981).  To succeed in an action for abuse of process under California law, a litigant must establish that the defendant: (1) contemplated an ulterior motive in using the judicial process, and (2) committed a willful act in the use of that process not proper in the regular conduct of the proceedings. *Estate of Tucker ex rel. Tucker*, 515 F.3d at 1037.

The mere filing of a complaint or maintenance of a lawsuit, even for an improper purpose, does not constitute an abuse of process.  *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.,* 42 Cal.3d 1157, 232 Cal.Rptr. 567 (1986) (allegation that Environmental Quality Act action was improperly instituted was insufficient to state cause of action for abuse of process); *Trear v. Sills*, 69 Cal.App.4th 1341, 1359, 82 Cal.Rptr.2d 281, 293 (1999) (the tort requires abuse of legal process, not just filing suit. Simply filing a lawsuit for an improper purpose is not abuse of process.)

Plaintiff Stamas alleges that "Madera County Counsel wrongfully filed a criminal complaint" for plaintiffs' attempt to conduct road maintenance.  (Doc. 1, Complaint ¶77.)  Plaintiff alleges that

1   the "charges against Plaintiff Stamas in [the criminal action] were brought in response to a complaint

2   made to the County by the Houstons."  (Doc. 1, Complaint ¶71.)  Plaintiff alleges that this act was

3   "willful abuse of the criminal legal process for improper purposes. . ."  (Doc. 1, Complaint ¶78.)

4   Other wrongful conduct alleged in the complaint is that "defendant Huston threatened Mr. Stamas

5   personally with trespass, vandalism and other charges if he did not settle and stay of the Subject

6   Area."  (Doc. 1, Complaint ¶79.)

7        Here, the allegations cannot support a claim for abuse of process because the filing of a

8   lawsuit is not an abuse of process.  The only other allegation of wrongful conduct is the threats of

9   additional prosecution.  However, the complaint does not allege that the <u>court's process</u> was misused

10   in these threats, and therefore, the allegations cannot support a claim for abuse of process. The

11   threats are not an act done in the name of the court and under the power of the Court.  *Estate of*

12   *Tucker ex rel. Tucker,* 515 F.3d at 1037 ("[T]he essence of the tort 'abuse of process' lies in the

13   misuse of the power of the court; it is an act done in the name of the court and under its authority for

14   the purpose of perpetrating an injustice."). Threats outside of the judicial process do not form the

15   basis for an abuse of process claim.  *Estate of Tucker ex rel. Tucker*, 515 F.3d 1019, at 1038 n.22 (no

16   claims for abuse of process where threats where carried out about contacting the FBI to institute an

17   investigation because "the tort of abuse of process lied in the misuse of the power of the <u>court</u>.")

18   (emphasis in original.)

19        The remedy for filing a lawsuit for an improper purpose is malicious prosecution. *Trear v.*

20   *Sills*, 69 Cal.App.4th at 1359.  The facts of the first cause of action appear to allege a claim for

21   malicious prosecution because the first cause of action seeks damages for filing a lawsuit for

22   improper purposes.  *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th

23   Cir. 1990) (a claim may be implied from the facts alleged.)  Accordingly, the motion to dismiss will

24   be granted, but leave to amend will be granted to allege a claim for malicious prosecution or to

25   properly allege an abuse of process.[3]

26   _____

27        [3] Defendants argue that they are immune from a malicious prosecution action pursuant to Cal.Govt Code §821.6.
     The Court does not reach the issue of immunity for malicious prosecution because plaintiffs argue that the cause of action

28   as stated is one for abuse of process.

**C.     Causes of Action under §1983**

The Second and Third Causes of Action are for violation of Civil Rights, 42 U.S.C. §1983, for deprivation of Due Process and Equal Protection.  Plaintiffs allege that they have been denied due process in "the access right or easement afforded by Cascadel Road up to the originally granted 60 feet width."  (Doc. 1 Complaint ¶84.)  Plaintiffs allege that they have a property right in this access. Plaintiffs also allege that defendants have a "policy or custom" of failing to comply with requirements "for adequate access for fire, life safety and emergency vehicles and evacuees from Cascadel Woods" and by "continuing to grant building permits" without adequate access.  (Doc.1, Complaint ¶85.)  Plaintiffs allege they have been denied equal protection in that the residents of Cascadel Woods Subdivision, and plaintiffs in particular, have been signaled out to be denied sufficient access to their homes and for fire and safety vehicles.  (Doc.1 Complaint ¶ 90.)

Defendants challenge these causes of action on various grounds.  Defendants argue that plaintiffs have no standing to bring claims on behalf of any person, other than themselves, such as on behalf of other homeowners.  Defendants also argue that the matter is not ripe.  Defendants also argue plaintiffs have not alleged deprivation of any protected property right, defendants are immune and there is no liability for the threat of future harm.

**1.     Standing**

Defendants argue that the plaintiffs do not have standing under Section 1983 to bring an action against the County of Madera for failure to preserve the 60-foot easement, or to complain that the County of Madera has agreed to allow the recording of an offer of dedication that does not meet the applicable road-width standards.  Madera argues that plaintiffs lack standing to challenge the private easement because the easement, as alleged, is owned by another entity: by Cascadel Ranch Properties.

