1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARK STAMAS and JUDY CASTLES, | CASE NO. CV F 09-0753 LJO SMS |
| Plaintiffs, | **ORDER ON DEFENDANTS'** |
| vs. | **MOTION TO DISMISS AND TO STRIKE** |
| COUNTY OF MADERA, et al., | |
| Defendants. | |
| _____/ | |

Two motions to dismiss are pending before this Court.  First, by notice filed on October 21, 2009, Defendants County of Madera ("Madera"), Board of Supervisors of the County of Madera ("Board"), David Herman, Shawn Huston and David Prentice (all collectively referred to as "Madera defendants") move for dismissal of Plaintiffs' first, second, third and eleventh causes of action in the First Amended Complaint, pursuant to Fed.R.Civ.P 12(b)(6).  The Board also moves to strike pursuant to Rule 12(b)(f).  The second motion to dismiss is by defendants Gerald Houston and Linda Barlow, filed on October 21, 2009.  Plaintiffs Mark Stamas and Judy Castles filed their oppositions on December 4, 2009.  Defendants filed a reply brief on December 11, and December 14, 2009.  Pursuant to Local Rule 230(g), this matter was submitted on the pleadings without oral argument.  Having considered the moving, opposition, and reply papers, as well as the Court's file, the Court issues the following order.

**FACTUAL BACKGROUND**

**A.      Factual Overview**

This action involves a complicated set of facts relating to conflicting claims to an easement

1

1  or private right-of-way, which was created, modified, or revised over a 100-year time span and

2  whose ownership is in dispute.  Plaintiffs filed their First Amended Complaint ("FAC") on

3  September 21, 2009.  Plaintiffs claim a right to an easement on Cascadel Road.  Plaintiffs contend

4  they are entitled to access to a 60-foot wide street, and not a 6-foot to 12-foot road, which plaintiffs

5  complain Madera now limits plaintiffs.  Plaintiffs contend the County of Madera has not done

6  enough to ensure the right-of-way is granted or enforced its ordinances as they pertain to the right-of-

7  way.  Plaintiffs contend that Madera wrongfully prosecuted plaintiff Mark Stamas for attempting to

8  maintain Cascadel Road.

9  **B.       Summary of Pertinent Allegations**

10         Plaintiffs are the owners of Lot 38 of Subdivision No. 4 in the Cascadel Woods Subdivision

11  in Madera County.  The Cascadel Woods Subdivision is located in a mountainous portion of the

12  County.  Plaintiffs' property abuts Cascadel Road which is the main ingress and egress to the

13  Subdivision.  (Doc. 47, FAC ¶¶1, 3.)  Cascadel Road through the subdivision is a privately owned

14  and maintained public access road.  (Doc. 47, FAC ¶9.)  When the Cascadel Woods Subdivision map

15  was recorded in 1963, the map showed all roads as having a sixty (60) foot easement dedicated for

16  private roads.   (Doc. 47, FAC ¶22.)  The developer of the Cascadel Woods Subdivision, Cascadel

17  Ranch Properties, Inc., offered for dedication the sixty (60) foot right-of-way as a street right-of-way

18  ("1967 Dedication").  (Doc. 47, FAC ¶¶24-25.)  The 1967 Dedication was never accepted by the

19  County by resolution.  (Doc. 47, FAC ¶27.)

20         Cascadel Ranch Properties, Inc. originally owned the property which is now owned by

21  defendants Gerald Houston[1] and Linda Barlow, who own Lot 1 in the Cascadel Woods Subdivision.

22  (Doc. 47, FAC ¶¶ 6, 25.)  The Houston/Barlow property abuts and "incorporates" portions of

23  Cascadel Road.  (Doc. 47, FAC ¶6.)  On May 26, 1972, the property underlying the Cascadel Road

24  right-of-way was excepted from the deed for the property now owned by Houston/Barlow.  This

25  exception appeared in the deed to Houston and Barlow, and refers to the 60 foot right-of-way offered

26  _____

27         [1] The names of two of parties are similar, but are spelled differently.  Defendant Shawn **Huston** is a deputy District
    Attorney for Madera County.  Defendant Gerald **Houston** is the property owner in the Cascadel Woods Subdivision.  (See
28  Doc. 33, Request for Judicial Notice, p. 10 of 18.)  For purposes of this motion, the Court will accept these spellings.

1  for dedication recorded on July 11, 1969. (Doc. 47, FAC ¶ 26.)  The excepted, underlying property is

2  owned by Cascadel New Life Foundation, Inc., which is an affiliate of the developer Cascadel Ranch

3  Properties.  (Doc. 47, FAC ¶ 26.)

4         A dispute arose among the parties to this litigation as to the use of Cascadel Road and the

5  ownership of the underlying property.  Houston/Barlow claimed ownership to the underlying

6  property of Cascadel Road as the road passes over their property.  Houston/Barlow filed a civil

7  action in Madera County Superior Court against Madera County and Mark Stamas and Judy Castles,

8  among others. (Doc. 47, FAC ¶35.)  Houston/Barlow and Madera settled the dispute ("Houston

9  Settlement") in which Madera agreed to execute a Quit Claim deed ("2007 Quitclaim Deed")

10  quitclaiming any interest in Cascadel Road and the ownership of the underlying property. (Doc. 47,

11  FAC ¶41.)  As part of the Houston Settlement, Houston/Barlow offered for dedication an area

12  consisting of 12 foot wide portion of Cascadel Road as it passes through the Houston/Barlow

13  property ("Houston Dedication").  Plaintiffs contend that the Houston Dedication attempts to deprive

14  the plaintiffs to at least 48 feet of longstanding deeded and historical public access.  (Doc. 47, FAC

15  ¶43.)  Plaintiffs refer to this as "pinching down" the 60-foot easement to 12 feet.

16         In October 2007, plaintiff Mark Stamas attempted to perform regular, seasonal road

17  maintenance on Cascadel Road. (Doc. 47, FAC ¶60.)  Plaintiff hired a contractor to perform the

18  maintenance.  Madera, acting through special deputy District Attorney David Herman, filed a

19  criminal complaint against Stamas alleging obstruction and damaging county highways, *People of*

20  *California v. Mark Stamas*, SCR007619.  (Doc. 47, FAC ¶11, 64.)  A "civil settlement" was entered

21  to resolve the criminal action.  (Doc. 47, FAC ¶65.)

22         The FAC states the following causes of causes.

23     1.    First Cause of Action for Abuse of Process

24     2.    Second Cause of Action for Violation of 42 U.S.C. §1983 - Due Process

25     3.    Third Cause of Action for Violation of 42 U.S.C. §1983 - Equal Protection

26     4.    Fourth Cause of Action for Quiet Title

27     5.    Fifth Cause of Action for Declaratory Relief

28     6.    Sixth Cause of Action for Breach of Contract

3

1      7.      Eleventh Cause of Action for Malicious Prosecution[2]

2                          **ANALYSIS AND DISCUSSION**

3    **A.    Standards for The Motions**

4          **1.      Standard for Motion to Dismiss**

5          A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of

6    the pleadings set forth in the complaint.   A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there

7    is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a

8    cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  In

9    considering a motion to dismiss for failure to state a claim, the court generally accepts as true the

10   allegations of the complaint in question, construes the pleading in the light most favorable to the

11   party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v.*

12   *Behrens,* 546 F.3d 580, 588 (9th Cir. 2008); *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*,

13   396 U.S. 869 (1969).

