1
2
3
4
5
6
7          **IN THE UNITED STATES DISTRICT COURT**

8          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10   MARK STAMAS and JUDY CASTLES,            CASE NO. CV F 09-0753 LJO SMS

11                    Plaintiffs,              **ORDER ON DEFENDANTS'**
                vs.                            **MOTION TO DISMISS** (Doc. 67, 68)
12
     COUNTY OF MADERA, et al.,
13
                     Defendants.
14   _____/

15          Two motions to dismiss are pending before this Court challenging plaintiffs' Second

16   Amended Complaint.  By notice filed on March 3, 2010, Defendants County of Madera ("Madera")

17   and the Board of Supervisors of the County of Madera ("Board") (collectively referred to as "Madera

18   defendants") move for dismissal of Plaintiffs' first, second, third, fourth, fifth and sixth causes of

19   action in the Second Amended Complaint ("SAC"), pursuant to Fed.R.Civ.P 12(b)(6).  The second

20   motion to dismiss is by defendants Gerald Houston and Linda Barlow, filed on March 5, 2010.

21   These defendants move to dismiss the first and fourth causes of action.  Plaintiffs Mark Stamas and

22   Judy Castles filed their oppositions to both motions on March 23, 2010.  All defendants filed reply

23   briefs.  Pursuant to Local Rule 230(g), this matter was submitted on the pleadings without oral

24   argument and the hearing was vacated.  Having considered the moving, opposition, and reply papers,

25   as well as the Court's file, the Court issues the following order.

26                              **FACTUAL BACKGROUND**

27          This is the third time the court has considered motions on allegations relating to the dispute

28   over a rural roadway in Madera County.

                                          1

1  **A.      Factual Overview**

2          Plaintiffs claim a right to an easement on Cascadel Road.    Plaintiffs filed their Second

3  Amended Complaint ("SAC") on February 4, 2010.

4          Plaintiffs are the owners of Lot 38 of Subdivision No. 4 in the Cascadel Woods Subdivision

5  in Madera County.  The Cascadel Woods Subdivision is located in a mountainous portion of the

6  County.  Plaintiffs' property abuts Cascadel Road which is the main ingress and egress to the

7  Subdivision.  (Doc. 60, SAC ¶¶1, 3.)  Cascadel Road through the subdivision is a privately owned

8  and maintained public access road.  (Doc. 60, SAC ¶7, 9.)  When the Cascadel Woods Subdivision

9  map was recorded in 1963, the map showed all roads as having a sixty (60) foot easement dedicated

10 for private roads.   (Doc. 60, SAC ¶8.)  The developer of the Cascadel Woods Subdivision, Cascadel

11 Ranch Properties, Inc., offered for dedication the sixty (60) foot right-of-way as a street right-of-way

12 ("1967 Dedication").  (Doc. 60, SAC ¶¶8.)  The 1967 Dedication was never accepted by the County

13 by resolution.  (Doc. 60, SAC ¶8.)

14         Cascadel Ranch Properties, Inc. originally owned the property which is now owned by

15 defendants Gerald Houston and Linda Barlow, who own Lot 1 in the Cascadel Woods Subdivision.

16 (Doc. 60, SAC ¶¶ 8, 10.)  The Houston/Barlow property is split by the Cascadel Road and they do

17 not own the property underneath the section of Cascadel Road ("Road Property") as it splits their

18 property.  (Doc. 60, SAC ¶10.)  On May 26, 1972, the property underlying the Cascadel Road right-

19 of-way, the Road Property, was excepted from the deed for the property now owned by

20 Houston/Barlow. (Doc. 60, SAC ¶11.)

21         Plaintiff alleges that the Road has been maintained for years for public use.  Plaintiffs allege

22 that "the USFS, the Cascadel Mutual Water Company, many local residents, local users, logging

23 companies, the Coursegold Resource Conservation District under Road Department direction,

24 Plaintiffs and others have continuously maintained, cleared, brushed, expanded and prepared the

25 Road, including the Road Property, for decades." (Doc. 60, SAC ¶12.)  In response to

26 Houston/Barlow attempting to construct gates on Cascadel Road, the Board adopted a report with a

27 "requirement to leave Cascadel Road open to thru traffic."  (Doc. 60, SAC ¶13.)

28         A dispute arose among the parties to this litigation as to the use of Cascadel Road and the

1  ownership of the underlying property.  Houston/Barlow claimed ownership to the underlying

2  property of Cascadel Road as the road passes over their property.  Houston/Barlow filed a civil

3  action in Madera County Superior Court against Madera County and Mark Stamas and Judy Castles,

4  among others. ("Civil Action 1").  (Doc. 60, SAC ¶15.)   Houston/Barlow and Madera settled the

5  dispute ("Settlement Agreement"), and plaintiffs allege that the "Settlement Agreement extinguishes

6  Plaintiffs' and the public's rights in the Road Property." *Id.*  Plaintiffs allege the Houston/Barlow

7  agreed to abandon their claims against the County in exchange for the County's promise to execute a

8  Quitclaim deed releasing any of its interest in the Road and Road Property ("2007 Quitclaim").

9  (Doc. 60, SAC ¶16.) The 2007 Quitclaim gave the Houstons rights to gate the road and for road

10  work on the Road Property to be exclusively performed by the Houstons.  (Doc. 60, SAC ¶16.) As

11  part of the Settlement Agreement, Houston/Barlow offered for dedication an area consisting of 12

12  foot wide portion of Cascadel Road as it passes through the Houston/Barlow property ("Houston

13  Dedication").  **(**Doc. 60, SAC ¶16.)  Plaintiffs allege that this 12 foot wide portion eliminates most of

14  their easement.

15  **B.       Summary of Pertinent Allegations**

16          The SAC states the following causes of causes:

17          1.       First Cause of Action for Abuse of Process;

18          2.       Second Cause of Action for Violation of 42 U.S.C. §1983 - Due Process;

19          3.       Third Cause of Action for Violation of 42 U.S.C. §1983 - Equal Protection;

20          4.       Fourth Cause of Action for Malicious Prosecution;

21          5.       Fifth Cause of Action for Breach of Contract;

22          6.       Sixth Cause of Action for Inverse Condemnation;

23          7.       Seventh Cause of Action fo Declaratory relief; and

24          7.       Eighth Cause of Action for Quiet Title.

