1

2

3

4

5

6

7

8            **IN THE UNITED STATES DISTRICT COURT**

9            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    MARK STAMAS et al.,                      )  Case No.: 1:09-cv-00753 LJO JLT
                                               )
12                    Plaintiffs,              )  ORDER GRANTING IN PART AND
                                               )  DENYING IN PART DEFENDANTS'
13            v.                               )  MOTION TO STRIKE PLAINTIFFS' EXPERT
                                               )  WITNESS DISCLOSURE AND
14    COUNTY OF MADERA, et al.,                )  SUPPLEMENTAL EXPERT WITNESS
                                               )  DISCLOSURE
15                    Defendants.              )
      _____)  (Doc. 119)
16

17            Gerald Houston and Linda Barlow ("Defendants") filed a motion to strike the expert

18    witnesses disclosed by Plaintiffs Mark Stamas and Judy Castles on February 23, 2011, arguing that

19    Plaintiffs did not timely disclose their exports or provide written expert reports as required by the

20    Federal Rules.  (Doc. 119).  Plaintiffs filed their opposition to this motion on February 24, 2011.

21    (Doc. 122).

22            On March 2, 2011, the Court heard argument regarding this motion.  The Court has read and

23    considered the pleadings and arguments of counsel.  For the reasons set forth below, the Defendants'

24    motion to strike is **GRANTED IN PART AND DENIED IN PART**.

25    **I.   Factual and Procedural History**

26            Plaintiffs own Lot 38 of Subdivision No. 4 in Cascadel Woods ("the Subdivision"), located

27    in a mountainous portion of Madera County.  Plaintiffs' property abuts Cascadel Road, which is the

28    main access road to the Subdivision.  (Doc. 1 at 2).  The portion of Cascadel Road running through

the Subdivision is a "privately owned and maintained public access road." *Id.* at 3. The road was offered for dedication in 1967, but was not accepted by Madera County. *Id.* When the Subdivision map was recorded in 1963, it showed all roads as having a sixty-foot easement dedicated for private roads. *Id.* at 6.

Defendants Gerald Houston and Linda Barlow own Lot 1 in the Subdivision, which surrounds a portion of Cascadel Road. (Doc. 1 at 3). The original owner of Lot 1 was Cascadel Ranch Properties, Inc., which offered the easement in 1967. *Id.* at 7. The property underlying the Cascadel Road right-of-way offered to the County of Madera ("the County") was excepted from the deed for the property now owned by Houston [and] Barlow. *Id.* The excepted property is owned by Cascadel New Life Foundation, Inc., the "religious arm of Cascadel Ranch Properties, Inc." *Id.*

The parties to this litigation had a dispute regarding the use of Cascadel Road and the ownership of the property. Houston and Barlow filed quiet title actions in Madera County Superior Court against Plaintiffs, the County, and others. (Doc. 1 at 8). Defendants entered a written settlement agreement with the County, and the County recorded Quit Claim deed, quitclaiming any interest in Cascadel Road and the ownership of the underlying property. *Id.* at 8-9. As part of the settlement, Houston and Barlow offered an area consisting of a twelve-foot portion of Cascadel Road as it passes through their property. *Id.* at 9. Plaintiffs assert that the settlement agreement violates applicable law, and "attempts to deprive Plaintiffs and the public rights to at least 48 feet of longstanding deeded and historical public access" land. *Id.*

Plaintiffs commenced this action on April 27, 2009, asserting claims for abuse of process, due process and equal protection under 42 U.S.C. § 1983, quiet title, breach of contract, public nuisance and, seeking declaratory relief. (Doc. 1). On August 17, 2009, the Court struck several causes of action, with leave to amend. (Doc. 41). Plaintiffs filed their Amended Complaint on September 21, 2009 (Doc.47), and after several causes of actions were striken by the Court (Doc. 59), filed a Second Amended Complaint on February 4, 2010 (Doc. 60). Again, the Court struck several causes of action on April 8, 2010. (Doc. 81). Therefore, Plaintiffs filed their Third Amended Complaint on April 28, 2010. (Doc. 85). The Third Amended Complaint states causes of action for: due process, equal protection, malicious prosecution, slander of title, breach of contract, declaratory

1  relief, and quiet title.  (*Id.*, *see also* Doc. 103 at 2).  The Court denied defendants' motions to dismiss

2  (Docs. 90, 91) on June 21, 2010.  Defendants Houston and Barlow filed their Answer on July 6,

3  2010 (Doc. 104), and the County filed its Answer on July 12, 2010 (Doc. 105).