Article III, § 2 of the Constitution restricts the federal "judicial power" to the resolution of "Cases" and "Controversies."  That case-or-controversy requirement is satisfied only where a plaintiff has standing.  *Sprint Communications Co., L.P. v. APCC Services, Inc.*, – U.S. –, 128 S.Ct. 2531, 2535 (2008).  In order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact ( i.e., a "concrete and particularized" invasion of a "legally protected interest"); (2)

8

1   causation ( i.e., a " 'fairly ... trace[able]' " connection between the alleged injury in fact and the

2   alleged conduct of the defendant); and (3) redressability ( i.e., it is " 'likely' " and not "merely

3   'speculative' " that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing

4   suit).  *Sprint Communications Co.*, 128 S.Ct. at 2531.

5       Defendant argues that plaintiffs do not have standing to claim loss of an easement owned by

6   another, Cascadel Ranch Properties.

7       Standing generally requires a showing that plaintiff has suffered actual loss, damage or

8   injury, or is threatened with impairment of his or her own interests. This tends to assure that plaintiff

9   has a sufficient stake in the outcome of the suit to make it a real "case or controversy." *Bullfrog*

10  *Films, Inc. v. Wick,* 847 F.2d 502, 506 (9th Cir. 1988).  The "injury in fact" requirement must

11  involve "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b)

12  actual or imminent, not conjectural or hypothetical ... " *Lujan v. Defenders of Wildlife,* 504 U.S. 555,

13  559–560, 112 S.Ct. 2130, 2136 (1992) (internal quotes and citations omitted).

14      Plaintiffs allege that "[t]he primary access for the Plaintiffs' Property is over Cascadel Road

15  and Plaintiffs' Property abuts Cascadel Road." (Doc. 1, Complaint ¶30.)  Plaintiffs allege that the

16  "Houston Dedication attempts to deprive the Plaintiffs and the public rights to at least 48 feet of the

17  longstanding deeded and historical public access originally deeded in 1888." (Doc. 1 complaint

18  ¶38.)  Reading these allegations broadly, plaintiffs have stated a "factually plausible" claim that their

19  right to the use of the easement which abuts their property is being infringed by the conduct of

20  defendants.  Accordingly, plaintiffs have standing to allege injury to the use of the easement.

21  Standing is gauged by the specific common law, statutory or constitutional claims that a party

22  presents; "whether the particular plaintiff is entitled to an adjudication of the particular claims

23  asserted." *Allen v. Wright*, 468 U.S. 737, 752, 104 S.Ct. 3315, 3325 (1984).

24      Defendants argue that plaintiffs do not have standing to make any claim for relief for any

25  person other than themselves, and do not have standing to assert claims of Cascadel Woods Property

26  Owners Association, Inc.

27      Indeed, plaintiff cannot assert claims of third parties. The claim must be for injury to

28  plaintiff's own legal rights and interests, rather than the legal rights or interests of third parties. *See*

9

*Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 14, 124 S.Ct. 2301, 2310 (2004) (father lacked prudential standing to challenge school policy requiring daughter to recite pledge of allegiance).  Plaintiffs do not have standing to assert claims of third parties. Any claim to the disputed area on behalf of third parties brought by plaintiffs is dismissed.

### 2.   Ripeness

Defendants argue the matter is not ripe because Madera has not accepted either of the offers of dedications - the 1967 Offer of Dedication for a 60-foot wide road or the Houston/Barlow Offer of Dedication for a 12-foot wide road.  (Doc. 26-2, Moving papers p. 9-10.)  Defendants argue that there has been no change to the width of Cascadel Road and the dispute is one that should be resolved by a quiet title action.

The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 808, 123 S.Ct. 2026, 2029 (2003).  Ripeness involves two overarching considerations: (1) Whether the relevant issues are sufficiently focused to permit judicial resolution without further factual development, *see Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir. 1996), and (2) Whether the parties would suffer any hardship by postponing judicial review.  *See Alaska Right to Life Political Action Committee v. Feldman*, 504 F.3d 840, 851 (9th Cir. 2007).

Here, the Court finds that the issue is ripe.  The issue of both of the offers of dedication and the impact upon the use of the Cascadel Road are sufficiently focused.  In addition, there is sufficient hardship on the parties.  The offer of dedication, and in the prosecution of plaintiff Stamas, in practical terms prohibits plaintiff from enjoying the possible full use of their easement rights.  As the complaint alleges, the reduction of the useable portion of Cascadel Road prohibits safety vehicles from responding to an emergency.  Accordingly, the matter is ripe for resolution.

### 3.   Federal Constitutional Claims of Violation of Due Process and Equal Protection

Having considered that plaintiffs sufficiently allege standing and ripeness, the Court turns to the substantive arguments on plaintiffs' claims for violation of Due Process and Equal Protection.  As relevant to this motion, the Second and Third Causes of Action are alleged against Madera, Prentice, and Herman.  Plaintiffs allege that they have been deprived of their property right to the 60-

10

1  foot wide easement.  (Doc. 1, Complaint ¶84.)  Plaintiffs also allege that they have been deprived of

2  "adequate access for fire, life safety and emergency vehicles and evacuees from Cascadel Woods . . .

3  and [Madera] is physically denying Plaintiffs and all property owners in Cascadel Woods the right to

4  access the area under threat of prosecution . . ."  (Doc. 1, Complaint ¶85.)  Plaintiffs complain that

5  they and all the property owners have inadequate access and are under a threat of prosecution for

6  maintaining any portion of the road.  (Doc. 1, Complaint ¶ 85, 87.)