14         To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to

15   relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974

16   (2007).  A claim has facial plausibility,"when the plaintiff pleads factual content that allows the court

17   to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

18   *Iqbal*, – U.S. –, 129 S.Ct. 1937 (2009).  "[F]or a complaint to survive a motion to dismiss, the

19   non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

20   suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969

21   (9th Cir. 2009).

22         A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences

23   and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v.*

24   *American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted).  "While a complaint

25   attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

26

27   ────────────
       [2] Plaintiffs retain the original numbering of the causes of action from the original complaint.  They note that the
28   seventh through tenth causes of action have been omitted pursuant to this Court's order.  (See FAC p.29.)  Plaintiffs have
     added the eleventh cause of action.

1    obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

2    conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

3    550 U.S. 554,127 S. Ct. 1955, 1964-65 (internal citations omitted).  Moreover, a court "will dismiss

4    any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently

5    all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629,

6    634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either direct or inferential

7    allegations respecting all the material elements necessary to sustain recovery under some viable legal

8    theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969.  If a plaintiff fails to state a claim, a court

9    need not permit an attempt to amend a complaint if "it determines that the pleading could not

10   possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection

11   Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

12           **2.    <u>Standards for Motion to Strike</u>**

13           Fed. R. Civ. P. 12(f) empowers a court to strike from a pleading "any redundant, immaterial,

14   impertinent, or scandalous matter."  Motions to strike may be granted if "it is clear that the matter to

15   be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v.

16   Kentucky Central Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D. Cal. 1992); *Colaprico v. Sun

17   Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991).  "[T]he function of a Rule 12(f)

18   motion to strike is to avoid the expenditure of time and money that must arise from litigating

19   spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*,

20   697 F.2d 880, 885 (9th Cir. 1983); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993),

21   *rev'd on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023 (1994).  "[A] motion

22   to strike may be used to strike any part of the prayer allege relief when the damages sought are not

23   recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1479, n. 34 (C.D. Cal.

24   1996).

25   **B.     First Cause of Action for Abuse of Process**

26           Under California law, the tort of abuse of process requires misuse of a judicial process.

27   *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019 (9th Cir.), *cert. denied*,

28   129 S.Ct 174 (2008).  The essence of the tort lies in the misuse of the power of the court. It is an act

1   done in the name of the court and under its authority for the purpose of perpetrating an injustice.

2   *Woodcourt II Limited v. McDonald Co.*, 119 Cal.App.3d 245, 252, 173 Cal.Rptr. 836, 840 (1981).

3   To succeed in an action for abuse of process under California law, a litigant must establish that the

4   defendant: (1) contemplated an ulterior motive in using the judicial process, and (2) committed a

5   willful act in the use of that process not proper in the regular conduct of the proceedings. *Estate of*

6   *Tucker ex rel. Tucker*, 515 F.3d at 1037.

7          **1.      Motion to Dismiss as to Defendants Gerald Houston and Linda Barlow**

8          Defendants Gerald Houston and Linda Barlow challenge this single cause of action.

9          Plaintiffs argue that Defendants Houston and Barlow cannot move to dismiss.  Plaintiffs

10  argue that Houston and Barlow failed to make a motion under Fed.R.Civ.P 12b(6) to dismiss the

11  original complaint and should now be barred in this motion on grounds of estoppel.

12         Plaintiffs fail to cite any authority for this position.  Plaintiffs have filed an amended

13  complaint.  Indeed, an amended pleading is a new round of pleadings. The amended pleading is

14  subject to the same challenges as the original (i.e., motion to dismiss, to strike, for more definite

15  statement). *See Nelson v. Adams USA, Inc.*, 529 U.S. 460, 466, 120 S.Ct. 1579, 1584 (2000) ("This

16  opportunity to respond, fundamental to due process, is the echo of the opportunity to respond to

17  original pleadings secured by Rule 12).  Accordingly, defendants Houston and Barlow may move to

18  dismiss.

19         Here, plaintiffs' allegations cannot support a claim for abuse of process against Houston and

20  Barlow.  The alleged abuse of process arose from the filing and prosecution of the criminal

21  proceeding against plaintiff Stamas' for his attempted road maintenance on Cascadel Road.  The

22  allegations of wrongful conduct by defendants Gerald Houston and Linda Barlow in the first cause of

23  action state:

24              "77. Houston e-mailed Deputy County Counsel David Herman under
                advice of counsel in collusion with the County Counsel to bring this
25              action immediately after the CWPOA maintenance actions on October
                1-2, 2007. Normal County Code enforcement procedures were not
26              utilized, no stop work notices were issued, and no code enforcement
                officers arrived to inspect the scene of the alleged wrongful acts of
27              Plaintiff Stamas.

28              79. . . . Madera and named Defendants herein all participated in and

6

1
2
3

> colluded to target Plaintiff Stamas in retaliation for asserting the rights of residents in Cascadel Woods to the adequacy of access provided by law, for reporting Madera's unlawful activity to the Attorney General, the Madera County District Attorney and the Madera County Grand Jury.

4   There are no allegations that defendants Gerald Houston or Linda Barlow used the judicial process

5   against plaintiff Stamas.  Plaintiff alleges that Houston e-mailed Deputy Herman who then brought

6   the criminal action against plaintiff Stamas.  (Doc. 47, FAC ¶77.)  The criminal action was filed by

7   Madera County Counsel.  Defendants Houston and Barlow were not parties to the litigation.  There

8   is no allegation that the action was filed, prosecuted or resolved by conduct of defendant Gerald

9   Houston and Linda Barlow while employing the judicial process.  As the allegations stem from the

10  alleged wrongful conduct in the criminal action, and Houston and Barlow are not alleged to have

11  participated in the criminal judicial proceeding, the allegations do not support an abuse of process

12  claim.  The motion to dismiss will be granted as to Houston and Barlow.

13          **2.       Motion to Dismiss Abuse of Process as to Madera Defendants**

14          Madera Defendants move to dismiss the abuse of process claim on the grounds: (a) the

15  allegations are insufficient for abuse of process, (b) the Board of Supervisors is not a proper party,

16  (c) the individual defendants are immune, and (d) there are no allegations concerning plaintiff Castle.

17          **a.       The Allegations are not sufficient for Abuse of Process**

18          Defendants argue that the allegations indicate that plaintiffs seek recovery for the filing of the

19  criminal action.

20          The mere filing of a complaint or maintenance of a lawsuit, even for an improper purpose,

21  does not constitute an abuse of process.  *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss &*

22  *Karma, Inc.,* 42 Cal.3d 1157, 232 Cal.Rptr. 567 (1986) (allegation that Environmental Quality Act

23  action was improperly instituted was insufficient to state cause of action for abuse of process); *Trear*

24  *v. Sills*, 69 Cal.App.4th 1341, 1359, 82 Cal.Rptr.2d 281, 293 (1999) (the tort requires abuse of legal

25  process, not just filing suit. Simply filing a lawsuit for an improper purpose is not abuse of process.)