25                          **ANALYSIS AND DISCUSSION**

26  **A.       Standards for The Motion to Dismiss**

27          A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of

28  the pleadings set forth in the complaint.   A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there

is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations of the complaint in question, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008); *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). A claim has facial plausibility,"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937 (2009). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969. If a plaintiff fails to state a claim, a court need not permit an attempt to amend a complaint if "it determines that the pleading could not

4

1  possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection*

2  *Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

3      The court need not accept as true conclusory allegations or legal characterizations. Nor need

4  it accept unreasonable inferences or unwarranted deductions of fact. *In re Delorean Motor Co.*, 991

5  F.2d 1236, 1240 (6th Cir. 1993).  The district court is not required to accept as true allegations in an

6  amended complaint that, without any explanation, contradict an earlier complaint. *Ellingson v.*

7  *Burlington Northern, Inc.*, 653 F.2d 1327, 1329–1330 (9th Cir. 1981).

8  **B.      Plaintiff's Request for Judicial Notice**

9      Plaintiff has asked the Court to take judicial notice of various documents.  (Doc. 71, Request

10  for Judicial Notice.)  Plaintiff asks the Court to take judicial notice of the following:

11          a.      E-mail from Jerry Houston to David Herman

12          b.      Vote of Madera County Board of Supervisors regarding Cascadel Road dated

13                  May 17, 2005

14          c.      Madera County Code ("MCC") Chapters 10.24 re Obstructions and Damages

15                  to County Highways, Ordinance 459B County Board of Supervisors

16          d.      Letter dated July 5, 2007 from Sheldon Feigel to David Prentice

17          e.      Letter dated July 11, 2007 from David Prentice to Sheldon Feigel

18          f.      Letter dated November 9, 2007 from Sheldon Feigel

19          g.      Letter dated November 14, 2007 from Dennis Cota to Sheldon Feigel

20          h.      November 27, 2007 transcript of arraignment in People v. Stamas

21          I.      Letter dated March 30, 2009 from Stan Craig CAL FIRE (attached to Doc.

22                  74.)

23      "Judicial notice" is the court's recognition of the existence of a fact without the necessity of

24  formal proof.  *See United States v. Harrison*, 651 F.2d 353, 355 (5th Cir. 1981); *Castillo-Villagra v.*

25  *I.N.S.*, 972 F.2d 1017, 1026 (9th Cir. 1992).  Facts proper for judicial notice are those facts not

26  subject to reasonable dispute and either "generally known" in the community, or "capable of accurate

27  and ready determination" by reference to sources whose accuracy cannot be reasonably questioned.

28  Fed.R.Evid. 201;  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (court may

5

take judicial notice of official records and reports.  The court need not accept as true allegations that contradict facts which may be judicially noticed by the court.)  A court may take judicial notice of its own records. *See e.g.*, *Day v. Moscow*, 955 F.2d 807, 811 (2nd Cir. 1992).  Courts may take judicial notice of public records. *Cachil Dehe Band of Wintun Indians of Colusa Indian Community v. State of Calif.*, 536 F.3d 1034, 1039–1040 & fn. 4 (9th Cir. 2008).  Judicial notice is particularly appropriate for the court's own records in prior litigation related to the case before it. *Amphibious Partners, LLC v. Redman*, 534 F.3d 1357, 1361–1362 (10th Cir. 2008) (district court was entitled to take judicial notice of its memorandum of order and judgment from previous case involving same parties).

The Court cannot take judicial notice of the requested correspondence.  The email correspondence and the letters to and from counsel are not judicially noticeable because they are not facts "generally known" in the community and are not "capable of accurate and ready determination."  Therefore, the Court will not take judicial notice of these documents.  Plaintiff argues that these documents are "public records."  These correspondence, however, do to fit into any definition of a public record.  See Fed.R.Evid. 803 (8) (public records).

Further, the Court can take judicial notice of the existence of the Vote of the Board of Supervisors, but not the underlying factual support for the vote.  The Court may also take judicial notice of the existence of the Madera County Municipal Code, but not the plaintiffs' interpretation of that Municipal Code.

**C.      First Cause of Action for Abuse of Process**

Under California law, the tort of abuse of process requires misuse of a judicial process. *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019 (9th Cir.), *cert. denied*, 129 S.Ct 174 (2008).  The essence of the tort lies in the misuse of the power of the court. It is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice. *Woodcourt II Limited v. McDonald Co.*, 119 Cal.App.3d 245, 252, 173 Cal.Rptr. 836, 840 (1981).  To succeed in an action for abuse of process under California law, a litigant must establish that the defendant: (1) contemplated an ulterior motive in using the judicial process, and (2) committed a willful act in the use of that process not proper in the regular conduct of the proceedings. *Estate of*

1   *Tucker ex rel. Tucker*, 515 F.3d at 1037.

2   **1.    No Judicial Process alleged against Defendants (Houston and Barlow)**

3   Defendants Gerald Houston and Linda Barlow argue that plaintiff continues to attempt to

4   find abuse of process in the wrongful filing of a criminal complaint.  (Doc. 68, Houston P&A p.8.)

5   Houston/Barlow argue that the criminal complaint against Stamas was brought by the District

6   Attorney and Houston and Barlow were not parties to the criminal action.  (Doc. 68, Houston P&A

7   p. 8.)

8   Here, plaintiffs' allegations cannot support a claim for abuse of process against Houston and

9   Barlow.  The alleged abuse of process arose from the filing and prosecution of the criminal

10   proceeding against plaintiff Stamas' for his attempted road maintenance on Cascadel Road.  The

11   allegations of wrongful conduct by defendants Gerald Houston and Linda Barlow in the first cause of

12   action state:

13   "23.  On or about October 5, 2007, the Houstons caused and procured
      a criminal complaint to be filed against Mark Stamas entitled *The*
14   *People of the State of California v. Mark Stamas*.

15   24. . . . Plaintiffs are informed, believe and allege that Defendants
      exploited the Madera County criminal court system, procuring,
16   contemplating and planning the filing of a baseless criminal action to
      gain an advantage in a civil dispute . . .

17

18   26.  Plaintiffs are informed, believe and allege that the Houstons sent
      an e-mail to Deputy County Counsel David Herman ("Herman") as
      planned, which complained of the maintenance performed by the
19   contractor. . . . Plaintiffs are informed, believe and allege that
      Houstons, through Madera County, caused the complaint to be filed
20   without the Madera County District Attorney's knowledge or consent,
      without investigation, without cause and within a day of receiving the
21   Houstons' e-mail complaining of CWPOA's road maintenance.
      Plaintiffs are informed, believe and allege that Houstons were
22   intimately involved with the criminal judicial process throughout, up
      to and including direction of the "settlement" process on the date of
23   trial.