4         The Court issued a scheduling order that represented "the best estimate of the court and

5  counsel as to the agenda most suitable to dispose of [the] case" on August 12, 2010.  (Doc. 110 at 7).

6  The scheduling order sets forth discovery deadlines for the parties, including the requirement that

7  parties disclose all expert witnesses in writing on or before February 1, 2011, and disclose all

8  supplemental experts on or before February 15, 2011.  *Id.* at 2.  In addition, the Court warned:

9         The written designation of experts **shall be made pursuant to Fed. R. Civ. P. 26(a)(2), (A) and (B) and shall include all information required thereunder**.  Failure to
10        designate experts in compliance with this order may result in the Court excluding the testimony or other evidence offered through such experts that are not disclosed pursuant
11        to this order.

12  *Id.* (emphasis in original).  The order instructed that the provisions of Fed. R. Civ. P. 26(b)(4) and

13  (5) would apply to expert discovery and opinions, and failure to comply with the rules would "result

14  in the imposition of sanctions, which may include striking the expert designation and preclusion of

15  expert testimony."  *Id.*  In addition, the order warned the parties that the rules "regarding a party's

16  duty to timely supplement disclosures and responses to discovery requests will be strictly enforced."

17  *Id.*

18        On February 2, 2011, Plaintiffs served a document titled "Plaintiffs' Expert Witness

19  Disclosure (FRCP Rule 26(a)(2))," which named Mr. Rasmussen as a non-retained expert.  (Doc.

20  119 at 2; Doc 122 at 2).  On February 15, 2011, Plaintiffs served a "Supplemental Expert Witness

21  Disclosure," naming Mr. Bredahl and Mr. Grey as retained expert witnesses.  (Doc. 119 at 2; Doc.

22  122 at 2-3).  Defendants objected to these witnesses, and filed an ex parte application for an order

23  shortening time for hearing on February 18, 2010.  (Doc. 116).  Pursuant to the Court's order

24  shortening time, Defendants filed this motion to strike Plaintiffs' expert witnesses on February 23,

25  2010.  (Doc. 119).

26  **II.   Disclosure of Expert Witnesses**

27        The Federal Rules of Civil Procedure govern the use of expert witnesses, and requires a party

28  to disclose the identity of expert witnesses who are to testify at trial.  Fed. R. Civ. P. 26(a)(2)(A).  In

3

addition, when a witness is "retained or specially employed to provide expert testimony in the case

or one whose duties as the party's employee regularly involve giving expert testimony," disclosure

must be accompanied by a written report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the data or other information considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all the publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).  Disclosures and the accompanying reports must be made at the time and

in the sequence ordered by the court.  Fed. R. Civ. P. 26(a)(2)(D).  Further, if a report is required, the

expert may not be deposed until after the report is provided.  Fed. R. Civ. P. 26(b)(4)(A).  When a

report is not required, the disclosure must include: "(i) the subject matter on which the witness is

expected to present evidence . . . and (ii) a summary of the facts and opinions to which the witness is

expected to testify."  Fed. R. Civ. P. 26(a)(2)(C).

A party's failure to disclose expert witnesses in a manner prescribed by the court exposes that

party to sanctions under Federal Rule of Civil Procedure 37(c).  This rule provides, in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).  Rule 37(c)(1) "gives teeth" to the disclosure requirements.  *Yeti by Molly,*

*Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)

The Ninth Circuit has articulated several factors for the Court to consider when determining

whether a violation of the expert discovery rules was justified or harmless, including: "(1) prejudice

or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the

prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not

disclosing the evidence."  *Lanard Toys, Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir.

2010), citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).  Plaintiffs have the

burden of establishing that their failure to follow the strictures of the Federal Rules was substantially

justified and harmless.  *See Torres*, 548 F.3d at 1213; *Yeti by Molly*, 259 F.3d at 1107.