7      Substantive due process addresses improper governmental interference with property rights

8  and irrational actions by government decision makes.  *County of Sacramento v. Lewis*, 523 U.S. 833,

9  845, 119 S.Ct. 1708 (1998).  Procedural due process requires that a property owner be provided

10  notice and an opportunity to be heard before the government may deprive the owner of the protected

11  property right.  *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1101.  Equal protection requires that

12  land use decisions be rationally related to a legitimate governmental purpose.  *City of New Orleans v.*

13  *Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513 (1976).  A basic requirement for a violation of equal

14  protection is that similarly simulated property must have been treated differently.  *Carpinteria Valley*

15  *Farms, Ltd v. County of Santa Barbara*, 344 F.3d 822 (9th Cir. 2003).

16                **A.      A Property Right Must be Deprived**

17      The United States Supreme Court has recognized that property rights are not created by the

18  Constitution.  To state a claim for violation of substantive due process, a land owner must have a

19  protected property interest.  *American Mfgrs Mut. Ins. Co. V. Sullivan,* 526 U.S. 40, 59 119 S.Ct 977

20  (1999):

21          "The first inquiry in every due process challenge is whether the
           plaintiff has been deprived of a protected interest in 'property' or
22          'liberty.' . . .Only after finding the deprivation of a protected interest
           do we look to see if the State's procedures comport with due process."
23          (Citations omitted.)

24  Property rights are created and their dimensions are defined by existing rules or understandings that

25  stem from an independent source such as state law, rules or understandings that secure certain

26  benefits and that support claims of entitlement to those benefits.  *Board of Regents of State Colleges*

27  *v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972);  *Barthuli v. Board of Trustees*, 19

28  Cal. 3d 717, 722, 139 Cal. Rptr. 627, 566 P.2d 261 (1977) (same).  Indeed, to determine whether a

                                11

1  protected property interest exists in a given instance, courts look to state law.  *WMX Techs, Inc. V.*

2  *Miller*, 80 F.3d 1315, 1318 (9ᵗʰ Cir. 1996) ("We look to state law to define the dimension of a

3  protected property interest.")   Property rights cannot be created by a person's unilateral needs. To

4  have a property interest in a benefit, a person must clearly have more than an abstract need or desire

5  for it, or a unilateral expectation of it. Instead, the person must have a legitimate claim of entitlement

6  to the benefit. *See*, *generally*, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S. Ct.

7  2701, 33 L. Ed. 2d 548 (1972).

8                              **B.    "Pinching Down" of the 60-Foot Easement**

9          Here, plaintiffs allege that Madera's actions in the settlement of Houston/Barlow action

10  "resulted in the reduction or 'pinching down' of up to 60 feet of access to a mere 12 feet." (Doc.1

11  Complaint ¶87.)  At the heart of this dispute is plaintiffs' claim that they are entitled to a 60-foot

12  wide roadway and which was dedicated in the 1967 Offer of Dedication.  Plaintiffs alleged that this

13  "pinching down" of the 60-foot easement has deprived them of adequate access "by fire and

14  emergency life safety vehicles to access Cascadel Woods in an emergency . . ." (Doc.1, Complaint

15  ¶87.)

16          Plaintiffs argue that they have a property interest in the 1967 Offer of Dedication, citing

17  *Danielson v. Sykes*, 157 Cal. 686, 689 (1910).  (Doc. 31, Plaintiffs' Opposition p. 12, 16 ("Plaintiff's

18  [sic] had a property right in the 1967 Dedication.")) Plaintiffs do not cite any authority for the

19  proposition that they did or could acquire a property interest in the 1967 Offer of Dedication, itself.

20  California law is that the abutting landowner acquires an interest in the right-of-way, but not an

21  interest in the offer of dedication itself.  "A dedication is the transfer of an interest in real property to

22  a public entity for the public's use."  *Biagini v. Beckham,* 163 Cal.App.4th 1000, 1009, 78

23  Cal.Rptr.3d 171, 178 (2008).  A statutory dedication is effected when, in compliance with the map

24  act then in force, an offer of dedication is accepted by the public agency.  *Galeb v. Cupertino*

25  *Sanitary Dist.,* 227 Cal.App.2d 294, 301, 38 Cal.Rptr. 580 (1964). Plaintiff does not have a property

26  interest in the offer of dedication.  Plaintiffs may have a right to the right-of-way in the easement

27  which abuts their property.  A private easement over a roadway is an entirely different matter than a

28  dedication of that roadway to use by the public in general:

"when one lays out a tract of land into lots and streets and sells the lots by reference to a map which exhibits the lots and streets as they lie with relation to each other, **the purchasers of such lots have a private easement in the streets opposite their respective lots, for ingress and egress and for any use proper to a private way, and ... this private easement is entirely independent of the fact of dedication to public use**, and is a private appurtenance to the lots, of which the owners cannot be divested except by due process of law."

*Biagini*, 163 Cal.App.4th at 1012 (emphasis added), citing *Danielson v. Sykes*, 157 Cal. 686, 689 (1910).   *Danielson* held that once a portion of the property depicted on a map is conveyed by deed, described by reference to the map, private easements arise appurtenant to the property depicted on the map over the roadways indicated thereon. "There is no such thing as a dedication between the owner and individual.  The public must be a party to every dedication."  *Biagini*, 163 Cal.4th at 1012.  As a matter of law, plaintiffs cannot allege that they have a property interest in the Offer of Dedication.