26  In *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss Karma, Inc.,*42 Cal.3d 1157, 1169-1170

27  (1986), the court held that "while a defendants act of improperly instituting or maintaining an action

28  may, in an appropriate case, give rise to a cause of action for malicious prosecution, the mere filing

7

1 | or maintenance of a law suit even for an improper purpose is not a proper basis for an abuse of

2 | process action. [Citations.]"

3 |      While plaintiff cannot recover for the filing of the action, reading the allegations in

4 | plaintiff's favor, they arguably state that the criminal action was prosecuted for the purpose of

5 | obtaining an agreement to abide by the Settlement Agreement between Houston/Barlow and the

6 | County.  Arguably, the criminal prosecution was pursued for the purpose of getting plaintiffs to "stop

7 | making waves."  *Barquis v. Merchants Collection Assn.*, 7 Cal.3d 94, 101 Cal. Rptr. 745 (1972)

8 | (knowingly filing actions in an improper venue, with intent to impair rights to defend suits and, in

9 | effect, to coerce inequitable settlements and default judgments by making it inconvenient for

10 | defendants to defend suits, states a cause of action in abuse of process.)

11 |      Plaintiff allege that the "Charges against plaintiff Stamas in Case No. SCR007619 were

12 | brought in response to a complaint made . . . by the Houstons. " (Doc. 47, FAC ¶75.)  Plaintiff

13 | alleges that he was charged with criminal violations of the Madera County Code (Doc. 47, FAC

14 | ¶78.)  "Defendants in the prosecution of Stamas contemplated an ulterior motive in using the judicial

15 | process to enforce the private Settlement Agreement on Stamas."  (Doc. 47, FAC ¶80.)  Plaintiff

16 | alleges that "[t]he Court process was abused by Defendants . . . and force compliance with the

17 | Settlement Agreement entered into by and between Madera and the Houstons."  (Doc. 47, FAC ¶81.)

18 |      The complaint, however, does not allege that the <u>court's process</u> was misused in these

19 | settlement agreement, and therefore, the allegations cannot support a claim for abuse of process. The

20 | filing of he criminal case is not actionable.  Threats outside of the judicial process do not form the

21 | basis for an abuse of process claim.  *Estate of Tucker ex rel. Tucker*, 515 F.3d 1019, at 1038 n.22 (no

22 | claims for abuse of process where threats where carried out about contacting the FBI to institute an

23 | investigation because "the tort of abuse of process lied in the misuse of the power of the <u>court</u>.")

24 | (emphasis in original.)

25 |      The Court has previously taken judicial notice, at plaintiff's request, of the transcript of the

26 | resolution of plaintiff's criminal action.  (See Doc. 41 Aug. 18, 2009 Order p. 18.)  Plaintiffs refer to

27 | the resolution as the "civil settlement."  (Doc. 47, FAC ¶65.)  The transcript shows that the

28 | resolution of the criminal proceeding was accomplished in open court, with a Superior Court judge

presiding.  (Doc. 33, Transcript p. 4-6.)  The transcript indicates that "in return for Mr. Stamas agreeing to certain conditions the people are willing to dismiss all charges."  (Doc. 33, Transcript p.3.)  The main agreement was that "Mr. Stamas will agree not to do any maintenance personally as an individual on the subject section of the property," to which plaintiff agreed.  (Doc. 33, Transcript p.3.) The Judge of the Superior Court took the settlement and agreement on the record.  (*Id.*) The Court supervised the settlement agreement and authorized the resolution of the criminal action through the settlement.

Plaintiffs' allegations simply fail to allege what process has been abused given this on-the-record resolution of the criminal proceeding.  The allegations do not support a claim for abuse of process for bringing the criminal action and for the resolution of the criminal action.

### b.    Board of Supervisors

The Board moves to strike the allegations against the Board from the FAC.  The Board argues that the Madera County Board of Supervisors is an improper party because the Board of Supervisors is not a proper "public entity" under the California Government Claims Act.  (Doc. 49, Moving papers, p. 6.)

Pursuant to the Government Claims Act, (Gov.Code § 810 et seq.), §945 provides that "[a] public entity may sue or be sued."  A "public entity" includes the state, the Regents of the University of California, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the state. Gov. Code, § 811.2.  A "local public entity" includes a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State, but does not include the State.  Gov. Code, § 900.4.

Plaintiff cites *Phillips v. Seely*, 43 Cal.App. 3d 104, 109 (1974), for the proposition that a suit against Butte County, California Government Code § 53510 defined "local agency" as encompassing a "public agency or public authority," including the Board of Supervisors.  In *Williams v. County of Marin*, 2004 WL 2002478, 7 (N.D.Cal.,2004), the court held the Marin County Board of Supervisors is a "public agency" within the meaning of Government Code § 811.2 and may sue or be sued.  The *Williams* court, relying upon *Phillips*, held that a "public agency" in one section of the Government Code, means the same as in another.  Plaintiff in *Williams* sued for

1    employment discrimination.  Plaintiff named both the county and the Board of Supervisors as

2    defendants.  The Court agreed that plaintiff could name both the County and the Board "that the

3    Board of Supervisors is a 'public authority, public agency, [or] a political subdivision of Marin

4    County.'"   The Court also took "judicial notice of the hundreds of published cases in California in

5    which a county board of supervisors is either a plaintiff or defendants." *Williams*, at *7 n.5.

6        Defendants disagree that the Board of Supervisors is a public agency distinct from the County

7    itself.  Defendant argues that the County exercises its power only through the Board of Supervisors

8    (Gov.Code §23005) and the Government Code does not describe the board as a separate entity.

9    (Gov. Code §25000 et seq.)

10       Nonetheless, there is authority for the proposition that the Board of Supervisors is a separate

11   entity with authority to be sued.  Accordingly, the motion to strike the Board from the Complaint is

12   denied.

13                    **c.      The Individual Defendants are Immune**

14       Madera Defendants argue that the individual defendants, Prentice and Herman, are immune.

15   They argue that named county employees in the first cause of action, David Herman and David

16   Prentice, are immune under Government Code §821.6.  They are alleged to be acting in the course

17   and scope of their employment.  (FAC ¶19.)  Madera defendants argue that defendant Shawn Huston

18   is also immune because he was the prosecutor in the criminal action.

19       The FAC alleges the capacity of the individually named defendants as follows.  Defendant

20   David Herman is a Deputy County Counsel for the County of Madera and responsible for the

21   criminal prosecution of plaintiff.  Defendant David Prentice is Madera County Counsel.  (FAC ¶¶12-

22   14.)   The FAC does not allege the capacity of defendant Shawn Huston, but in the original

23   complaint, defendant Shawn Huston was allege to be a Madera County Deputy District Attorney.[3]

24   (Doc.1 Complaint ¶12.)