24   27. Plaintiffs allege .. . the criminal action [was not] filed in an effort
      to punish Mark Stamas for trespass, but instead with the ulterior
25   motive to force compliance with the Houston Offer. . . . The judicial
      process was misused to make statement through the prosecutor
26   ordering compliance with the Houston Offer. . . .Judicial process was
      misused along with threat of further prosecution to compel compliance
27   with the Houston Offer.

28   The allegations focus on defendants Gerald Houston or Linda Barlow causing a complaint to be filed

7

1  by the District Attorney.

2       As this Court has noted in previous motions, the mere filing of a complaint or maintenance of

3  a lawsuit, even for an improper purpose, does not constitute an abuse of process. *Oren Royal Oaks*

4  *Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.,* 42 Cal.3d 1157, 232 Cal.Rptr. 567 (1986)

5  (allegation that Environmental Quality Act action was improperly instituted was insufficient to state

6  cause of action for abuse of process); *Trear v. Sills,* 69 Cal.App.4th 1341, 1359, 82 Cal.Rptr.2d 281,

7  293 (1999) (the tort requires abuse of legal process, not just filing suit. Simply filing a lawsuit for an

8  improper purpose is not abuse of process.)  In *Oren Royal Oaks Venture v. Greenberg, Bernhard,*

9  *Weiss Karma, Inc.,*42 Cal.3d 1157, 1169-1170 (1986), the court held that "while a defendants act of

10  improperly instituting or maintaining an action may, in an appropriate case, give rise to a cause of

11  action for malicious prosecution, the mere filing or maintenance of a law suit even for an improper

12  purpose is not a proper basis for an abuse of process action. [Citations.]"

13       Plaintiff does not allege a judicial process which was abused.  Filing a lawsuit, even with an

14  improper motive, is not actionable. Plaintiff alleges that the criminal action was wrongfully filed

15  against him. Plaintiff alleges that Houston e-mailed Deputy Herman who then brought the criminal

16  action against plaintiff Stamas.  (Doc. 60, SAC ¶26.)  The criminal action was filed by Madera

17  County Counsel arising from plaintiff's actions in maintaining the road.[1]  Filing the action and

18  maintaining the action, even for an improper purpose, are not an abuse of process.

19       Plaintiff allege that the Houstons were "intimately involved with the criminal judicial process

20  throughout, up to and including direction of the 'settlement' process on the date of trial." (Doc. 60,

21  SAC, ¶26.)  Plaintiffs argue that Houston and Barlow used the criminal prosecution to enforce the

22  "Houston Settlement" by coercing the "Civil Settlement" of the criminal prosecution.  (Doc. 72,

23  Plaintiff's Opposition p.9.)  These allegations, however, are not an improper use of the judicial

24  process. Even accepting the truth that the Houstons were intimately involved in the criminal process,

25  _____

26       [1] To the extent plaintiffs claim that contacting Madera County counsel, via email, is an abuse of process, that
allegation fails to state a claim.  There was no court process used in the communication.  Further, it is questionable whether
27  petitioning government officials for redress of perceived wrongs is actionable as an abuse of process. *See e.g.*, *Salma v.*
*Capon*, 161 Cal.App.4th 1275, 1286-1287 (2008) (contacting municipal departments seeking official investigation is
28  protected activity.)

plaintiff does not allege an improper judicial process. The plaintiff must show some procedural

impropriety, such as purposely filing suit in the wrong county to vex the defendant, seeking

attachment of property known to be exempt from attachment, and so forth. *See*, *e.g.*, *Barquis v.*

*Merchants Collection Assn.*, 7 Cal.3d 94, 97-98, 101 Cal.Rptr. 745 (1972); *Coleman v. Gulf Ins.*

*Group*, 41 Cal.3d 782, 792-793, 226 Cal.Rptr. 90 (the taking of an appeal, even one lacking in merit

and intended to cause delay and coerce a settlement, does not provide a basis for filing an action for

abuse of process.)  There is no allegation that Houston and Barlow improperly used the Court's

process in the criminal action.  The motion to dismiss will be granted as to Houston and Barlow.

### 2.   Abuse of Process by Madera and the Board

Madera and the Board argue that no judicial process is alleged to have been abused.  Plaintiff

continues to allege that the filing and maintenance of the criminal action is the abuse.  The Madera

defendants note that no other court process have been alleged.

The complaint does not allege anything more than the filing and maintenance of the criminal

action as the abuse of process.  The alleged misuse of the judicial process is the criminal action and

conduct within the criminal action.  Plaintiff attempts to plead around a "misuse of judicial process"

by alleging that: "The judicial process was misused to make statements through the prosecutor

ordering compliance with the Houston Offer. . . . Judicial process was misused along with threat of

further prosecution to compel compliance with the Houston Offer."  (Doc. 60, SAC ¶27.)

The complaint, however, does not allege that the <u>court's process</u> was misused in these

settlement agreement.  Filing and maintaining the criminal case is not actionable.  Threats outside of

the judicial process do not form the basis for an abuse of process claim.  *Estate of Tucker ex rel.*

*Tucker*, 515 F.3d 1019, at 1038 n.22 (no claims for abuse of process where threats where carried out

about contacting the FBI to institute an investigation because "the tort of abuse of process lied in the

misuse of the power of the <u>court</u>.") (emphasis in original.) The complaint merely alleges that filing

of the criminal action was the abuse of process.  (See SAC ¶29 ("The criminal action that

Defendants caused to be filed against Mark Stamas caused him and his family significant grief,

humiliation and emotional distress."))

The Court has previously taken judicial notice, at plaintiff's request, of the transcript of the

1   resolution of plaintiff's criminal action.  (See Doc. 41 Aug. 18, 2009 Order p. 18.)  Plaintiffs refer to

2   the resolution as the "civil settlement.  The transcript shows that the resolution of the criminal

3   proceeding was accomplished in open court, with a Superior Court judge presiding.  (Doc. 33,

4   Transcript p. 4-6.)  The transcript indicates that "in return for Mr. Stamas agreeing to certain

5   conditions the people are willing to dismiss all charges."  (Doc. 33, Transcript p.3.)  The main

6   agreement was that "Mr. Stamas will agree not to do any maintenance personally as an individual on

7   the subject section of the property," to which plaintiff agreed.  (Doc. 33, Transcript p.3.) The Judge

8   of the Superior Court took the settlement and agreement on the record.  (*Id.*) The Court supervised

9   the settlement agreement and authorized the resolution of the criminal action through the settlement.

10      Plaintiffs' allegations simply fail to allege that the process of the court has been abused given

11   the on-the-record resolution of the criminal proceeding.  The allegations do not support a claim for

12   abuse of process for bringing the criminal action and for the resolution of the criminal action.