1  The Ninth Circuit gives "wide latitude to the district court's discretion to issue sanctions

2  under Rule 37(c)(1)." *Yeti by Molly*, 259 F.3d at 1106, citing *Ortiz- Lopez v. Sociedad Espanola de*

3  *Auxilio Mutuo y Beneficiencia de Puerto Rico*, 248 F.3d 29, 34 (1st Cir. 2001).  Notably, the Ninth

4  Circuit has found that "even absent a showing in the record of bad faith or willfulness, exclusion is

5  an appropriate remedy for failing to fulfill the . . . disclosure requirements of Rule 26(a)." *Id.*

6  Moreover, the sanction of exclusion is self-executing, and "is thus automatic and mandatory unless

7  the part to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless."

8  *Jimena v. UBS AG Bank*, 2010 U.S. Dist. LEXIS 117596, at *15 (E.D. Cal. Nov. 5, 2010), quoting

9  *Salgado v. General Motors Corporation*, 150 F.3d 135, 142 (7th Cir. 1998); *see also Yeti by Molly*,

10  259 F.3d at 1106.

11  **III.  Failure to Comply with Scheduling Orders**

12  Scheduling orders "are at the heart of case management," *Koplve v. Ford Motor Co.*, 795

13  F.2d 15, 18 (3rd Cir. 1986), and are intended to alleviate case management problems.  *Johnson v.*

14  *Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).  As such, a scheduling order "is not

15  a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril." *Id.* at

16  610.  "The Ninth Circuit has consistently demonstrated that Rule 16's deadlines are firm, real and are

17  to be taken seriously by the parties and their counsel."  *Shore v. Brown*, 74 Fed R. Serv. 3d

18  (Callaghan) 1260, 2009 U.S. Dist. LEXIS 94828, at *7 (E.D. Cal. Oct. 9, 2009).  Furthermore, the

19  Ninth Circuit stated, "Rule 16 . . . recognizes the inherent power of the district court to enforce its

20  pretrial orders through sanctions." *Goddard v. United States Dist. Court*, 528 F.3d 652, 657 (9th

21  Cir. 2008).  Consequently, a party's failure to comply with a scheduling order "exposes [the] party to

22  'any just orders,' as determined by the district judge, including dismissal, entry of default or

23  contempt of court." *Id.*, citing Fed. R. Civ. P. 16(f), 37(b)(2).  Upon this background, the Court

24  evaluates the current motion.

25  **IV.  Discussion and Analysis**

26  Defendants assert that Plaintiffs have failed to comply with the Scheduling Order by the late

27  service of their expert disclosure and supplemental disclosures.  (Doc. 119 at 4).  In addition,

28  Defendants argue that "Plaintiffs have provided no adequate explanation regarding why the

1  [d]isclosures were untimely or why no reports have been provided." *Id.* at 2.  Defendants note that

2  Plaintiffs neither requested additional time to comply with the Court's scheduling order, nor sought

3  leave of the Court to replace Mr. Rasmussen, a non-retained expert disclosed on February 2, 2011,

4  who may not be available for trial. *Id.* at 2-3.

5         A.   Disclosure of Mr. Rasmussen

6        Plaintiffs disclosed Mr. Rasmussen as a non-retained expert on February 2, 2011, one day

7  after the deadline for doing so.  (Doc. 119 at 2; Doc 122 at 2).  In the disclosure, Plaintiffs merely

8  named Mr. Rasmussen and listed his business address.  (*See* Doc.119, Ex. A).  No further

9  information was provided regarding Mr. Rasmussen.  Defendants state the disclosure is insufficient

10  because it "does not contain any reports, does not contain the information required by FRCP

11  26(a)(2)(B) and does not provide any information about what the non-retained expert is going to

12  testify about." *Id.* at 2.  Notably, because Mr. Rasmussen was not a retained expert, a report was not

13  required.[1]  Fed. R. Civ. P. 26(a)(2)(B) (The "disclosure must be accompanied by a written

14  report–prepared and signed by the witness–**if the witness is one retained or specially employed to**

15  **provide expert testimony in the case** or one whose duties as the party's employee regularly involve

16  giving expert testimony."), emphasis added.  Nevertheless, even when a report is not required, the

17  disclosure must include a summary of facts and the subject matter on which the witness is expected

18  to testify.[2]  Fed. R. Civ. P. 26(a)(2)(C).