Pursuant to *Danielson*, plaintiffs have a property interest in the easement which abuts their property.  The allegations, here however, are not sufficiently clear that the right which is sought to be protected is the easement right.  Therefore, leave to amend will be granted to allege the easement property rights.

Further, in order to hold defendant Madera liable for "infringement" of any rights created to an easement by the 1967 Offer of Dedication, plaintiff must allege that there was an acceptance of the offer of dedication. Here, plaintiffs allege that Madera did not accept the 1967 Offer of Dedication for a 60-foot wide street.  Until the offer of dedication is unconditionally accepted, no public interest is created.  *Mikels v. Rager,* 232 Cal.App.3d 334, 351, 284 Cal.Rptr. 87, 92 (1991). Moreover, plaintiffs have not alleged that there was "implied" acceptance of the offer of dedication. Without an accepted offer of dedication, the full 60-foot wide easement did not become part of the 'public' road.  Public use may be proof of the roads' acceptance.  *Hanshaw v. Long Valley Road Ass′n*, 116 Cal. App. 4th 471, 11 Cal. Rptr. 3d 357 (2004) (The filing of a subdivision map delineating a street thereon is an offer to dedicate the land identified; use of the land so identified by the public for such purposes over a reasonable period of time constitutes an acceptance of the offer so made.)  "Although a road is a 'public street' and subject to 'public control,' it need not necessarily

be maintained by the local governing entity. All roads over which the public has a right to travel, whether express or prescriptive, are 'public' roads. 'Public' roads, however, are not 'county' roads until accepted as such by appropriate resolution of the board of supervisors.  Streets. & Hy. Code, § 941; *See Hays v. Vanek*, 217 Cal.App.3d 271, 284, 266 Cal.Rptr. 856, 862 (1989) (The inference that public use constitutes acceptance of an offer of dedication is dependent in large part on the fact that the public is using the piece of property offered).

There are no allegation which show that there was some form of acceptance of the offer of dedication.

### C.      Right to Adequate Fire Protection

Plaintiffs have not cited any authority for the proposition that they have a constitutionally protected right to fire protection.  Plaintiff argues that Madera has granted building permits without requiring adequate access through Cascadel Woods, and has also taken from the public forty eight (48) feet of critical fire and life safety access.

Due Process cannot be extended to impose an affirmative obligation on a public entity to ensure that private interests do not come to harm through other means.  *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 195, 109 S. Ct. 998 (1989) ("its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text").  "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."  *Id.*  "If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them."  *DeShaney,* 489 U.S. at 196-197.  Thus, the Due Process clause does not impose an affirmative obligation on a public entity to provide the general public with adequate protective services.

The general rule announced in *DeShaney* that members of the public have no constitutional right to sue state actors who fail to protect them from harm inflicted by third parties "is modified by two exceptions: (1) the 'special relationship' exception; and (2) the 'danger creation exception.'"

1    *Johnson v. City of Seattle,* 474 F.3d 634, 639 (9th Cir. 2007).  To prevail on a danger creation theory,

2    "it is not sufficient for the plaintiff to demonstrate that the state official was grossly negligent.

3    Instead, the plaintiff must show that the state official participated in creating a dangerous situation,

4    and acted with deliberate indifference to the known or obvious danger in subjecting the plaintiff to

5    it." *Huffman v. County of Los Angeles,* 147 F.3d 1054, 1059 (9th Cir. 1998), *cert. denied*, 526 U.S.

6    1038 (1999).  A special relation exception applies when the state takes a person into custody and

7    holds him against his will; the Constitution imposes some responsibility for that person safety.  *Id.*

8    Thus, the allegations, as they stand, cannot support a claim for constitutional deprivation because

9    plaintiffs do not have a constitutional right to adequate fire protection.

10           **4.       Allegations of Constitutional Infringing Customs or Policies**

11           Substantive and procedural due process and equal protection claims that are based on

12   violations of the federal constitution must be brought under the Civil Rights Act, 42 U.S.C. §1983.

13   Section 1983 "creates a private right of action against individuals who, acting under color of state

14   law, violate federal constitutional or statutory rights." *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d

15   936, 943 (9th Cir. 2004).  To maintain a section 1983 claim against a local government, a plaintiff

16   must establish the requisite culpability (a "policy or custom" attributable to municipal policymakers)

17   and the requisite causation (the policy or custom as the "moving force" behind the constitutional

18   deprivation).  *Monell v. New York City Dept. of Social Servs.* 436 U.S. 658, 691-694, 98 S.Ct. 2018

19   (1978); *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

20           A plaintiff can establish a "policy or custom" by showing: (1) an express policy that, when

21   enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized

22   by written law or express municipal policy, is so permanent and well settled as to constitute a custom

23   or usage with force of law; or (3) an allegation that the constitutional injury was caused by a person

24   with final policymaking authority.  *Gable*, 296 F.3d at 537; *Baxter v. Vigo County School Corp.*, 26

25   F.3d 728, 735 (7th Cir. 1994).  "[O]fficial policy must be 'the moving force of the constitutional

26   violation' in order to establish the liability of a government body under § 1983." *Polk County v.*

27   *Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445 (1981) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018));

28   *see Rizzo v. Goode*, 423 U.S. 362, 370-377, 96 S.Ct. 598 (1976) (general allegation of administrative

                                                     15

1  negligence fails to state a constitutional claim cognizable under section 1983).  A "plaintiff must

2  show that the municipal action was taken with the requisite degree of culpability and must

3  demonstrate a direct causal link between the municipal action and the deprivation of federal rights."