25       A public employee is not liable for injury caused by his instituting or prosecuting any judicial

26   or administrative proceeding within the scope of his employment, even if he acts maliciously and

27

28   ――――――――――――――――
         [3] Defendant Huston is not named in the First Cause of Action for abuse of process.

without probable cause.  Cal.Govt Code §821.6.  Section 821.6 provides:

> "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

California courts construe section 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits. *Gillan v. City of San Marino,* 147 Cal.App.4th 1033, 1048, 55 Cal.Rptr.3d 158 (2007). "The immunity conferred by section 821.6 is not limited to peace officers and prosecutors but has been extended to public school officials ..., heads of administrative departments ..., social workers ..., county coroners ..., and members of county boards of supervisors...." *Javor v. Taggart*, 98 Cal.App.4th 795, 808, 120 Cal.Rptr.2d 174 (2002).  Further, "[s]ection 821.6 is not limited to conduct occurring during formal proceedings. '[I]t also extends to actions taken in preparation for formal proceedings. Because investigation is "an essential step" toward the institution of formal proceedings, it "is also cloaked with immunity." ' " *Id.*  It is also relevant that "[s]ection 821.6 is not limited to suits for damages for malicious prosecution, although that is a principal use of the statute." *Id.*  The test of immunity is not the timing of the offending conduct but whether there is a causal relationship between the act and the prosecution process. Thus, if the act is made as part of the process, it is protected by the immunity in section 821.6.  *Cappuccio, Inc. v. Harmon*, 208 Cal.App.3d 1496, 1498-1500 (1989).

Plaintiffs argue that the individuals acted outside the scope of their duties because they are not chartered with criminal prosecutions.  The individual defendants are employed with the County Counsel's office.  Plaintiffs argue County Counsel Prentice and deputy County Counsel Herman have no authority to criminally prosecute matters, because criminal prosecutions are for the District Attorney's office.  (Doc. 55, Opposition p.7.)  Plaintiffs argues that the County Counsel attorneys were acting outside of their authority when they filed criminal charges against Stamas and therefore are not entitled to immunity.

The FAC alleges facts upon which defendant David Herman is entitled to immunity.  The FAC alleges that David Herman is "Deputy County Counsel of the County Counsel's Office of

11

1  Madera County, <u>and a Madera County Special Deputy District Attorney</u>." (Doc. 47, FAC ¶11)

2  (emphasis added.)  The FAC alleges that David Herman "in that capacity is responsible for the

3  criminal prosecution at the direction of the District Attorney in Madera County Superior Court No.

4  SCR007619 <u>People v. Mark Stamas</u>."  (Doc. 47, FAC ¶11.) Plaintiffs allege that "each defendants

5  was acting and acted within the course and scope of . . . his employment and authority."  (Doc. 47,

6  FAC ¶19.) Thus, the allegations as to David Herman allege he was acting on behalf of the District

7  Attorney, as a Special Deputy, in the criminal prosecution, and within the scope of his employment.

8  *See generally Rauber v. Herman*, 229 Cal.App.3d 942, 280 Cal.Rptr. 785 (1991) (district attorney

9  and county counsel duties may at time over lap to handle matters such Aid to Families with

10  Dependent Children Program).  Therefore, the allegations show that David Herman instituted or

11  prosecuted the criminal proceeding within the scope of his employment.

12       Plaintiffs also allege facts upon which defendant David Prentice, County Counsel, is entitled

13  to immunity.  The FAC also alleges that defendant Prentice was acting within the course and scope

14  of his employment.

15            "At all times herein mentioned, each Defendant was acting and acted
          within the course and scope of his, her, or its joint venture, agency,

16            service, employment and authority (actual, inherent, implied,
          ostensible, or otherwise)."  (Doc. 47, FAC ¶19.)

17

18  Plaintiffs cannot now argue that defendant Prentice was acting outside the scope of his employment.

19  *Javor v. Taggart*, 98 Cal.App.4th at 810 (having alleged in the original complaint that defendant

20  "acted within the course and scope of his authority," plaintiff could not thereafter contradict it);

21  *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 (9th Cir. 1997) (If the pleadings establish facts

22  compelling a decision one way, that is as good as if depositions and other expensively obtained

23  evidence on summary judgment establishes the identical facts).

24       The events at issue address institution or prosecution of judicial proceedings within the scope

25  of employment of defendants Herman and Prentice to cloak them with section 821.6 immunity.  As

26  such, plaintiffs' claim against these defendants is barred.

27            **d.**      **Allegations by Castle in the First Cause of Action**

28       Madera defendants note that plaintiff Judy Castle is not alleged to have suffered harm in the

first cause of action.  In their opposition, plaintiffs agree to withdraw plaintiff Castle from the first

cause of action.  Accordingly, defendant Castle will be dismissed from the first cause of action.

**C.     Causes of Action under §1983**

The Second and Third Causes of Action are for violation of Civil Rights, 42 U.S.C. §1983,

for deprivation of Due Process and Equal Protection.  Plaintiffs allege that they have a

constitutionally protected property interest in their easement rights.  (Doc. 47, FAC ¶96.)  Plaintiffs

allege that they have a protected easement right in the sixty (60) foot wide right of way known as

Cascadel Road.  (Doc. 47, FAC ¶1, 32.)  Plaintiffs also allege that Madera County has a longstanding

policy and custom of intentionally ignoring County Ordinances and State laws . . ." (Doc. 47, FAC

¶99.)  Plaintiffs allege they have been denied equal protection in that the residents of Cascadel

Woods Subdivision, and plaintiffs in particular, have been signaled out to be denied sufficient access

to their homes and for fire and safety vehicles.  (Doc. 47, FAC ¶ 90.)  Plaintiffs allege that they were

selectively prosecuted for maintaining Cascadel Road.[4]  (Doc. 47, FAC ¶114.)  Plaintiffs further

allege that they are denied full development rights to their property because of the "pinching down"

of the access.  (Doc. 47, FAC ¶115.)

**1.     Federal Constitutional Claims of Violation of Due Process and Equal Protection**

As relevant to this motion, the Second and Third Causes of Action are alleged against

---

[4] From this allegation, plaintiff may be pursuing a selective prosecution claim, although the FAC is unclear. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382 (1982)). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998), *cert. denied*, 525 U.S. 1154, 119 S.Ct. 1058, 143 L.Ed.2d 63 (1999). Where the challenged governmental policy is "facially neutral," proof of its disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-66, 97 S.Ct. 555 (1977) (citing *Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040 (1976)) ("Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination."). In order to prevail on a selective prosecution claim, a plaintiff must show that the prosecutorial policy both had a discriminatory effect and was motivated by a discriminatory purpose. *United States v. Armstrong*, 517 U.S. 456, 465, 116 S.Ct. 1480 (1996); *see also McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756 (1987) ("[T]o prevail under the Equal Protection Clause, [a plaintiff] must prove that the decisionmakers in his case acted with discriminatory purpose."). *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) ("To establish impermissible selective prosecution, plaintiff must show that others similarly situated have not been prosecuted and that the prosecution is based on an impermissible motive.") Plaintiffs have not made sufficient allegations to support this claim and it is unclear whether plaintiffs intend on, or could, make such a claim.