13      Plaintiff cites to *Booker v. Rountree,* 155 Cal.App.4th 1366, 1372, 66 Cal.Rptr.3d 733 (2007)

14   for the proposition that judicial "process" is defined broadly to cover a broad range of procedures.  In

15   *Booker,* a property owner settled an Unruh Civil Rights Act suit with a wheelchair-bound patron of

16   restaurant. A second wheelchair-bound patron, represented by the same attorney, served the property

17   owner with an identical action immediately after settlement.  The property owner argued that the

18   second wheelchair-bound patron knowingly delayed serving the complaint or revealing its existence

19   until after the first identical action was settled in order to obtain higher settlement than if the two

20   cases were joined.  The Court held that this was sufficient to allege abuse of process.  The intentional

21   delay in service showed misuse of the judicial process. Thus, in *Booker,* the judicial process, service

22   of the summons and complaint, was misused by the delay in service.

23      Here, Plaintiffs do not allege a judicial process.  Plaintiffs allege that the criminal <u>action was</u>

24   <u>filed</u> to <u>coerce a settlement</u> from plaintiff.  The gravamen of the allegations remain a challenge <u>to the</u>

25   <u>filing</u> of the criminal action, not to any procedure which occurred in the course of the criminal

26   action.

27

28

1    **3.     No direct Cause of Action may be Maintained Against Madera and the Board**

2    **for Abuse of Process**

3         Madera and the Board argue there is no statute creating direct liability against the

4    governmental entities for abuse of process.  Since there is no statute creating direct liability, the

5    Madera defendants can only be liable through Cal.Govt.Code §815.2 if their employees are liable.

6    Madera argues that since the County employees are immune from liability, that immunity extends to

7    the public entity employer.  Cal. Govt. Code §815.2.  Further, the Madera and Board argue that since

8    the challenged act is part of the prosecution process, that act, and therefore Madera and the Board,

9    are protected by immunity.  Cal.Govt Code 821.6.

10        A public entity is not liable for an injury unless provided for by statute.  Govt.Code §815(a).

11   Liability must either be based on a state statute or required by the state or federal constitution. *Sava*

12   *v. Fuller*, 249 Cal.App.2d 281, 284, 57 Cal.Rptr. 312 (1967).  Plaintiffs have not cited to any statute

13   which imposes liability for the common law cause of action of abuse of process.

14        Further, Madera and the Board cannot face liability if their employees are immune.  A public

15   entity "is not liable for an injury resulting from an act or omission of an employee of the public entity

16   where the employee is immune from liability," unless a statute provides otherwise. Govt.C. 815.2(b).

17        In this Court's prior order on County's motion to dismiss, the Court found that the County

18   employees, Herman and Prentice, were immune from liability for the acts alleged in the complaint.

19   (Doc. 59, January 15, 2010 Order p. 10-12.)  In that previous order, the Court considered the

20   arguments that plaintiff now re-raises in its opposition to this motion.  (See Doc. 73, Plaintiff's

21   Opposition p. 6-7.) The Court considered whether Herman and Prentice were acting within the scope

22   of their authority, or outside their authority, in bringing this action.

23              "The events at issue address institution or prosecution of judicial
           proceedings within the scope of employment of defendants Herman

24              and Prentice to cloak them with section 821.6 immunity.  As such,
           plaintiffs' claim against these defendants is barred." (Doc. 59, January

25              15, 2010 Order p. 12.)

26   The Court will not reconsider the employee immunity issue because it was briefed and decided in the

27   prior motion.

28        Where a public employee is immune for their conduct under §821.6, the public entity is also

immune under §815.2.  *Ross v. San Francisco Bay Area Rapid Transit Dist.*, 146 Cal.App.4th 1507,

1516, 53 Cal.Rptr.3d 715 (2007) (where public transit district employees were immune under

Govt.C. 821.6 from liability for claims that they wrongfully initiated and prosecuted administrative

proceedings against coemployee, transit district was also immune from liability under Govt.C.

815.2(b)).  Plaintiff's cause of action for abuse of process is barred against Madera and the Board

because the cause of action is not authorized by statute, and these defendants are immune from

liability for actions centering around their employees' prosecution of the criminal proceedings. Since

those employees are immune, the public entities also are immune.

**D.      Causes of Action under §1983**

The Second and Third Causes of Action are for violation of Civil Rights, 42 U.S.C. §1983,

for deprivation of Due Process and Equal Protection.  Plaintiffs allege that they have a

constitutionally protected property interest in their easement rights.  Plaintiffs allege that they have a

protected easement right in the sixty (60) foot wide right of way known as Cascadel Road.  (Doc. 60,

SAC ¶1, 33-34.)  Plaintiffs allege that their property rights were violated by Madera in the Houston

Offer.  (Doc. 60, SAC ¶35.)  Plaintiffs also allege that "Madera County has a longstanding policy

and custom of intentionally ignoring County Ordinances and State laws . . ." (Doc. 60, SAC ¶35.)

Plaintiffs allege they have been denied equal protection in that similar parcels have 60-foot wide

road easements, and plaintiffs in particular, have been signaled out to be denied sufficient access to

their homes and for fire and safety vehicles.  (Doc. 60, SAC ¶ 47.)

**1.      Federal Constitutional Claims of Violation of Due Process**

As relevant to this motion, the Second Cause of Action is alleged against Madera and the

Board.

Substantive due process addresses improper governmental interference with property rights

and irrational actions by government decision makes.  *County of Sacramento v. Lewis*, 523 U.S. 833,

845, 119 S.Ct. 1708 (1998).  Procedural due process requires that a property owner be provided

notice and an opportunity to be heard before the government may deprive the owner of the protected

property right.  *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1101 (1970).

1

**A.      A Property Right Must be Deprived**

2      As this Court has stated in the previous orders, plaintiff must allege that a property right has

3   been deprived. To state a claim for violation of substantive due process, a land owner must have a

4   protected property interest which has been deprived. *American Mfgrs Mut. Ins. Co. v. Sullivan,* 526

5   U.S. 40, 59 119 S.Ct 977 (1999):

6           "The first inquiry in every due process challenge is whether the
            plaintiff has been deprived of a protected interest in 'property' or
7           'liberty.' . . .Only after finding the deprivation of a protected interest
            do we look to see if the State's procedures comport with due process."
8           (Citations omitted.)

9   Plaintiff claims that they have an easement right, which has been eliminated or reduced by the

10  Houston Offer.  As the Court, plaintiffs and defendants acknowledge, plaintiff have a property right

11  in the easement abutting their property.  The issue is whether the Madera Defendants have deprived

12  or infringed upon that property right.