19        Plaintiffs acknowledge that the designation of Mr. Rasmussen was untimely and offer no

20  explanation for the lack of timeliness.  Thus, the Court does not find that the late disclosure was

21  substantially justified.   On the other hand, Plaintiffs assert the circumstances do not warrant the

---

[1] Defendants assert that a report should have been filed with the disclosure of Mr. Rasmussen, though he was not a retained expert.  (Doc. 119 at 3).  At the hearing, Defendants argued Mr. Rasmussen should have been named as a retained expert, because his survey was paid for by Mr. Stamas.  However, at the hearing, Plaintiffs' attorney represented that, Cascadel Woods Property Owners Association, Inc., and not the Plaintiffs, hired Mr. Rasmussen to prepare the survey map.  (*See* Doc. 85, Ex. C.).  Notably, the document is dated June 26, 2008, which was approximately one year before the litigation was initiated.  Based upon this representation and the lack of evidence to the contrary, the Court finds that Mr. Rasmussen is not a retained expert simply by virtue of his being paid to prepare of the survey used by Plaintiffs in this litigation.

[2] "[S]imply reciting the names of the experts does not prevent surprise by the opponent. *Churchill v. United States,* 2011 U.S. Dist. LEXIS 13761 at *16 (E.D. Cal. Feb. 8, 2011).

1    preclusion of Mr. Rasmussen's testimony, who "was designated non-retained as a person who was

2    actually involved in the controversy." (Doc. 122 at 2). Plaintiffs argue that a written report by Mr.

3    Rasmussen is not required he does not regularly give expert testimony as a surveyor and because his

4    survey was produced as an attachment to the complaints. *Id.* Likewise, Plaintiffs assert that Mr.

5    Rasmussen's testimony would be limited to his survey. *Id.*

6         The Court finds that Defendants have had possession of Mr. Rasmussen's survey and his

7    documented bearings since May 2009 at the time that the original complaint was served (Docs. 21,

8    22) and, thus, have had the subject matter on which Mr. Rasmussen would testify. *McKesson*

9    *Information Solutions, Inc. v. Bridge Medical, Inc.*, 434 F.Supp.2d 810, 813 (E.D. Cal. 2006).

10   Consequently, because Mr. Rasmussen was disclosed only one day after the deadline and Defendants

11   have had his survey work for nearly two years, there is no substantive impact on expert discovery

12   and the delay was harmless.

13         B.  "Supplemental Disclosure" of Mr. Bredahl and Mr. Grey

14         On February 15, 2011, Plaintiffs disclosed Mr. Bredahl and Mr. Grey as expert witnesses in

15   their document entitled "Plaintiffs' Supplemental Expert Witness Disclosure (FRCP Rule 26(e))"

16   ("Supplemental Disclosure"). (Doc. 119 at 2; Doc. 122 at 2-3). Defendants argue that the Plaintiffs'

17   February 15, 2011 expert disclosure cannot be considered "supplemental disclosures." (Doc. 119 at

18   2) Once again, Plaintiffs admit that the designation was not timely and have provided no explanation

19   for the failure to comply with the scheduling order except to report that they learned a few days

20   before, that Mr. Rasmussen "might be unavailable" for trial. (Doc. 25 at 3) At the hearing Plaintiffs

21   attorney reported that Mr. Rasmussen was in the process of moving but his new residence would be

22   within California and, in fact, within the Eastern District. Moreover, counsel admitted that there had

23   been no attempt to explore whether Mr. Rasmussen would appear for trial and that there is no reason

24   to believe that he would fail to comply with a trial subpoena.[3]

25   ///

26   ///

27
     _____

28        [3] Even if Mr. Rasmussen is not available for trial, this does not explain why his trial testimony could not be preserved
     now or why Plaintiffs failed to seek leave of the Court to replace him with another expert.