4  *Bryan County Commissioners v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382 (1997).  A plaintiff must

5  demonstrate that a defendant's policy was "closely related to the ultimate injury."  *Harris*, 489 U.S.

6  at 391, 109 S.Ct. at 1206.  "At the very least there must be an affirmative link between the policy and

7  particular constitutional violation."  *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427

8  (1985). Counties are liable for constitutional violations under § 1983 only if the individual officer

9  who committed the violation was acting pursuant to a local policy, practice or custom.  *King County*

10  *v. Rasmussen*, 299 F.3d 1077, 1089 (9th Cir. 2002), *cert. denied*, 538 U.S. 1057 (2003).

11  Plaintiffs have failed to allege the local policy, practice or custom which denied plaintiffs'

12  protected property right.  Plaintiff alleges that Madera had a policy and custom of approving building

13  permits within Cascadel Woods and deriving increased property taxes from the permits.  (Doc. 1,

14  Complaint ¶86.)   But these allegations do not link the policy and customs to plaintiffs' alleged

15  constitutional injury.  A §1983 action cannot be sustained absent allegations that a policy or custom

16  resulted in a violation of a constitutional right.  Plaintiffs have not alleged any policy or custom

17  which resulted in a loss of their easement, or "pinching down" access in Cascadel Road.  As shown

18  above, plaintiffs have no constitutional right to the provision of adequate fire protection or safety.

19  The Court will grant an opportunity to amend the complaint.  The Court notes that pursuant

20  to *Iqbal*, plaintiffs' allegations must allege sufficient nexus between the custom, policy or practice

21  and the constitutional injury to be "facially plausible."

22      **5.   Immunity of Prosecutorial Personnel**

23  Defendants note that part of Plaintiffs' due process and equal protection claims incorporates

24  the allegations describing the prosecution of plaintiff Stamas.  Defendants argue prosecutors are

25  granted absolute immunity from damages arising from "initiating a prosecution and in presenting the

26  State's case," because such activities are "intimately associated with the judicial phase of the criminal

27  process." *Imbler v. Pachtman*, 424 U.S. 409, 430-431 (1976)

28  Plaintiffs' opposition does not dispute prosecutorial immunity, but notes that the allegations

1   use defendants Prentice, Huston and Herman as the means for depriving plaintiffs of their property

2   interest in the 1967 Offer of Dedication.

3       The individual defendants are absolutely immune for conduct arising from the prosecution of

4   plaintiff Stamas.  Prosecutors and other eligible government personnel are absolutely immune from

5   section 1983 damages in connection with challenged activities related to the initiation and

6   presentation of criminal prosecutions.  *Imbler*, 424 U.S. 409; *see also Kalina v. Fletcher*, 522 U.S.

7   118, 118 S.Ct. 502, 507 (1997); *Roe v. City of San Francisco*, 109 F.3d 578, 583 (9th Cir. 1997).

8   "[A]bsolute prosecutorial immunity attaches to the actions of a prosecutor if those actions were

9   performed as part of the prosecutor's preparation of his case, even if they can be characterized as

10  'investigative' or 'administrative.'" *Demery v. Kupperman*, 735 F.2d 1139, 1143 (9th Cir. 1984),

11  *cert. denied*, 469 U.S. 1127, 105 S.Ct. 810 (1985).  Even charges of malicious prosecution,

12  falsification of evidence, coercion of perjured testimony and concealment of exculpatory evidence

13  will be dismissed on grounds of prosecutorial immunity.  *See Stevens v. Rifkin*, 608 F.Supp. 710, 728

14  (N.D. Cal. 1984).  Further activities intimately connected with the judicial phase of the criminal

15  process include making statements that are alleged misrepresentations and mischaracterizations

16  during hearings and discovery and in court papers, *see Fry v. Melaragno*, 939 F.2d 832,837-838 (9th

17  Cir. 1991), and conferring with witnesses and allegedly inducing them to testify falsely, *see Demery*,

18  735 F.2d at 1144.

19      Here, the individual defendants engaged in prosecutorial conduct of plaintiff Stamas are

20  entitled to absolute immunity for prosecutorial actions.

21      Plaintiffs argue that they also allege that defendants Prentice, Herman and Huston acted

22  according to custom and policy to deprive them of rights related to adequate access for fire, life

23  safety and emergency vehicles.  (See Doc.1, Complaint ¶85.)

24      To seek relief under 42 U.S.C. § 1983 against the individual defendants, a plaintiff must

25  show that the defendant, acting under color of state law, deprived the plaintiff of his or her

26  constitutional or federal statutory rights. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101

27  L.Ed.2d 40 (1988). A prima facie case under § 1983 requires allegations showing how the

28  individually named defendants caused or personally participated in causing the alleged harm. *Arnold*

1   *v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir.1981). The plaintiff must set forth

2   specific facts establishing the basis for each defendant's liability.  *Aldabe v. Aldabe*, 616 F.2d 1089,

3   1092 (9th Cir.1980).