13

1   Madera, Prentice, Huston and Herman.  The Third Cause of Action also names the Board of

2   Supervisors.

3        Substantive due process addresses improper governmental interference with property rights

4   and irrational actions by government decision makes.  *County of Sacramento v. Lewis*, 523 U.S. 833,

5   845, 119 S.Ct. 1708 (1998).  Procedural due process requires that a property owner be provided

6   notice and an opportunity to be heard before the government may deprive the owner of the protected

7   property right.  *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1101 (1970).  Equal protection

8   requires that land use decisions be rationally related to a legitimate governmental purpose.  *City of*

9   *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513 (1976).  A basic requirement for a violation

10  of equal protection is that similarly situated property must have been treated differently.  *Carpinteria*

11  *Valley Farms, Ltd v. County of Santa Barbara*, 344 F.3d 822 (9th Cir. 2003).

12                    **A.    A Property Right Must be Deprived**

13        The United States Supreme Court has recognized that property rights are not created by the

14  Constitution.  To state a claim for violation of substantive due process, a land owner must have a

15  protected property interest.  *American Mfgrs Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59 119 S.Ct 977

16  (1999):

17          "The first inquiry in every due process challenge is whether the
            plaintiff has been deprived of a protected interest in 'property' or
18          'liberty.' . . .Only after finding the deprivation of a protected interest
            do we look to see if the State's procedures comport with due process."
19          (Citations omitted.)

20  Property rights are created and their dimensions are defined by existing rules or understandings that

21  stem from an independent source such as state law, rules or understandings that secure certain

22  benefits and that support claims of entitlement to those benefits.  *Board of Regents of State Colleges*

23  *v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *Barthuli v. Board of Trustees*, 19

24  Cal. 3d 717, 722, 139 Cal. Rptr. 627, 566 P.2d 261 (1977) (same).  Indeed, to determine whether a

25  protected property interest exists in a given instance, courts look to state law.  *WMX Techs, Inc. V.*

26  *Miller*, 80 F.3d 1315, 1318 (9th Cir. 1996) ("We look to state law to define the dimension of a

27  protected property interest.")   Property rights cannot be created by a person's unilateral needs. To

28  have a property interest in a benefit, a person must clearly have more than an abstract need or desire

                                              14

1   for it, or a unilateral expectation of it. Instead, the person must have a legitimate claim of entitlement

2   to the benefit. *See*, *generally*, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S. Ct.

3   2701, 33 L. Ed. 2d 548 (1972). A plaintiff must establish a legitimate entitlement to a liberty or

4   property interest, rather than a mere expectancy. *See generally Board of Regents v. Roth*, 408 U.S.

5   564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (To have a property interest in a benefit, a person

6   must have "a legitimate claim of entitlement," not a mere "unilateral expectation.").

7                    **B.    "Pinching Down" of the 60-Foot Easement**

8           Here, plaintiffs argue that they have a property interest in the easement arising from the right

9   of way abutting their property. Plaintiffs allege that Madera's actions in the settlement of

10  Houston/Barlow action, and with the Houston Dedication, "resulted in the reduction or 'pinching

11  down' of up to 60 feet of access to a mere 12 feet." (Doc. 47, FAC ¶101, 109.) Plaintiffs claim that

12  they are entitled to the 60-foot wide roadway, which was dedicated in the 1967 Dedication.

13  Plaintiffs allege that this "pinching down" of the 60-foot easement/right of way has deprived them of

14  adequate access by fire and emergency life safety vehicles to access Cascadel Woods in an

15  emergency. (Doc. 47, FAC ¶99.) Plaintiffs allege that the Settlement Agreement entered into

16  between Madera and defendants Houston "deprives plaintiffs of the protected rights in the easement

17  without due process of law." (Doc. 47, FAC ¶105.) Plaintiffs argue that Madera's abandonment of

18  the public easement is an abandonment of the historical public access originally deeded in 1888.

19                    (1) Statutory Dedication

20          The Cascadel Woods Subdivision map was filed in accordance with the Subdivision Map

21  Act. The Subdivision map offered a 60 foot right of way as a street, the 1967 Dedication. (Doc. 47,

22  FAC ¶25.) The filing of a subdivision map delineating a street is an offer to dedicate the land.

23  *Biagini v. Beckham*, 163 Cal.App.4th 1000, 1009, 78 Cal.Rptr.3d 171, 178 (2008). "A dedication is

24  the transfer of an interest in real property to a public entity for the public's use." *Biagini v. Beckham*,

25  163 Cal.App.4th at 1009. The mere filing of a subdivision map does not constitute an acceptance of

26  the dedication offers on the map. *Yox v. City of Whittier*, 182 Cal.App.3d 347, 354-355, 227 Cal.

27  Rptr. 311 (1986). A statutory dedication is effected when, in compliance with the map act then in

28  force, an offer of dedication is accepted by the public agency. *Galeb v. Cupertino Sanitary Dist.*,

                                           15

1    227 Cal.App.2d 294, 301, 38 Cal.Rptr. 580 (1964).

2         The dedication is not complete until the offer has been accepted by the appropriate official

3    governing body or designated official having jurisdiction over the dedicated property.  The

4    acceptance must be by resolution.  Cal.Gov Code §66477.3; *DiMartino v. City of Orinda*, 80

5    Cal.App.4th 329, 343, 95 Cal.Rptr.2d 16, 27 (2000) (it is well established that such words of

6    dedication on the map do not accomplish a dedication, even upon recordation and filing of the map.).

7    Until accepted, title to the dedicated property does not pass to the public agency.  Gov.Code, §§

8    66477.1, 66477.3; *Mikels v. Rager,* 232 Cal.App.3d 334, 351, 284 Cal.Rptr. 87, 92 (1991) (Until the

9    offer of dedication is unconditionally accepted, no public interest is created).

10        Here, the 1967 Dedication for a 60 foot easement/right of way was not accepted.  Plaintiffs

11   do not allege any facts which show the Madera expressly accepted the 1967 Dedication.  In fact,

12   plaintiffs allege that the "1967 dedicated has never been accepted by resolution of Madera County."

13   (Doc. 47, FAC ¶25.)  Without acceptance, the 1967 Dedication did not transfer any interest to the

14   easement/right of way to Madera.

15        In fact, Madera holds no interest in the 60 foot easement/right of way.  The FAC indicates

16   that Madera long before the 1967 Dedication transferred away any interest it held in the right of way.

17   (Doc. 47, FAC ¶24 ("Madera County deeded the County owned Cascadel Road right of way . . . to

18   Cascadel Ranch Properties.")  Thus, Madera held no interest in the property leading up to the 1967

19   Dedication.  The 60 foot easement/right of way then was offered to Madera in the 1967 Dedication

20   by the property developer, Cascadel Ranch Properties.  The offer, however, was not accepted.

21   According to plaintiffs' allegations, Cascadel New Life Foundation Inc. owns the property

22   underlying Cascadel Road; plaintiff does not allege that Madera owns the underlying property.  (Doc.

23   47, FAC ¶26.)  According to plaintiffs' allegations, the developer, Cascadel Ranch Properties, holds

24   title to the easement/right of way.  (Doc. 47, FAC ¶24.) Thus, Madera holds no interest in the

25   easement/right of way.

26        Since Madera holds no interest or title in the property offered in the 1967 Dedication, Madera

27   could not deprive plaintiff of plaintiffs' interest in the right of way.  Madera cannot quitclaim or

28   "pinch down," that which it does not own or have any interest in.  A quitclaim deed transfers

16

1   whatever present right or interest the grantor has in the property. *City of Manhattan Beach v.*

2   *Superior Court*, 13 Cal.4th 232, 239, 52 Cal.Rptr.2d 82, 86 (1996).