13

**B.      "Reduction," "Elimination" of the 60-Foot Easement**

14      As plaintiffs have consistently alleged throughout their complaints, they allege that the

15  County violated plaintiffs' rights by "interfering with plaintiff's easement," by "eliminating

16  plaintiffs' easement, and by narrowing the Road Property to a mere 12 feet.  (Doc. 60, SAC ¶35.)

17  They argue that the "Houston Offer" is the source of elimination of the easement: "the County lacked

18  authority to grant the Road Property to the Houstons because it held no property interest in this right-

19  of-way."  (Doc. 60, SAC¶35.)  They argue that they have a property interest in the full 60 foot

20  easement arising from the right of way abutting their property.  Plaintiffs allege that Madera's actions

21  in the settlement of Houston/Barlow action, and with the Houston Offer, "dramatically reduced their

22  easement." (Doc. 60, SAC ¶101, 109.)  Plaintiff alleges this reduction, elimination of the easement

23  violates their substantive due process rights and their procedural due process rights because this

24  "reduction" occurred without notice and an opportunity to be heard.[2]  (Doc. 60, SAC ¶36-38.)

25  Plaintiffs claim that they are entitled to the 60-foot wide roadway, which was dedicated in the 1967

26  Dedication.  Plaintiffs allege that this reduction of the 60-foot easement/right of way has deprived

27  _____

28      [2] In their previous first amended complaint, plaintiff referred to the reduction of the easement as "pinching down"
    the easement.  (See Doc. 59, January 15, 2010 Order, p.15.)

13

1  them of adequate access by fire and emergency life safety vehicles to access Cascadel Woods in an

2  emergency.  (Doc. 60, SAC ¶37-40.)

3                              (1) <u>Statutory Dedication</u>

4          As this Court has stated before, plaintiffs do not have a property right in the 1967 Offer of

5  Dedication. The Cascadel Woods Subdivision map was filed in accordance with the Subdivision

6  Map Act.   The Subdivision map offered a 60 foot right of way as a street, the 1967 Dedication.

7  (Doc. 60, SAC ¶8.) The filing of a subdivision map delineating a street is an <u>offer</u> to dedicate the

8  land.  *Biagini v. Beckham,* 163 Cal.App.4th 1000, 1009, 78 Cal.Rptr.3d 171, 178 (2008).   "A

9  dedication is the transfer of an interest in real property to a public entity for the public's use."

10  *Biagini v. Beckham,* 163 Cal.App.4th at 1009. The mere filing of a subdivision map does not

11  constitute an acceptance of the dedication offers on the map.  *Yox v. City of Whittier*, 182 Cal.App.3d

12  347, 354-355, 227 Cal. Rptr. 311 (1986).  A statutory dedication is effected when, in compliance

13  with the map act then in force, an offer of dedication is accepted by the public agency.  *Galeb v.*

14  *Cupertino Sanitary Dist.,* 227 Cal.App.2d 294, 301, 38 Cal.Rptr. 580 (1964).

15          The dedication is not complete until the offer has been accepted by the appropriate official

16  governing body or designated official having jurisdiction over the dedicated property.  The

17  acceptance must be by resolution.  Cal.Gov Code §66477.3; *DiMartino v. City of Orinda*, 80

18  Cal.App.4th 329, 343, 95 Cal.Rptr.2d 16, 27 (2000) (it is well established that such words of

19  dedication on the map do not accomplish a dedication, even upon recordation and filing of the map.).

20  Until accepted, title to the dedicated property does not pass to the public agency.  Gov.Code, §§

21  66477.1, 66477.3; *Mikels v. Rager,* 232 Cal.App.3d 334, 351, 284 Cal.Rptr. 87, 92 (1991) (Until the

22  offer of dedication is unconditionally accepted, no public interest is created).

23          Plaintiff acknowledges that the 1967 Offer of dedication has not been accepted formally. This

24  Court has previously held in the prior motions that without acceptance of the 1967 Dedication, the

25  1967 Dedication did not transfer any interest to the easement/right of way to Madera.  (See Doc. 59,

26  January 15, 2010 Order, p. 16-17.)  If Madera holds no interest or title in the property offered in the

27  1967 Dedication, Madera could not deprive plaintiff of plaintiffs' interest in the right of way.

28  Without acceptance, Madera cannot quitclaim "pinch down," "reduce" or "eliminate" the easement

                                              14

because Madera has no right, title and interest in the easement.

(2) Common Law Dedication/Acceptance

In the SAC, however, plaintiff has alleged facts which plausibly claim that there was a common law acceptance of the Offer of Dedication.

A statutory offer of dedication that has not been formally accepted, however, does not rule out the possibility of a common law acceptance, which may arise when the offer is impliedly accepted from the public's use of the subject property over a reasonable period of time. *Biagini v. Beckham*, 163 Cal.App. 4th at 1009, 1014.  Public use may be proof of the roads' acceptance. *Hanshaw v. Long Valley Road Ass'n*, 116 Cal. App. 4th 471, 11 Cal. Rptr. 3d 357 (2004) (The filing of a subdivision map delineating a street thereon is an offer to dedicate the land identified; use of the land so identified by the public for such purposes over a reasonable period of time constitutes an acceptance of the offer so made.); *see Hays v. Vanek*, 217 Cal.App.3d 271, 284, 266 Cal.Rptr. 856, 862 (1989) (The inference that public use constitutes acceptance of an offer of dedication is dependent in large part on the fact that the public is using the piece of property offered).

Here, plaintiffs allege use of the road by the public:

> Cascadel Woods Property Owners Association (CWPOA) has maintained the Road for more than forty years for the benefit of its members, including Plaintiffs. CWPOA, the USFS, the Cascadel Mutual Water Company, many local residents, local users, logging companies, the Coarsegold Resource Conservation District  under Road Department Direction, Plaintiffs and others have continuously maintained, cleared, brushed, expanded and prepared the Road, including the Road Property, for decades."  (Doc. 60, SAC ¶12.)

"Whether there was an implied acceptance of an offer of dedication is a question of fact." *Biagini v. Beckham*, 163 Cal.App. 4th at 1010; *see Hanshaw v. Long Valley Road Assn.*, 116 Cal.App.4th at 482, 483 (upholding a finding of implied acceptance where "the road was used freely to access the parcels by all who had need to access them" and "was used by all members of the public who had reason to use it.")  Based are these allegations, and accepting the truth of the allegations, there is a potential of a common law acceptance of the Road Property.