1          1.  Permitted supplemental disclosures

2          At the time Mr. Bredahl and Mr. Grey were disclosed as expert witnesses, the deadline for

3    initial expert disclosures had passed, and the parties were permitted only to disclose their

4    "supplemental experts"[4] by February 15, 2011.  Federal Rules of Civil Procedure 26(a)(2)(D) defines

5    rebuttal experts as those whose "evidence is intended solely to contradict or rebut evidence on the

6    same subject matter identified by another party under Rule 26(a)(2)(B) or (C) . . ."  Thus, to

7    constitute a rebuttal expert, the expert's opinion must be designed "to contradict or rebut" directly,

8    an opinion set forth in the opponent's initial expert disclosure.  An opinion needed to prove an

9    element of Plaintiff's' case in chief, generally, is not rebuttal evidence.  *Wong v. Regents of the Univ.*

10   *of Cal.*, 410 F.3d 1052, 1061-1062 (9th Cir. Cal. 2005); *Morgan v. Commercial Union Assurance*

11   *Cos.*, 606 F.2d 554, 555-556 (5th Cir. La. 1979).

12         On the other hand, the parties have the duty to "supplement or correct its disclosure" when

13   the party learns that, in a material respect, the disclosure is incomplete or incorrect, and the

14   additional or corrective information is unknown to the other parties.  Fed. R. Civ. P. 26(e)(1)(A).

15   After the deadline for simultaneous expert disclosure, a supplemental disclosure deadline does not

16   permit the designation of a new expert: "[A] party may not use a supplement to extend the discovery

17   deadline and introduce [a] new opinion, nor may a party simply use an existing expert's disclosure as

18   a placeholder to spring a supplemental opinion in the eleventh hour."  *North View Estates, GP v.*

19   *Yreka Holdings*, 2010 U.S. Dist. LEXIS 57800, at *3 (E.D. Cal. Jan. 13, 2010) (internal quotation

20   marks and citations omitted), accord.  *Keener v. United States*, 181 F.R.D. 639, 641 (D. Mont.

21   1998); *see also Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320 (5th Cir. 1998) ("The

22   purpose of supplementary disclosures is just that—to supplement.  Such disclosures are not intended

23   to provide an extension of the expert designation and report production deadline").

24         Here, though Plaintiffs entitled their disclosure of Mr. Bredahl and Mr. Grey as a

25   "supplemental disclosure," Plaintiffs did not seek to supplement or correct information provided in

26   their prior disclosure.  Likewise, there is no contention that these experts were designated to rebut

27

28          [4]The scheduling order uses the term "supplemental experts" to refer to experts that will be used to rebut those
     opinions that are proffered by other parties.

1   the expected testimony of experts disclosed by other parties.  To the contrary, Plaintiffs indicate that

2   they designated Mr. Bredahl as an expert due to a concern that Mr. Rasmussen may not be available

3   for trial.  (Doc. 122 at 3).  Likewise, at the hearing on this motion, Plaintiffs' counsel admitted that

4   Mr. Grey would "probably" testify about property values as they relate to damages but the exact

5   contours of his testimony was not yet known.  Thus, the supplemental disclosure neither

6   "supplemented" nor rebutted but, instead, sought to add new experts to testify about issues raised by

7   Plaintiffs' case in chief.  As a result, the Court finds that supplemental disclosure of these new expert

8   witnesses was not proper.

9          As noted above, Plaintiffs explain that their late designation of Mr. Bredahl was due to their

10  learning recently that Mr. Rasmussen may not be available for trial.  Notably, they have not sought

11  leave to file what is, in essence, an initial expert disclosure out of time and, in fact, failed to seek any

12  Court assistance in this regard.  They failed to even report to the Court about their unauthorized

13  expert disclosure until Defendants raised the issue in their current motion although Defendants

14  notified them of the defects in the designation before filing this motion.

15                    2.  Failure to provide expert reports

16         Plaintiffs failed to provide written reports with their disclosure of Mr. Bredahl and Mr. Grey.

17  The disclosure contains a very brief description of the testimony to be offered by Mr. Bredahl and

18  Mr. Grey.  (Doc. 122 at 3).  Thus, Plaintiffs argue the untimely disclosure meets the "harmless"

19  standard because the information about the witness and their expected testimony was known through

20  other channels."  *Id.*, citing *McKesson Information Solutions, Inc.*, 434 F.Supp.2d at 813.  However,

21  Plaintiffs admit no reports were included with the disclosure and have provided no evidence that the

22  witnesses "were otherwise made known" to Defendants.  Ironically, even Plaintiffs do not know the

23  exact topics that would be encompassed by Mr. Grey's testimony.  Nevertheless, to justify the failure

24  to provide expert reports, Plaintiffs report that because they are paying the costs in this case, they

25  "have held off on reports while the objections and motion is heard."  *Id.*  Though this explains why

26  Plaintiffs have chosen not to provide the reports after the filing of this motion, it does not explain

27  why no reports were provided when the disclosure was made on February 15, 2011.