4        The allegations against the individual defendants do not specify the conduct which the

5   individuals engaged in which purports to violate plaintiffs' constitutional rights.  Plaintiffs' global

6   allegation that the individual defendants engaged in "a policy or custom of intentionally failing to

7   comply with the requirement for adequate access for fire, life safety and emergency vehicles . . ."

8   (Doc.1, Complaint ¶85) is insufficient to maintain a §1983 for individual liability.  Pursuant to the

9   above authorities and the standards set forth in *Iqbal,* the complaint must contain factual allegations

10  of wrongful conduct by each individual defendant and not conclusory allegations.  The motion will

11  be granted.

12  **D.      Sixth Cause of Action for Breach of Contract**

13       Defendants argue that the Sixth Cause of Action for breach of contract must be dismissed

14  because plaintiffs failed to plead any consideration for the alleged contract.  Defendants note that the

15  "contract" arose for the "settlement" of the criminal action against plaintiffs, which was brought by

16  the People of the State of California and not the County of Madera.  There was no consideration for

17  the County, and plaintiff must allege consideration.

18       Plaintiffs argue that, pursuant to the transcript recording the resolution of the criminal action,

19  the parties entered into a "Civil Settlement."  (Doc. 33, Judicial Notice Request p. 8 of 18.)  Plaintiff

20  argues he was promised "fully code compliant access to his property" through the 60-foot easement.

21  (Complaint ¶107.)   The access has not been performed and plaintiff has fully performed their

22  obligations.

23       The elements for breach of contract are (1) the existence of a valid contract, (2) plaintiff's

24  performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to the

25  plaintiff.  *McKell v. Washington Mutual, Inc.,* 142 Cal.App.4th 1457, 1489 (2006).  The formation of

26  a binding contract requires: (1) parties capable of contracting; (2) mutual assent; (3) a lawful object;

27  and (4) sufficient consideration. See Cal. Civ.Code. §§ 1550, 1565.

28       Defendants rely upon California pleading standards for arguing the complaint is inadequately

plead.  However, Federal Rules of Civil Procedure control the pleadings in this action.  Fed.R.Civ.P. 8(a)(2) requires a complaint to contain "a short plain statement of the claim showing that the pleader is entitled to relief."  To comply with F.R.Civ.P. 8(a)(2), a plaintiff "must plead a short and plain statement of the elements of his or her claim, identifying the transactions or occurrence giving rise to the claim and the elements of the prima facie case."  *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).  Although F.R.Civ.P. 8 "encourages brevity, the complaint must say enough to give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2507 (2007) (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 346, 125 S.Ct. 1627 (2005)).

Here, the pleadings for breach of contract are sufficient to put the defendant on notice as to the contract, the terms and the alleged breach of contract.

Madera argues that it was not a party to the "settlement" and thus received no consideration for the agreement.  The Court, however, cannot consider matters outside of the pleadings, which are not properly subject to judicial notice. See Fed.R.Evid. 201 (judicial notice).  While Madera argues that the People of the State of California brought the action on which the settlement was based, the Court cannot make that factual determination that the "settlement" was not for the benefit of Madera. Therefore, the motion to dismiss on this claim will be denied.

**E.      Seventh Cause of Action for Public Nuisance**

Plaintiffs allege that Madera engaged in a public nuisance by failing to protect and preserve the full 60-foot wide access easement which prevents a clear right of way and prevents upgrades of the single lane road.  Plaintiff allege the "full 60 feet of right of way [is needed] for fire and life safety access including evacuation."  (Doc. 1, Complaint ¶115.)  Plaintiffs' allegations are based upon Madera's failure to accept the 1967 60-foot offer of dedication and Madera's agreement to the Houston/Barlow offer of dedication for a 12-foot wide road.  Plaintiffs argue that with Madera approving building permits within the area, and a limited 12-foot wide road, Madera has created a "death-trap."

Civil Code section 3480 provides: "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of

the annoyance or damage inflicted upon individuals may be unequal."  In determining whether a particular activity constitutes a public nuisance, a court considers three elements: (1) the proscribed act, (2) whether the result of the act interferes with the comfortable enjoyment of life or property, and (3) whether the act affects a sufficient number of persons.  *People v. McDonald*, 137 Cal.App.4th 521, 535, 40 Cal.Rptr. 3d 422 (2006).

Madera argues that it is immune from liability for the public nuisance because the claim is based upon adequacy of fire protection.  Madera argues that it is immune from liability for fire protection pursuant to several statutory provisions.  See Gov. Code, §§ 850 ("Neither a public entity nor a public employee is liable for failure to establish a fire department or otherwise to provide fire protection service"), 850.2 ("Neither a public entity that has undertaken to provide fire protection service, nor an employee of such a public entity, is liable for any injury resulting from the failure to provide or maintain sufficient personnel, equipment or other fire protection facilities"), 850.4 ("Neither a public entity, nor a public employee acting in the scope of his employment, is liable for any injury resulting from the condition of fire protection or firefighting equipment")).