3         Madera, however, held an interest in the <u>offer</u> to dedicate the right of way.  The only interest

4   Madera held to quitclaim is Madera's interest in the "offer" of dedication.  At most, Madera "settled"

5   the "offer to dedicate the right of way."  In other words, Madera's 2007 Quitclaim Deed "rejected"

6   the 1967 offer of dedication. Therefore, the 2007 Quitclaim Deed arguably is a rejection of the 1967

7   Dedication.

8                 (2) <u>Common Law Dedication</u>

9         A statutory offer of dedication that has not been formally accepted, however, does not rule

10   out the possibility of a common law dedication, which may arise when the offer is impliedly

11   accepted from the public's use of the subject property over a reasonable period of time. *Biagini v.*

12   *Beckham*, 163 CA4th at 1009, 1014.

13         Plaintiffs allege that "Madera has impliedly accepted the 1967 Dedication," but do not offer

14   any factual support for their conclusory allegation.   (Doc. 47, FAC ¶29.)  "Use of the land so

15   identified by the public for such purposes over a reasonable period of time constitutes an acceptance

16   of the offer so made [citations], without any formal action in relation thereto by governmental

17   authority ." *Biagini v. Beckham*, 163 Cal.App.4th at 1009.  Public use may be proof of the roads'

18   acceptance. *Hanshaw v. Long Valley Road Ass'n*, 116 Cal. App. 4th 471, 11 Cal. Rptr. 3d 357

19   (2004) (The filing of a subdivision map delineating a street thereon is an offer to dedicate the land

20   identified; use of the land so identified by the public for such purposes over a reasonable period of

21   time constitutes an acceptance of the offer so made.); *see Hays v. Vanek*, 217 Cal.App.3d 271, 284,

22   266 Cal.Rptr. 856, 862 (1989) (The inference that public use constitutes acceptance of an offer of

23   dedication is dependent in large part on the fact that the public is using the piece of property offered).

24   Without factual support of acceptance, the 60 foot easement was nothing more than a private

25   easement between the developer and the property owners. A private easement over a roadway does

26   not create a dedication of that roadway for use by the public in general:

27            "when one lays out a tract of land into lots and streets and sells the lots
         by reference to a map which exhibits the lots and streets as they lie

28            with relation to each other, **the purchasers of such lots have a**

1       **private easement in the streets opposite their respective lots, for
ingress and egress and for any use proper to a private way, and ...
this private easement is entirely independent of the fact of
dedication to public use**, and is a private appurtenance to the lots, of
which the owners cannot be divested except by due process of law."

4 *Biagini*, 163 Cal.App.4th at 1012 (emphasis added), citing *Danielson v. Sykes*, 157 Cal. 686, 689

5 (1910).  Thus, the County had no rights in the easement - not by the dedication (because it was

6 unaccepted) and not by private easement.  Accordingly, 2007 Quitclaim Deed, if anything, resolved

7 the outstanding 1967 Dedication.  This Court ruled in its previous order on similar motions, that

8 plaintiffs do not have a property interest in the 1967 Dedication.  (Doc. 41 Order p. 13 ("As a matter

9 of law, plaintiffs cannot allege that they have a property interest in the Offer of Dedication."))

10 Plaintiffs do not allege how the 2007 Quitclaim Deed could have deeded away Plaintiffs' easement

11 rights.  According to plaintiffs' allegations, Madera held no rights to the easement/right of way and

12 has not 'accepted" the 1967 Dedication.

13       What the allegations boil down to is that plaintiffs are challenging Madera's actions of

14 rejecting the 1967 Dedication.  Plaintiffs have offered no argument or authority for the proposition

15 that they have a constitutional right to have the 1967 Dedication accepted by Madera or that they

16 suffered a constitutional violation for Madera's failure to accept the 1967 Dedication.  Therefore,

17 plaintiffs do not allege that they had any property right which could have been affected by

18 defendants' actions.

19       **2.**    **Allegations of Constitutional Infringing Customs or Policies**

20       Substantive and procedural due process and equal protection claims that are based on

21 violations of the federal constitution must be brought under the Civil Rights Act, 42 U.S.C. §1983.

22 Section 1983 "creates a private right of action against individuals who, acting under color of state

23 law, violate federal constitutional or statutory rights."  *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d

24 936, 943 (9th Cir. 2004), rehg and rehg en banc denied, 395 F.3d 1062 (9th Cir. 2005).  To maintain a

25 section 1983 claim against a local government, a plaintiff must establish the requisite culpability (a

26 "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or

27 custom as the "moving force" behind the constitutional deprivation).  *Monell v. New York City Dept.*

28 *of Social Servs.* 436 U.S. 658, 691-694, 98 S.Ct. 2018 (1978); *Gable v. City of Chicago*, 296 F.3d

531, 537 (7th Cir. 2002).

A plaintiff can establish a "policy or custom" by showing: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Gable*, 296 F.3d at 537; *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994). "[O]fficial policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445 (1981) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018)); *see Rizzo v. Goode*, 423 U.S. 362, 370-377, 96 S.Ct. 598 (1976) (general allegation of administrative negligence fails to state a constitutional claim cognizable under section 1983). A "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bryan County Commissioners v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382 (1997). A plaintiff must demonstrate that a defendant's policy was "closely related to the ultimate injury." *Harris*, 489 U.S. at 391, 109 S.Ct. at 1206. "At the very least there must be an affirmative link between the policy and particular constitutional violation." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427 (1985). Counties are liable for constitutional violations under § 1983 only if the individual officer who committed the violation was acting pursuant to a local policy, practice or custom. *King County v. Rasmussen*, 299 F.3d 1077, 1089 (9th Cir. 2002), *cert. denied*, 538 U.S. 1057 (2003).

Plaintiff alleges the following "policies," "customs" or practices violated their rights. Plaintiff alleges that Madera had a policy and custom of "intentionally ignoring county Ordinances and state laws." (Doc. 47, FAC ¶ 99.) Plaintiffs allege that their practice of the "Houston Dedication" violated Madera County Code. (Doc. 47, FAC ¶99.) The practice of prosecuting plaintiff in violation of title 10 of the Madera County Code violated plaintiff's rights. (Doc. 47, FAC ¶100.) Plaintiffs allege that Houston/Barlow "Settlement Agreement" and the "2007 Quitclaim Deed" deprived plaintiff of their protected easement rights. The Board approval of the Houston/Barlow Settlement Agreement deprives plaintiff of their easement rights. (Doc. 47 FAC

19

¶104-105, 106-107.)  Plaintiffs allege that this "custom and policy" resulted in the "pinching down"
of the easement which is inadequate for fire and emergency access and for the additional building
permits in Cascadel Woods.  (FAC ¶101.)[5]

Plaintiffs' allegations can be categorized into two forms.  First, the allegations allege Madera
failed to follow its laws.  Failure to follow local ordinances cannot support a claim for violation of
constitutional rights.  Section 1983 imposes liability for violations of rights protected by the
Constitution, not for violations of duties of care arising out of state or local law. *Baker v. McCollan*,
443 U.S. 137, 99 S.Ct 2689, 2696.