Here, plaintiffs allege that the Houston Offer "alters" the easement.  (Doc. 60 SAC ¶1 ("the

1   2007 recordation of an overlying "offer of dedication" ("Houston Offer")").[3] The Houston Offer is

2   for a 10-12 foot easement/right of way, which is less than the 60-foot offer of dedication.  Plaintiff

3   alleges that the Houston offer "narrows" the road to a mere 12 feet.  (Doc. 60, SAC ¶35.)  Plaintiff

4   alleges that the Houston Offer also violated Madera's own ordinances which require a road right of

5   way to be 60 feet, and not 12 feet.[4]  Here, because Madera arguably had a property interest by the

6   "common law acceptance," Madera allegedly granted the property interest away.    The Court cannot

7   determine the factual issue at this stage of the pleadings.  *See Biagini v. Beckham*, 163 Cal.App.4th

8   at 1012 (no implied acceptance of offer of dedication by public use where actual use was consistent

9   with private easement).

10   **2.   Equal Protection**

11   Ordinarily, the Equal Protection clause serves to prohibit a state actor from discriminating

12   against an individual based on his or her membership in a protected class, or based on a particular

13   classification in which the individual is placed. *The Committee Concerning Community Improvement*

14   *v. City of Modesto*, 583 F.3d 690, 702-03 (9th Cir. 2009).  An equal protection claim, however, may

15   also be premised on a state actor's unique treatment of an individual-described as a "class of one"

16   claim. *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).  When an equal

17   protection claim is premised on unique treatment rather than on a classification, the Supreme Court

18   has described it as a "class of one" claim. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120

19   S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam). The Supreme Court described such a claim in

20   *Village of Willowbrook v. Olech*, 528 U.S. at 564:

21   > Our cases have recognized successful equal protection claims brought by a "class of
22   > one," where the plaintiff alleges that she has been intentionally treated differently
23   > from others similarly situated and that there is no rational basis for the difference in
     > treatment. In so doing, we have explained that "the purpose of the equal protection
     > clause of the Fourteenth Amendment is to secure every person within the State's

24

25   [3] This Court has previously held that plaintiffs had no constitutional right in the 1967 Offer of Dedication.  (See Doc. 59, January 15, 2010 Order  ("As a matter of law, plaintiffs cannot allege that they have a property interest in the Offer of Dedication.")  Any "change" to that 1967 Offer of Dedication, if such a change exists, does not create a constitutional right in plaintiffs.  Further, this Court has held that failure to follow local ordinances cannot support a claim for violation of constitutional rights.  (See Doc. 59, January 15, 2010 Order p. 20.)

26

27

28   [4] Plaintiff also allege the Houston Offer was negotiated in secret and in violation of due process because plaintiffs and others did not receive notice that the road would be 'narrowed' to 12 feet.

1        jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.

(quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445, 43 S.Ct. 190, 67 L.Ed. 340 (1923) (citations omitted)). Disparate treatment by a governmental entity is permissible so long as it bears a rational relationship to a legitimate state interest. *Patel v. Penman*, 103 F.3d 868, 875 (9th Cir.1996). To make out a claim for a violation of equal protection, plaintiffs must show that the County "intentionally and without rational basis, treated the Plaintiff differently from others similarly situated." *North Pacifica LLC,* 526 F.3d 486.  And, without more, selective enforcement of valid laws is insufficient to show that there was no rational basis for the action. *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), reh'g and reh'g en banc denied, 395 F.3d 1062 (9th Cir. 2005).  On the other hand, "there is no rational basis for state action 'that is malicious, irrational or plainly arbitrary.'" *Id.* (*quoting Armendariz v. Penman,* 75 F.3d 1311, 1326 (9th Cir.1996) (en banc)). Thus, such a claim may arise where the law is selectively enforced and "a plaintiff can show that the defendants' rational basis for selectively enforcing the law is a pretext for 'an impermissible motive.' *Squaw Valley,* 375 F.3d at 946 (quoting *Armendariz*, 75 F.3d at 1327).

      Here, plaintiffs allege they were singled out and treated him than other property owners by singling them out to "pinch down" the easement abutting the property.  Plaintiffs allege, in substance, that only their easement has been so affected.  Thus, plaintiff alleges that he has been intentionally treated differently from others similarly situated and there is no rational basis for difference in treatment.  Further, plaintiff Stamas alleges that he was singled out for criminal prosecution.  Plaintiff argues that Madera is irrationally enforcing a private agreement and that the criminal complaint against Stamas is an example of the irrational enforcement of the Houston Offer. (Doc. 73, Plaintiff's Opposition p.9.)  Plaintiff alleges that at his criminal action, he was told only the Houstons may maintain the Cascadel Road.

      Defendants argue that no governmental decision has resulted in plaintiffs being treated differently.  Defendants point out that the Houston Offer cannot be a governmental action because the Houston Offer is an offer by private persons. However, in his opposition, plaintiffs argue that the "Houston Offer constitutes a land use decision" not rationally related to a legitimate governmental

1    purpose.  Reading the allegations broadly, and giving the allegations the favorable inference as the

2    Court must, Plaintiffs allege that the was singled out for treatment that differed from the treatment of

3    those who were situated similarly to him for no rational purpose.

4    **E.**    **Malicious Prosecution**

5          The fourth cause of action alleges Malicious Prosecution against Madera, the Board, and

6    Houston and Barlow. Defendants move to dismiss the claim for malicious prosecution on the ground

7    that plaintiffs do not allege the prior proceeding concluded in plaintiffs' favor.

8          Plaintiffs argue that there was a favorable termination of the *People v. Stamas* criminal action

9    because it resulted in a civil settlement.  They argue the criminal action was dismissed and no relief

10    was given on the criminal charges. The County agreed to provide "code compliant access."  The

11    criminal action "resulted in full dismissal before trial with no criminal plea bargain.  This dismissal

12    is a favorable outcome to Stamas."  (Doc. 55, Opposition p.14.)

13          **1.**    **Malicious Prosecution Elements**

14          The basic elements of the tort of malicious prosecution of a civil matter are (1) the initiation

15    of a prior proceeding, (2) without a reasonable belief in the possibility of the suit being successful

16    (i.e., probable cause), (3) termination of that proceeding in favor of the present plaintiff, and (4)

17    malice.  *Drummond v. Desmarais*, 176 Cal.App.4th 439, 449 (2009); *Cantu v. Resoution Trust*

18    *Corp*., 4 Cal.App.4th 857, 881 (1992) ("The termination must demonstrate the innocence of the

19    accused.")