28

1    Defendants argue that the failure to provide expert reports is not harmless because the expert

2    discovery cut-off is imminent and Defendants have no information about the experts' opinions.

3    (Doc. 119 at 2, 4). Defendants assert that the failure to file timely and proper expert witness reports

4    has resulted in prejudice: "[I]n accordance with FRCP 26(b)(4)(A), Defendants cannot even depose

5    Plaintiff's experts because they have not provided reports. Defendants will also have no ability to

6    timely retain rebuttal experts." *Id.* at 5. Further, Defendants assert the lack of export reports "is

7    hampering Defendants' efforts at preparing a summary judgment motion," which must be filed by

8    April 15, 2011. *Id.*

9    Under the Federal Rules, expert "disclosure *must be accompanied by* a written report." Fed.

10   R. Civ. P. 26 (a)(2)(B) (emphasis added). As one district court stated succinctly,

11   The interest served in requiring the disclosure of expert opinions is self-evident. It is to
     prevent unfair surprise at trial and to permit the opposing party to prepare for the expert's
12   cross-examination. By "locking" the experts witness into what Fed. R. Civ. P.
     26(a)(2)(B) calls "a complete statement of all opinions to be expressed and the bases and
13   reasons therefore," the opposing party knows exactly what she is facing and can decide
     whether to take the deposition of the expert and to prepare for cross-examination and
14   rebuttal.

15   *Coles v. Perry*, 217 F.R.D. 1, at *4 (D.D.C. 2003). Thus, the failure to provide expert reports with

16   the supplemental disclosure was not harmless. Defendants have been deprived of the ability to

17   prepare for depositions and to take these depositions. *See* Fed. R. Civ. P. 26(b)(4)(A). Likewise,

18   given that the disclosure period has passed and time for expert discovery has nearly concluded

19   Defendants have lost the ability of their experts to prepare rebuttal arguments and the ability to

20   designate rebuttal experts.

21   Plaintiffs' suggestion that the scheduling order could be modified to extend the expert

22   discovery period misses the point. (Doc. 122 at 4). Relief from the deadlines set forth in the

23   scheduling order requires a showing of good cause. Fed. R. Civ. P 16(b); *Zivkovic v. Southern Cal.*

24   *Edison Co.*, 302 F.3d 1080, 1087-88 (9th Cir. 2002). Likewise, Plaintiffs implied assumption that

25   there is sufficient time to revamp the scheduling order to allow this case to timely proceed to trial is

26   incorrect; there isn't time. An extension of the expert discovery period would be required to allow

27   Defendants to depose Plaintiffs' expert witnesses and to allow Defendants to file supplemental

28   expert reports and/or designate rebuttal experts. Even if this work could be completed in relatively

short order, there would be insufficient time for the Court to hear and decide nondispositive motions related to expert discovery within the current deadlines.  If the nondispositive motion deadlines are extended, this would impact the April 15, 2011 dispositive motion-filing deadline. (Doc. 25.)  Thus, the cascade of time extensions caused my modifying the expert discovery period, will all remaining dates including those set for nondispositive and dispositive motions, the pre-trial conference and, ultimately, the trial which is currently scheduled for August 22, 2011.  *Id.*

The dates set forth in the scheduling order were not haphazardly selected or unrelated to the needs of the parties or the Court.  They "represent[ed] the best estimate of the court and counsel as to the agenda most suitable to dispose of this case." (Doc. 110 at 7).  As the Ninth Circuit has made clear: "Disruption to the schedule of the court and other parties . . . is not harmless." *Wong*, 410 F.3d at 1062.  "In these days of heavy caseloads, trial courts . . . routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases." *Id.* at 1060.  "As the torrent of civil and criminal cases unleashed in recent years has threatened to inundate the federal courts, deliverance has been sought in the use of calendar management techniques. Rule 16 is an important component of those techniques." *Johnson*, 975 F.2d at 611.  Thus, "Parties must understand that they will pay a price for failure to comply strictly with scheduling . . . orders, and that failure to do so may properly support severe sanctions and exclusions of evidence." *Wong*, 410 F.3d at 1060.