Plaintiff has not cited any authority for the proposition that the public entity may be liable, in nuisance, for the issuance of building permits, or for the failure to expand a right-of-way to minimize risk of residents being trapped by fire.  The statutory provisions, Govt Code §850, 850.2 and 850.4, were enacted to protect the discretion of public officials in determining whether fire protection should be provided at all, and if so, to what extent and with what facilities. The statutes recognize that these political, policymaking decisions should not be second-guessed by judges or juries.  *State v. The Superior Court (Wanda Nagel)*, 87 Cal.App.4th 1409, 105 Cal.Rptr. 2d 499 (2001).  In *Cairns v. County of Los Angeles*, 62 Cal.App. th 330, 72 Cal.Rptr.2d 460 (1997), the public entity was granted broad immunity for decisions related to fire safety.  In *Cairns*, homeowners sued the city and county after plaintiffs' homes were damaged in a fire.  Plaintiffs alleged that defendants' failure to repair and reopen a closed public roadway for the purpose of a fire road constituted either a dangerous condition or a nuisance.  The trial court properly sustained defendants' demurrers based on statutory governmental immunities relating to fire protection. The court held that these provisions provide for a broad immunity from liability for injuries resulting in connection with fire protection

service. Although plaintiffs alleged that defendants had a duty to repair and reopen the closed public

roadway for the purpose of a fire road, the court stated this is precisely the sort of decision left to

policymakers' absolute discretion by the broad immunity of the Government Code. *Id.* at 335; see

also *Vedder v. County of Imperial*, 36 Cal.App.3d 654, 111 Cal.Rptr. 728 (1974) (Nuisance claim

was permitted because fire occurred on the public entity's own airport property, the court refused to

apply the immunity statutes "to allow a public entity to escape responsibility for damages resulting

from its failure to provide fire protection on property which it owns and manages itself, particularly

where it has permitted a dangerous fire condition to exist on the property.")

Plaintiffs' allegations are based upon Madera's failure to extend Cascadel Road to a 60-foot

wide thoroughfare, and thereby maximize potential escape routes in the event of fire. The allegations

also based on an alleged nuisance created by Madera's issuance of building permits which may or

may not overpopulate and overburden Cascadel Road. Madera has broad immunity for decisions

relating to and affecting to fire safety.

Further, a damages claim for a prospective nuisance is not a sustainable claims under

California law. *See Helix Land Co. v. City of San Diego*, 82 Cal. App. 3d 932, 147 Cal. Rptr. 683

(1978) (landowners were not entitled to recover for a future threat of flooding to their property where

the city and state had adopted a flood control plan because the risk of future flooding is not an act

and does not give rise to a cause of action for damages in nuisance.) A prospective nuisance may be

enjoined, but the pleadings seeking an injunction must allege facts to show that the danger is

probable and imminent. *Id.* at 950. Therefore, a party may not recover damages for potential, future

injuries arising from the threat of nuisance.

Plaintiffs cite *County of San Diego v. Carlstrom*, 196 Cal.App.2d 485, 16 Cal.Rptr. 667

(1961) for the unremarkable proposition that a fire hazard is a public nuisance. *Carlstrom*, however,

did not involve a claim of nuisance <u>against</u> the public entity. *Carlstrom* involved an action <u>by the</u>

<u>public entity</u> against a property owner to abate a public nuisance created by the owner's storage of

structures which had become extreme fire hazards.

Madera also notes that it is immune from liability for issuing building permits. Cal.Gov.Code

§ 818.4 ("A public entity is not liable for an injury caused by the issuance, .... of ... any permit,

21

license, certificate, approval, order, or similar authorization where the public entity or an employee

of the public entity is authorized by enactment to determine whether or not such authorization should

be issued, denied, suspended or revoked.")  Plaintiff does not argue against the imposition of

immunity other than to identify the fire hazard created.

Plaintiff has not argued how they may amend this claim to possibly state a claim for relief.  If

a plaintiff fails to state a claim, a court need not permit an attempt to amend a complaint if "it

determines that the pleading could not possibly be cured by allegation of other facts."  *Cook, Perkiss*

*and Liehe, Inc.*, 911 F.2d at 247.  For the reasons stated above, this claim will be dismissed.

**F.**      **Eighth and Ninth Causes of Action for Violation of the California Constitution.**

Plaintiffs' Eighth and Ninth Causes of Action seek tort damages for violation of plaintiffs'

Due Process and Equal Protection rights under the California Constitution.  Madera argues

California law does not permit a claim for damages for violation of Due Process or Equal Protection

of the California Constitution.

The California Supreme Court has ruled that the California Constitution does not provide a

direct cause of action for damages for a due process or equal protection violation.  *Katzberg v.*

*Regents of University of California*, 29 Cal.4th 300, 127 Cal.Rptr.2d 482 (2002) (the California

Supreme Court declined to recognize a constitutional tort to remedy the asserted violation of Art. 1,

§ 7(a) in the absence of a statutory provision or common law tort authorizing such a remedy.)  State

courts have expressly rejected state constitutional damage claims for violation of the due process and

equal protection clauses.  *Javor v. Taggart*, 98 Cal.App.4th 795, 807, 120 Cal.Rptr.2d 174 (2002)

("It is beyond question that a plaintiff is not entitled to damages for a violation of the due process

clause or the equal protection clause of the state Constitution.");  *see also Degrassi v. Cook*, 29

Cal.4th 333, 335, 127 Cal.Rptr.2d 508 (2002) (no private right of action for damages for violation of

free speech clause of California Constitution).   A plaintiff is not entitled to damages for a violation

of the due process clause or the equal protection clause of the state Constitution.  *Carlsbad*

*Aquafarm, Inc. v. State Dept. of Health Services*, 83 Cal.App.4th 809, 815-823, Cal.Rptr.2d 87

(2000) (due process); *Gates v. Superior Court,* 32 Cal.App.4th 481, 516-524, 38 Cal.Rptr.2d 489

(1995) (equal protection.)