The second category of allegation is that plaintiffs allege that the settlement with
Houston/Barlow deprived plaintiff of their easement rights.  A §1983 action cannot be sustained
absent allegations that a policy or custom resulted in a violation of a constitutional right.  Plaintiffs
must first allege a constitutional violation by the policy or custom.  As discussed above, plaintiffs
failed to allege a constitutional violation in the alleged "pinching down" of Cascadel Road.

The Court will grant an opportunity to amend the complaint.

### 3.   Absolute and Qualified Immunity

The individual defendants allege that they are entitled to absolute, or at least, entitled to
qualified immunity.

### A.   Absolute Immunity

Defendants argue prosecutors are granted absolute immunity from damages arising from
"initiating a prosecution and in presenting the State's case," because such activities are "intimately
associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409,
430-431 (1976).  Plaintiffs argue that defendants and Prentice and Herman did not engage in

---

[5] Plaintiffs' counsel is admonished that Federal Rule of Civil Procedure 8 requires a "short plain statement of the claim showing that the pleader is entitled to relief."  The FAC contains 143 paragraphs of conclusory and repetitious allegations, much of which is unnecessary to the allegations to support the claims. The FAC is not a short plain statement. For instance, this Court previously addressed issues of emergency access and fire safety as not cognizable in this action, yet the FAC continues to allege irrelevant facts.  Many of the allegations are conclusory ramblings of "constitutional violations." See e.g., ¶¶20, 67.  Plaintiffs' counsel is admonished to clearly set forth the elements of each claim and remove extraneous allegations.
   Defense counsel is admonished that in any future motion, to cite to the specific complaint paragraphs which defendants contend are legally or factually insufficient.

1   prosecutorial activities.  Plaintiff argues that Prentice is not a prosecutor and acted to deprive

2   plaintiffs of their rights from the Houston Dedication.  Plaintiffs argue that defendant Herman is not

3   a prosecutor and he engaged in "failing to follow state and local statutes and ordinances."  (Doc. 55,

4   Opposition p.13.)

5        The individual defendants are absolutely immune for conduct arising from the prosecution of

6   plaintiff Stamas.  Prosecutors and other eligible government personnel are absolutely immune from

7   section 1983 damages in connection with challenged activities related to the initiation and

8   presentation of criminal prosecutions.  *Imbler*, 424 U.S. 409; *see also Kalina v. Fletcher*, 522 U.S.

9   118, 118 S.Ct. 502, 507 (1997); *Roe v. City of San Francisco*, 109 F.3d 578, 583 (9th Cir. 1997).

10  "[A]bsolute prosecutorial immunity attaches to the actions of a prosecutor if those actions were

11  performed as part of the prosecutor's preparation of his case, even if they can be characterized as

12  'investigative' or 'administrative.'" *Demery v. Kupperman*, 735 F.2d 1139, 1143 (9th Cir. 1984), *cert.*

13  *denied*, 469 U.S. 1127, 105 S.Ct. 810 (1985).  Even charges of malicious prosecution, falsification of

14  evidence, coercion of perjured testimony and concealment of exculpatory evidence will be dismissed

15  on grounds of prosecutorial immunity.  *See Stevens v. Rifkin*, 608 F.Supp. 710, 728 (N.D. Cal. 1984).

16       Here, the individual defendants who engaged in prosecutorial conduct of plaintiff Stamas are

17  entitled to absolute immunity for prosecutorial actions.

18       Absolute immunity has been extended an attorney's official conduct representing the

19  government in litigation. S*ee Fry v. Melaragno*, 939 F.2d 832, 837-838 (9th Cir. 1991) (stating that

20  if a government attorney is performing acts intimately associated with the judicial phase of litigation,

21  the attorney is entitled to absolute immunity from liability for damages); *accord Pinholster v.*

22  *Patterson,* 2007 WL 2729157, *1 (N.D.Cal. 2007) (state attorney general in civil rights action);

23  *Zubiate v. Sonoma County Social Services Dept.*, 1997 WL 397758, *2 (N.D.Cal. 1997) (counsel for

24  Sonoma County Social Services Department).

25       The allegations of the FAC link defendant Prentice to obtaining and enforcing the Houston

26  Dedication in litigation involving Madera County.  The Houston Dedication, by the allegations of the

27  FAC, was obtained from settlement of a civil litigation against Madera.  (See e.g., Doc. 47, FAC ¶98,

28  ("Madera County Counsel in carrying out the express policies of Madera County reached the

1   Settlement Agreement with the Houstons which resulted in the depravation [sic] of Plaintiffs'

2   property."); ¶102 ("Prentice . .. acting on behalf of the County of Madera negotiated the Settlement

3   Agreement by and between the Houstons and Madera.").)  Defendant Prentice represented Madera in

4   the settlement with the Houstons.  Thus, defendant Prentice is immune for his actions arising from

5   Madera's litigation and litigation related functions during his representation of Madera.  *See Fry v.*

6   *Melaragno*, 939 F.2d at 837 ("Whether the government attorney is representing the plaintiff or the

7   defendant, or is conducting a civil trial, criminal prosecution or an agency hearing, absolute

8   immunity is 'necessary to assure that ... advocates ... can perform their respective functions without

9   harassment or intimidation.'")

10       Accordingly, Defendant Prentice is entitled to absolute immunity for actions associated with

11   the Madera/Houston litigation.  There is no authority for the proposition that a government attorney

12   is liable for litigation related conduct.

13       Similarly, defendant Herman is alleged also to have engaged in the same conduct as

14   defendant Prentice.  Accordingly, Herman is absolutely immune.

15                    **B.    Qualified Immunity**

16       Qualified immunity is a defense to claims against governmental officials "arising out of the

17   performance of their duties.  Its purpose is to permit such officials conscientiously to undertake their

18   responsibilities without fear that they will be held liable in damages for actions that appear

19   reasonable at the time, but are later held to violate statutory or constitutional rights." *Kraus v. Pierce*

20   *County*, 793 F.2d 1105, 1108 (9th Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1571 (1987).

21   Qualified immunity protects section 1983 defendants "from liability for civil damages insofar as

22   their conduct does not violate clearly established statutory or constitutional rights of which a

23   reasonable person would have known."  *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 943 (9th

24   Cir. 2004).  The "heart of qualified immunity is that it spares the defendant from having to go

25   forward with an inquiry into the merits of the case.  Instead, the threshold inquiry is whether,

26   assuming that what the plaintiff asserts the facts to be is true, any allegedly violated right was clearly

27   established."  *Kelley v. Borg*, 60 F.3d 664, 666 (9th Cir. 1995).

28       The Court need not reach the issue of qualified immunity because the Court finds the

1   individual defendants are entitled to absolute immunity on the civil rights claims.  Their alleged

2   wrongful conduct arises from their initiation, handling and resolution of civil litigation for or on

3   behalf of the government.