20          **2.**    **Initiation of Proceeding by Houston and Barlow**

21          Plaintiff argues that "defendants maliciously procured the prosecution of Mr. Stamas without

22    probable cause and are thus liable under a procurement theory."  (Doc. 72, Plaintiff's opposition,

23    p.13:6-7.)  Defendants Houston and Barlow do not address this "procurement theory."

24          Plaintiff does not cite any authority for the proposition that a non-party to prior litigation may

25    face malicious prosecution on a "procurement theory."  The Court, however, has located authority.

26    A malicious prosecution action may be based upon an underlying criminal prosecution, where, as

27    here, the allegation is that the defendant initiated or procured the arrest and prosecution of the

28    plaintiff without probable cause and with malice. *Sullivan v. County of Los Angeles*, 12 Cal.3d 710,

720 (1974).  In the context of an underlying criminal prosecution, a malicious prosecution "'consists of initiating or procuring the arrest and prosecution of another under lawful process.... The test is whether the defendant was actively instrumental in causing the prosecution.' [Citation.]" *Sullivan v. County of Los Angeles*, 12 Cal.3d at 720, italics omitted.) A private citizen may be liable for malicious prosecution only if he or she "has at least sought out the police or prosecutorial authorities and falsely reported facts to them indicating that plaintiff committed a crime. [Citations.]" ( *Ibid*; see also *Cedars-Sinai Medical Center v.. Superior Court*, 206 Cal.App.3d 414, 417 (1988) (witnesses not actively instrumental).) On the other hand, one "who merely alerts law enforcement to a possible crime ... is not liable [for malicious prosecution] if, law enforcement, on its own, after an independent investigation, decides to prosecute." *Williams v. Hartford Ins. Co.*, 147 Cal.App.3d 893, 898 (1983).

Here, plaintiff argues that Houston and Barlow procured the criminal prosecution.  However, the allegations do not factually support the elements that these defendants procured the arrest of plaintiff and knowingly gave false reports to the authorities that plaintiff had committed a crime.  In short, plaintiffs have failed to allege that Houston and Barlow procured the arrest and prosecution of plaintiff without probable cause and with malice.

Further, the complaint fails to allege facts as to the wrongful conduct by <u>each</u> Houston and by Barlow.  Rather, the allegations group the alleged wrongful conduct by the "Houstons."  Here, the allegations as to the role of each defendant is factually insufficient.  The allegations do not identify what each defendant did, and fail to identify the wrongful conduct by each defendant.  The allegations fail to identify the conduct by the defendant for which plaintiff seeks to hold them liable. *See Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1948-49, 173 L.Ed.2d 868 (2009) ("Plaintiff's amended complaint should be brief, Fed.R.Civ.P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights").  The allegations grouping wrongful conduct are insufficient to survive a future motion to dismiss.  Leave to amend will be granted on this cause of action for the reasons stated in this section.

### 3.    **Favorable Result**

All defendants argue that plaintiff fails to adequately allege a favorable termination.

1   Defendants note that plaintiff offers a conclusory statement that "the criminal action terminated in

2   Mark Stamas' favor because it was indicative of Mark Stamas' innocence."  (Doc. 60 SAC ¶52.)

3        Plaintiff alleges a "favorable termination" as follows:

4        "52.  Plaintiffs . . . allege that the criminal action terminated in Mark Stamas' favor
         because it was indicative of Mark Stamas' innocence . . . Mr. Stamas obtained a

5        favorable outcome by a settlement by which the County agreed to provide code
         compliant access to plaintiffs' property, and the County abandoned all pretense of

6        effort at criminal enforcement against Mr. Stamas, consistent with Mr. Stamas'
         innocence and the trumped up nature of the charges."  (Doc. 60, SAC ¶52.)

7

8        A settlement of an action is not generally a "favorable termination."

9             "A dismissal resulting from a settlement generally does not constitute a
              favorable termination. In such a case the dismissal reflects

10            ambiguously on the merits of the action because it results from the
              joint action of the parties, leaving open the question of the defendant's

11            guilt or innocence."

12   *Fuentes v. Berry*, 38 Cal.App. 4th 1800, 1808 (1995).  The test is whether or not the termination tends

13   to indicate the innocence of the defendant or simply involves technical, procedural or other reasons

14   that are not inconsistent with the defendant's guilt.  *Haight v. Handweiler,* 199 Cal.App.3d 85, 88-89,

15   244 Cal.Rptr. 488 (1988).

16        The favorable termination element of a malicious prosecution action is established by

17   showing that termination of the underlying lawsuit reflected on the merits of the action and the

18   plaintiff's innocence of the misconduct alleged.  *Ross v. Kish*, 145 Cal.App.4th 188, 51 Cal.Rptr.3d

19   484 (2006).  In order to show termination, the plaintiff need not show a verdict or a final

20   determination on the merits; legal termination is enough. The termination of the prior proceeding

21   must reflect on the merits of the prior action (*Berman v. RCA Auto Corp.*, 177 Cal.App.3d 321, 222

22   Cal.Rptr. 877 (1986)) and reflect the plaintiff's innocence of the alleged misconduct.  *Warren v.*

23   *Wasserman, Comden, & Casselman*, 220 Cal.App.3d 1297, 271 Cal.Rptr. 579 (1990). Where a

24   proceeding is terminated other than on its merits, the reasons underlying the termination must be

25   examined to see if they reflect the opinion of either the court or the prosecuting party that the action

26   would not succeed. The determination of the reasons underlying the dismissal is a question of fact.

27   *Haight v. Handweiler*, 199 Cal.App.3d at 89. "[W]hen the underlying action is terminated in some

28   manner other than by a judgment on the merits, the court examines the record 'to see if the

20

1  disposition reflects the opinion of the court or the prosecuting party that the action would not

2  succeed.' " *Ross v. Kish*, 145 Cal.App.4th at 198 (underlying action was dismissed as a discovery

3  sanction).  Should a conflict arise as to the circumstances of the termination, the determination of the

4  reasons underlying the dismissal is a question of fact. *Id.*

5        Here, while a "settlement" of the criminal case was entered, it is a question of fact whether it

6  was "favorable" to plaintiff because he alleges received what he wanted - code compliant access -

7  and the action was dismissed.  Plaintiff contends it was indicative of his innocence of the charges

8  and the prevailing with code compliant access.  *Ross*, 145 Cal.App. 4th at 198 (evidence showed a

9  reasonable inference that Kish's allegations of breach of contract and legal malpractice were

10  groundless.)  The Court must accept the allegations as true.  *Pareto v. F.D.I.C.*, 139 F.3d 696, 699

11  (9th Cir. 1998) (the court must accept as true all material allegations in the complaint, as well as

12  reasonable inferences to be drawn from them.)  The termination of underlying criminal proceedings,

13  in order to constitute a favorable termination for the purposes of a malicious prosecution action, must

14  be consistent with a finding for Stamas on substantive grounds, and must not be based solely upon

15  technical or procedural considerations.  Here, the allegations show a favorable outcome.