Indeed, the Court explicitly communicated this message to the parties in its scheduling orders.  The Court cautioned that failure to timely disclose experts in accordance with its order "may result in the Court excluding the testimony or other evidence offered through such experts." (Doc. 110 at 2.)  Moreover, the Court alerted the parties that failure to comply with the procedures relating to the discovery of experts "would result in the imposition of sanctions, which may include striking the expert designation and preclusion of expert testimony." *Id.*

Thus, even in the absence of bad faith when making their expert disclosures, Plaintiffs were aware of the importance the Court placed on adherence to the dates set forth in scheduling order so to assure that the case would proceed in a "thorough and orderly manner." *Wong*, 410 F.3d at 1062.  Plaintiffs cannot now claim that the severe disruption to those expectations should be readily excused.  Nor can the disruption be cured as easily as Plaintiffs would have the Court believe.  As

11

1   already explained above, this would require a complete overhaul of the Court's scheduling order.

2   Therefore, the Court concludes that Plaintiffs' belated expert witness disclosure with the

3   accompanying reports, was not harmless. *See Hoffman v. Construction Protective Services*, 541 F.3d

4   1175, 1180 (9th Cir. 2008) (late expert disclosure was not harmless where such would require the

5   court to create a new briefing schedule); *Wong*, 410 F.3d at 1062 (the disruption of the court's

6   scheduling order was not harmless "even though the ultimate trial date was still some months

7   away"). *See also Perez v. McNamee*, No. C06-5031 BZ, 2007 WL 2255228, at *1-2 (N.D. Cal. Aug.

8   3, 2007) (disclosure of an expert report forty days after the deadline for expert disclosures set in the

9   court's scheduling order was not harmless).

10          C.   Attorneys' fees and expenses

11          Defendants request an award of attorneys' fees and expenses incurred in the course of this

12   motion. (Doc. 119 at 5). An award of attorneys fees is permitted under Rule 37(c), which places the

13   determination within the discretion of the Court. Fed. R. Civ. P. 37(c)(1)(A). Specifically, when a

14   party "fails to provide information or identify a witness as required by Rule 26(a) or (3)," the Court

15   "may order payment of reasonable expenses, including attorney's fees, caused by the failure." *Id.*

16   Considering the circumstances, including the less than full success on this motion, the Court will not

17   order an award of fees and expenses incurred in the course of this motion.

18   **V.   Conclusion and Order**

19          Without adequate explanation, Plaintiffs urge the Court to refuse to strike their expert

20   disclosure as to Mr. Bredahl and Mr. Grey despite their lack of explanation for their to comply with

21   the scheduling order and Rule 26. Plaintiffs' failure to abide by the deadlines "exposes [the] party to

22   'any just orders'" determined by the Court. *Goddard*, 528 F.3d at 657; *see also* Fed. R. Civ. P. 16(f)

23   (a court may issue "any just orders" if a party "fails to obey a scheduling or other pretrial order").

24   Moreover, Plaintiffs have not demonstrated that their untimely and defective expert disclosure of Mr.

25   Bredahl and Mr. Grey was substantially justified or harmless. Thus, sanctions under Rule 37(c) are

26   appropriate.

27          Based upon the foregoing, Defendant's motion to strike is **GRANTED IN PART and**

28   **DENIED IN PART** as follows:

12

1.   The motion to strike the expert witness disclosure of Mr. Rasmussen is **DENIED** and,
Mr. Rasmussen's testimony **SHALL** be limited to his preparation of this 2008 survey;

2.   Plaintiffs' supplemental expert disclosure of Mr. Bredahl and Mr. Grey is
**STRICKEN**; and

3.   Defendants' request for attorneys' fees and expenses is **DENIED**.

IT IS SO ORDERED.

Dated:   **March 3, 2011**                                          **/s/ Jennifer L. Thurston**
                                                                 UNITED STATES MAGISTRATE JUDGE