1        Accordingly, plaintiffs' claims for damages for Due Process and Equal Protection violations

2   are inconsistent with California law.

3        Plaintiffs argue that they pray for, in addition to damages, "other such and further relief as the

4   court may deem proper."  (Doc. 31, Opposition p.19.)  The only authority cited by plaintiff is

5   *Ratchford v. County of Sonoma*, 22 Cal.App.3d 1056, 99 Cal.Rpter. 887 (1972).  In *Ratchford*, the

6   court decided whether to issue a writ of mandate for a county board of supervisor's decision to

7   abandon a portion of a roadway.  The appellate court held that "the trial court was authorized to issue

8   the writ to determine whether the facts alleged and proved authorized the board of supervisors to

9   proceed with the proposed abandonment." *Id.* at 1070.  *Ratchford*, however, did not involve a claim

10  for constitutional damages or for damages of any kind.  Thus, the Eighth and Ninth claims as set

11  forth in the complaint do not properly allege a claim.  If plaintiffs are seeking a writ of some kind,

12  these causes of action do not set forth that form of relief.

13  **G.      Tenth Cause of Action for Enforcement of Easement Maintenance (Civ.Code 845)**

14       Plaintiffs' Tenth Cause of Action seeks damages against Madera for "interference with and

15  reduction of the easement and damages through the loss of the use thereof and the loss of the benefit

16  of the use thereof."

17       In their opposition papers, plaintiffs do not cite any authority for the proposition that they

18  may seek tort damages for enforcement of easement maintenance rights.  Civ.Code §845(a) states

19  that an owner of an easement for a private right of way shall maintain it in repair.  Section 845(b)

20  also states that if an easement is owned by more than one person that "the cost of maintaining it in

21  repair shall be shared by each owner of the easement . . ."  Judicial action is authorized if:

22              "Any owner of the easement, or any owner of land to which the
            easement is attached, may apply to any court where the right-of-way is
23          located and that has jurisdiction over the amount in controversy for the
            appointment of an impartial arbitrator to apportion the cost."
24

25  Thus, a civil action is authorized for reimbursement of costs associated with maintaining the

26  easement.  Nothing in §845 authorizes a tort private right of action.  "A statute creates a private right

27  of action only if the enacting body so intended." *Moradi-Shalal v. Fireman's Fund Ins. Companies*,

28  46 Cal.3d 287, 305, 250 Cal.Rptr. 116 (1988).  The statute, here, does not suggest that there is a tort

private right of action and plaintiffs do not cite to any authority to support a private right of action.

**H.     Motion to Strike Punitive Damages**

Defendant Madera and the Board of Supervisors move to strike the request for punitive damages against the public entity.  (Doc. 27, Notice of Motion.)  A motion to strike is proper to strike a prayer for relief where the damages are not recoverable as a matter of law.  *Tapley v. Lockwood Green Engineers, Inc.*, 502 F.2d 559, 560 (8th Cir. 1974) (prayer for damages in wrongful death action exceeded the amount permitted by statute).

A municipality may not be held liable for punitive damages unless expressly authorized by statute. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 n. 21, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); Cal. Govt. Code §818 (Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant.); Cal. Govt. Code §825 (authorizes a legislative body of a public entity to pay punitive damages awarded against an employee of the public entity.); Cal.Govt Code §820 (a public employee is liable for injury caused by his act or omission to the same extent as a private person.)

Plaintiff cites *Bell v. Clackamas County,* 341 F.3d 858 (9th Cir. 2003) for the proposition that "municipalities may pay punitive damages in some circumstances" even though "municipal defendants are immune from liability for punitive damages under § 1983."

*Bell* is inapposite.  The Court in *Bell* remanded for reconsideration of the reduction of punitive damages against individual defendants.  The Court noted that on remand the extent of the municipality indemnification of the individuals should be considered.  The Court, however, did not hold that the municipality may be liable for punitive damages.

The request for punitive damages against Madera and the Board of Supervisors is improper as a matter of law and will be stricken.

/////

/////

/////

/////

**CONCLUSION**

For the foregoing reasons, the Court partially GRANTS and partially DENIES the motions as follows:

1. DISMISSES the First Cause of Action for Abuse of Process with leave to amend;

2. DISMISSES the Second and Third Causes of Action for Violation of 42 U.S.C. §1983 with leave to amend;

3. DENIES the motion as to the Sixth Cause of Action for Breach of Contract;

4. DISMISSES the Seventh Cause of Action for Public Nuisance without leave to amend;

5. DISMISSES the Eighth and Ninth Causes of Action for violation of California constitutional rights without leave to amend.

6. DISMISSES the Tenth Cause of Action for Enforcement of Easement without leave to amend; and

7 STRIKES all requests for punitive damages against the County of Madera and the County of Madera Board of Supervisors.

IT IS SO ORDERED.

**Dated:   August 17, 2009**                    **/s/ Lawrence J. O'Neill**
                                        UNITED STATES DISTRICT JUDGE