4   **D.      Malicious Prosecution**

5          The eleventh cause of action alleges Malicious Prosecution against Madera, the Board,

6   attorney Prentice and attorney Herman.  Defendants move to dismiss the claim for malicious

7   prosecution on the ground that plaintiffs do not allege the prior proceeding concluded in plaintiffs'

8   favor.  Defendants also argue that plaintiff Castle should be dismissed since no prior action was filed

9   against her. Defendant further argue that defendants Herman, Prentice and Huston are immune under

10   Gov.Code section 821.6.

11          Plaintiffs argue that the criminal action "resulted in full dismissal before trial with no

12   criminal plea bargain.  This dismissal is a favorable outcome to Stamas."  (Doc. 55, Opposition

13   p.14.)

14          **1.      Favorable Result**

15          The basic elements of the tort of malicious prosecution of a civil matter are (1) the initiation

16   of a prior proceeding, (2) without a reasonable belief in the possibility of the suit being successful

17   (i.e., probable cause), (3) termination of that proceeding in favor of the present plaintiff, and (4)

18   malice.  *Drummond v. Desmarais*, 176 Cal.App.4th 439, 449 (2009); *Cantu v. Resolution Trust*

19   *Corp.*, 4 Cal.App.4th 857, 881 (1992) ("The termination must demonstrate the innocence of the

20   accused.")

21          A settlement of an action is not generally a "favorable termination."

22          "A dismissal resulting from a settlement generally does not constitute a
        favorable termination. In such a case the dismissal reflects
23      ambiguously on the merits of the action because it results from the
        joint action of the parties, leaving open the question of the defendant's
24      guilt or innocence."

25   *Fuentes v. Berry*, 38 Cal.App. 4th 1800, 1808 (1995).  The test is whether or not the termination tends

26   to indicate the innocence of the defendant or simply involves technical, procedural or other reasons

27   that are not inconsistent with the defendant's guilt.  *Haight v. Handweiler,* 199 Cal.App.3d 85, 88-89,

28   244 Cal.Rptr. 488 (1988).

1    Here, plaintiff has not alleged facts that the termination of the criminal proceeding was in

2  favor of plaintiff.  Plaintiff alleges in a conclusory fashion, "SCR00769 was dismissed in Plaintiff's

3  favor before trial." (Doc. 47, FAC ¶ 143.) Elsewhere in the FAC, however, plaintiff alleges that the

4  "civil settlement stated that Stamas was to be provided fully code compliant access over the Subject

5  Area provided he did not personally perform road maintenance in the Subject Area;" (Doc. 47, FAC

6  ¶65), and that the "Civil Settlement Agreement required Plaintiff Stamas to cease maintaining

7  Cascadel Road." (Doc. 47, FAC ¶89.)  These allegations do not factually support the element that

8  termination of the criminal proceeding was in favor of plaintiff.  Leave to amend will be granted.

9          **2.      Immunity of the Individual Defendants**

10    Defendants argue that Gov. Code §821.6 grants immunity for the malicious prosecution

11  action.

12    As discussed *infra*, Gov.Code § 821.6 states:

13          "[a] public employee is not liable for injury caused by his instituting or
          prosecuting any judicial or administrative proceeding within the scope
14          of his employment, even if he acts maliciously and without probable
          cause."

15

16  The malicious prosecution action arises from defendants' participation in plaintiff's prosecution in

17  *People v. Stamas*, SCR007619.  As discussed *infra*, the events at issue address institution or

18  prosecution of judicial proceedings within the scope of employment of defendants Herman and

19  Prentice to cloak them with section 821.6 immunity.

20          **3.      Malicious Prosecution as to Plaintiff Castle**

21    Madera defendants note that plaintiff Judy Castle is not alleged to have suffered harm in the

22  cause of action for malicious prosecution.

23    Indeed, the FAC does not allege that plaintiff Judy Castle was prosecuted in the criminal

24  action.  In their opposition, plaintiffs do not address plaintiff Castle.  Accordingly, plaintiff Castle

25  will be dismissed from the malicious prosecution cause of action.

26  **E.      Cal. Civ. Code 1714.10 and Conspiracy**

27    Plaintiffs allege that the individual attorney defendants are in conspiracy with the other

28  defendants.  The individual defendants of Prentice, Huston and Herman are county attorneys who are

24

1   being sued for conduct related to the representation of the County in the criminal action against

2   Stamas and in the civil action with Houston/Barlow which resulted in the 2007 Dedication.

3       ¶17    "Plaintiffs are informed and believe that each of he above named persons including

4             those not named as defendants at his time were co-conspirators and committed acts in

5             furtherance of said conspiracy. . ."

6       ¶20     "County of Madera and were joined in and/or implemented by the remaining

7             Defendants, and each of them, acting as the agent, servant, employee and/or in

8             concert, and/or in conspiracy with each of said other Defendants."

9       ¶ 29   "Madera and named Defendants herein all participated in and colluded to target

10            plaintiff Stamas . . ."

11      These conclusory allegations have no legal significance. In California, Civil Code § 1714.10

12  requires a plaintiff to obtain a court order prior to filing any claim premised upon an attorney's

13  conspiracy with a client:

14          No cause of action against an attorney for a civil conspiracy with his or
    her client arising from any attempt to contest or compromise a claim or

15          dispute, and which is based upon the attorney's representation of the
    client, shall be included in a complaint or other pleading unless the

16          court enters an order allowing the pleading that includes the claim for
    civil conspiracy to be filed after the court determines that the party

17          seeking to file the pleading has established that there is a reasonable
    probability that the party will prevail in the action.

18

19  § 1714.10(a) (emphasis added). Failure to seek such an order is a complete defense to the filing of

20  any action for civil conspiracy, and may form the basis of a motion to strike. § 1714.10(b).

21      Plaintiffs argue in their opposition that the defense of §1714.10 has been waived because

22  defendants did not raise the defense in their prior motion to dismiss.  As noted above, an amended

23  pleading is a new round of pleadings. The amended pleading is subject to the same challenges as the

24  original (i.e., motion to dismiss, to strike, for more definite statement). *See Nelson v. Adams USA,*

25  *Inc.*, 529 U.S. 460, 466, 120 S.Ct. 1579, 1584 (2000).  Accordingly, the defense is not waived.

26      Plaintiffs have not alleged that they have obtained the requisite court order and do not argue

27  in their opposition that they may amend to allege obtaining a court order.  Since plaintiffs cannot

28  allege that they obtained a court order prior to filing this claim, any allegations of conspiracy

between the County/Board and defendants Prentice, Huston and Herman are stricken.

## CONCLUSION

For the foregoing reasons, the Court partially GRANTS and partially DENIES the motions as follows:

    1.    DISMISSES the First Cause of Action for Abuse of Process;

    2.    DISMISSES the Second and Third Causes of Action for Violation of 42 U.S.C. §1983;

    3.    DISMISSES the Eleventh Cause of Action for Malicious Prosecution;

    4.    DISMISSES the First Cause of Action for Abuse of Process and the Eleventh Cause of Action for Malicious Prosecution as to plaintiff Judy Castle;

    5.    DISMISSES the individual defendants as they are immune;

    6.    DENIES the Board of Supervisors' motion to strike.

Plaintiffs shall have twenty days (20) days from the date of service of the order to file an amended complaint in conformance with this order.

IT IS SO ORDERED.

**Dated:    January 14, 2010**            **/s/ Lawrence J. O'Neill**
                                                  UNITED STATES DISTRICT JUDGE