16        **4.**    **Malicious Prosecution Against the County**

17        Madera and the Board argue that they are immune from liability for the same reasons as

18  stated in the above claim for "abuse of process."  The public employees, Herman and Prentice, who

19  prosecuted the criminal action against plaintiff Stamas, are immune from liability.  Since they are

20  immune for their acts, the County is likewise immune.

21        As discussed, i*nfra*, where a public employee is immune for their conduct under §821.6, the

22  public entity is also immune under §815.2. Plaintiff's cause of action for malicious prosecution is

23  barred against Madera and the Board because the cause of action is not authorized by statute, and

24  these defendants are immune from liability for actions centering around their employees' prosecution

25  of the criminal proceedings. Since those employees are immune, the public entities also are immune.

26  **F.**    **Fifth Cause of Action for Breach of Contract**

27        Defendants argue that the Fifth Cause of Action for breach of contract must be dismissed

28  against the Board of Supervisors because there are no facts showing that the Board entered into any

21

1   agreement with Stamas.  (Doc. 67, County P&A p. 14.)  Plaintiff argues that "the 'County' and the

2   'Board' are one and the same in the context of the Stamas Civil Settlement Agreement."  (Doc. 73,

3   Plaintiff's Opposition p.14.)

4        Plaintiff's SAC alleges that "the County promised Stamas 'fully code compliant' access

5   through the Road Property. . ." and that "the County created and recorded the Houston Offer. . ."

6   The SAC does not allege that the Board of Supervisors was a party to the Civil Settlement.  Further,

7   while plaintiffs now take the position that the "County and the Board are one and the same" in prior

8   motions, plaintiff argued that they are not the same.  (See Doc. 53, Plaintiffs' Opposition p. 3.)  The

9   allegations do not support a claim against the Board and plaintiffs do not argue that they are able to

10  amend to cure the deficiency.  Accordingly, the Board will be dismissed from this cause of action.

11  **G.      Inverse Condemnation**

12       Plaintiffs allege that the Houston Offer and its enforcement constitute a taking of plaintiffs'

13  rights in property.  (Doc. 60, SAC ¶63.)  Plaintiff alleges that without the full 60 feet of road

14  easement, their property cannot be developed and suffers from reduced emergency access.  (Doc. 60,

15  SAC ¶64.)

16       Madera defendants argue that county quitclaim and the Houston offer do not affect plaintiff's

17  private easement rights. Madera defendants argue that plaintiff's private easement is still in

18  existence.  Defendants also argue that there has not been impairment of access as the access that

19  existed all along still exists.

20       Under the California Constitution, article I, section 19, property may not be taken or

21  damaged for public use without just compensation to the owner. An inverse condemnation action is a

22  proceeding by a property owner to recover damages for injury to that property from governmental

23  activity. *Selby Realty Co. v. City of San Buenaventura*, 10 Cal. 3d 110, 109 Cal. Rptr. 799 (1973).

24  Inverse condemnation is a constitutional remedy permitting recovery of consequential damages

25  arising from public projects. *Albers v. County of Los Angeles*, 62 Cal.2d 250, 263-264, 42 Cal.Rptr.

26  89, 398 P.2d 129 (1965) An action for inverse condemnation can be based on substantial impairment

27  of the right of ingress and egress, also known as the easement of access. *Breidert v. Southern Pac.*

28  *Co.*, 61 Cal.2d 659, 663, 39 Cal.Rptr. 903 (1964).  The easement of access "consists of the right to

get into the street upon which the landowner's property abuts and from there, in a reasonable manner, to the general system of public streets." *Border Business Park, Inc. v. City of San Diego*, 142 Cal.App.4th 1538, 1554, 49 Cal.Rptr.3d 259, 272 (2006), *cert. denied,* 550 U.S. 936 (2007).

While defendants argue that there has not been a substantial impairment of access to plaintiff's property (because the easement is physically as it always has been), the Court has found that allegations are sufficient to allege infringement of plaintiff's property, as discussed more fully above.

As to the rest of the merits on the cause of action, the parties have failed to raise the sufficiency of the allegations that the "taking" was for "public use."

To be compensable, the taking must be for a public use. Cal. Const., art. 1, § 19; *Yox*, 182 Cal.App.3d at 352. Indeed, the policy basis for the payment of just compensation is a consideration of "whether the owner of the damaged property if uncompensated would contribute more than his proper share to the public undertaking." *Albers*, 62 Cal.2d at 262. For purposes of inverse condemnation, "public use" is that which "concerns the whole community or promotes the general interest in its relation to any legitimate object of government." *Frustuck v. City of Fairfax*, 212 Cal.App.2d 345, 358, 28 Cal.Rptr. 357 (1963).

Plaintiff has not alleged facts that the taking of any portion of the easement was for the benefit of the public. *See Customer Co. v. City of Sacramento*, 10 Cal.4th 368, 378, 41 Cal.Rptr.2d 658, 895 P.2d 900 (1995) (The California Supreme has held that § 19 does not create a constitutional tort action based on the taking or damage of private property by public employees), *cert. denied*. 516 U.s. 1116 (1996). Since the parties did not raise this fundamental deficiency in the allegations, the Court will grant leave to amend.

/////
/////
/////
/////
/////
/////

23

**CONCLUSION**

For the foregoing reasons, the Court partially GRANTS and partially DENIES the motions as follows:

1. DISMISSES the First Cause of Action for Abuse of Process without leave to amend;

2. DENIES the motion as to the Second Cause of Action for Due Process;

3. DENIES the motion as to the Third Cause of action fo Equal Protection;

4. DISMISSES the Fourth Cause of Action for Malicious Prosecution as to defendants Houston and Barlow with leave to amend;

5. DISMISSES the Fourth Cause of Action for Malicious Prosecution as to defendants County of Madera and the Board of Supervisors without leave to amend;

6. DISMISSES the Fifth Cause of Action for Breach of Contract as to the Board of Supervisors without leave to amend; and

7. DISMISSES the Sixth Cause of Action for Inverse Condemnation with leave to amend.

Plaintiffs shall have twenty days (20) days from the date of service of the order to file an amended complaint in conformance with this order.

IT IS SO ORDERED.

**Dated:    April 7, 2010**                         /s/ Lawrence J. O'Neill
                                                  UNITED STATES DISTRICT JUDGE