1

2

3

4

5

6

7            **IN THE UNITED STATES DISTRICT COURT**

8            **FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10   MARK STAMAS and JUDY CASTLES,          CASE NO. CV F 09-0753 LJO SMS

11                Plaintiffs,               **ORDER ON MOTIONS FOR**
                  vs.                       **SUMMARY JUDGMENT OR IN THE**
12                                          **ALTERNATIVE SUMMARY**
     COUNTY OF MADERA, BOARD OF            **ADJUDICATION** (Doc. 125, 133, 134)
13   OF SUPERVISORS OF THE COUNTY OF
     MADERA, GERALD HOUSTON, LINDA
14   BARLOW,

15                Defendants.
     _____/

16

17          Three motions for summary judgment, or in the alternative, summary adjudication pursuant

18   to Rule 56 are pending before this Court: (1) Defendants Linda Barlow's and Gerald Houston's

19   motion against plaintiffs Mark Stamas and Judy Castles, (2) Defendant County of Madera's and the

20   Board of Supervisors' motion against plaintiffs Mark Stamas and Judy Castles, and (3) Plaintiff

21   Mark Stamas' and Judy Castles' motion to adjudicate material facts and conclusions of law.

22          Each party filed an opposition on May 18, 2011.  The replies were filed on May 25, 2011.

23   Pursuant to Local Rule 230(g), this matter was submitted on the pleadings without oral argument,

24   and the hearing set for June 1, 2011 was VACATED.  Having considered the moving, opposition,

25   and reply papers, as well as the Court's file, the Court issues the following order.[1]

26   _____

27          [1] The parties have filed numerous objections to the evidence submitted by the opposing side. The Court has not
     relied on any of the disputed evidence to grant or to deny summary judgment. Where the Court has denied summary judgment
28   as to the claims, the Court found triable issues exist regarding the issues.  To the extent that the Court may have considered

**FACTUAL BACKGROUND**

**A.    Factual Overview**

This action involves conflicting claims to an easement or private right-of-way, which was created, modified, or revised over a 120-year time span and ownership of which is in dispute. Plaintiffs claim a right to an easement on Cascadel Road.  Plaintiffs contend they are entitled to access to a 60-foot wide street, and not a 12-foot road, which plaintiffs complain County of Madera and the Board of Supervisors ("Madera") and adjacent property owners, Defendants Gerald Houston and Linda Barlow ("Houston/Barlow") now limit plaintiffs.  The Third Amended Complaint ("TAC") alleges the following causes of action:

1.    First Cause of Action for Violation of 42 U.S.C. §1983 - Substantive and Procedural Due Process;

2.    Second Cause of Action for Violation of 42 U.S.C. §1983 - Equal Protection;

3.    Third Cause of Action for Malicious Prosecution;

4.    Fourth Cause of Action for Slander of Title;

5.    Fifth Cause of Action for Breach of Contract;

6.    Sixth Cause of Action for Declaratory relief; and

7.    Seventh Cause of Action for Quiet Title.

**B.    Summary of Pertinent Allegations**

The Cascadel Woods Subdivision is located in a mountainous portion of Madera.  The subdivision map for Cascadel Woods, Subdivision No. 4, was recorded in Madera County in 1963. Plaintiffs are the owners of Lot 38 of Subdivision No. 4 in the Cascadel Woods Subdivision. Plaintiffs' property abuts Cascadel Road which is the main ingress and egress to the Subdivision. Stamas and Castles have lived there since 1981.  Houston and Barlow purchased Lot 1, which is a 10.42 acre parcel, in Cascadel Woods in 2004.

---

some of the disputed evidence in finding that triable issues exist regarding the claims, the objections are OVERRULED. Further, the Court is not obligated to consider matters not specifically brought to its attention. Thus, it is immaterial that helpful evidence may be located somewhere in the record. The motion and opposition must designate and reference specific triable facts.  *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).

**1.      Brief History of Cascadel Road**

The beginning of Cascadel Road dates back to an 1888 Deed to the County of Fresno.[2]  This Deed granted to "the County of Fresno, in said state the Right of Way for a Public Road, and all incidents thereto," as defined by a specific road survey performed in 1888.  (Doc. 131-1, Joint Exh. 1.)  The Right of Way was defined as a "strip of land sixty feet wide" the location of which was defined by the road survey.  The road survey is lost in antiquity, and the precise location of the Right of Way for a Public Road referred to in the 1888 Deed, cannot be determined.[3]  Madera acknowledges that the 1888 Deed was an accepted dedication of the right of way.  (Doc. 133-1, Madera P&A p.21.)

No history for the road is presented until 1956.  In 1956, Madera quitclaimed the Right of Way described in the 1888 Deed to Cascadel Ranch Properties, Inc., the developer of the Cascadel Subdivision.  Thus, any interest in the 1888 Right of Way was quit claimed to Cascadel Ranch Properties.  (Doc. 131-1, Exh 5, Quitclaim Deed.)  The Cascadel Woods Subdivision, Subdivision no. 4, was recorded in Madera County in 1963.  (Doc. 131, Joint facts no.1)  The subdivision map no. 4 shows Cascadel Road terminated at the easterly boundary of the Houston/Barlow property and is shown as a private, not public road.[4]  (Doc. 131-1, Joint Exh. 29, Jones Decl. ¶2.)  Page 2 of the subdivision map shows a 60 foot wide right of way ending at the border of Lot 1 and not crossing Lot 1. (Doc. 131-1, Joint Exh. 8.)  The map does not depict any road or right of way crossing any portion of Lot no. 1, the present day Houston/Barlow property.  (Doc. 131, Joint facts no. 2.)  There

[2] Madera County was formed from a portion of Fresno County in 1893 according to the uncontradicted statements of the parties.  The date of formation is not relevant.  The parties agree that after the date if Madera's formation, Madera succeeded to whatever interests in Cascadel Road the Fresno County held.

[3] The parties dispute whether the 1888 Deed conveyed not only the Right of Way but also the underlying fee.  Plaintiffs contend the 1888 Deed conveyed both the underlying fee to the land and the Right of Way over the land.  Madera contends that the 1888 Deed conveyed only a "right of way" since the language "right of way" is used in the 1888 Deed.  *City of Los Angeles v. Pacific Elec. Ry. Co.*, 168 Cal. App. 2d 224, 232, 233, 335 P.2d 1042 (1959) (a deed conveying a strip of land 50 feet wide for road purposes raises the inference that the grantor owns the land on each side of the 50-foot strip, and creates an easement in the dedicated property rather than a fee-simple interest).  *Id.* (The intention to offer private property for dedication can be evidenced by a grant deed of the property to a public or governmental agency, either by an absolute conveyance of the fee title).  This contention is addressed *infra*.

[4] The Court notes that the parties have produced copies of the subdivision map and related documents, which in large measure are illegible.  The copies are reduced in size.  The copies have been highlighted and then reproduced which makes the wording unintelligible.  The courtesy copies provided fare no better.

1   is no notation on the subdivision map of an abandonment of any public road that may have existed

2   and crossed Lot 1 before the filing of the Subdivision Map.[5]

3       Since the time Stamas and Castles moved into their residence in 1981, the width of Cascadel

4   Road between Lot 38 and the entrance to Cascadel Woods has remained substantially the same. It is

5   undisputed that a 60-foot wide, physical road does not cross Lot 1, the Houston/Barlow property,

6   and a 60-foot road has never existed.  Instead, a 10-12 foot wide dirt Cascadel Road physically

7   crosses a portion of the Houston/Barstow property.  It is undisputed that Cascadel Road as it crossed

8   Lot 1 has always been 10 to 12 feet wide.  It is undisputed that this portion of Cascadel Road was

9   not incorporated into the Madera County Highway system.

10      **2.    Subsequent conveyances and deeds involving Cascadel Road**

11      After the recordation of the subdivision map in 1963, a series of deeds, quit claims,

12  unrecorded conveyances and late recorded conveyances compound the ownership, rights and the

13  very existence of the 60-foot wide easement across Lot 1.

14      In 1964, Cascadel Ranch Properties deeded Lot 1 to Three Power Foundation ("3Ps"), which

15  presumably conveyed the entirety of the Lot 1 property, the underlying fee property and the right of

16  way, without any reservation of the right of way across Lot 1.  (Doc. 131.-1, Joint Exh. 12, Grant

17  Deed to 3Ps.)  On September 5, 1967, 3Ps grant deeded Lot 1 back to Cascadel Ranch Properties,

18  and there is no reservation for the right of way, and presumably conveyed the entirety of the Lot 1

19  property, the underlying fee property and the right of way.  This grant deed was recorded on

20  September 8, 1967.  Then on September 11, 1967, Cascadel Ranch Properties quitclaimed a sixty

21  foot right of way, as described in the 1888 Deed, to County of Fresno.[6]  (Doc. 131-1, Joint Exh. 14.)

22  This deed is recorded on September 18, 1967.  On September 12, 1967, Cascadel Ranch Properties

23  ———————————————————

24      [5] A final subdivision map must adequately delineate all public streets and easements that will remain in effect after the map is recorded. All public streets and easements not shown on the recorded final map are abandoned, provided that there is a written notation certified by the legislative body approving the map that identifies each abandoned street or easement.

25  Gov. Code, §§ 66434, subd. (g), 66445, subd. (j).

26      [6] The parties do not explain how this quit claim to the County of Fresno, a separate governmental entity, impacts the road.  The parties assume this quit claim to Fresno County is interchangeable with a quitclaim to Madera County; as if

27  the quit claim transferred rights to Madera County.  Fresno County is distinct legal entity from Madera County and the parties do not introduce a quit claim from Fresno County to Madera.  (See Doc. 133-2, Defendant's fact no. 55-58.)  Indeed, a prior

28  interest in the road held by Fresno County in September 1956 was quit claimed to Madera.  (Doc. 131-1, Joint Exh. No. 4.)

1  deeded Lot 1 to 3Ps, and this grant does not mention the 60 foot right of way.  The right of way had

2  been conveyed to Fresno County on September 11, and the Cascadel Ranch Properties conveyance

3  to 3Ps conveyed the underlying fee property, but there is no mention or reservation of the right of

4  way in the deed.[7]  (Doc. 131-1, Joint Exh. 15.)  Then, on November 7, 1967, Madera quitclaimed

5  back to Cascadel Ranch Property the 60-foot right of way (assuming Madera got the right of way in

6  the September 1967 deed) and the deed was recorded on November 20, 1967.  (Doc. 131-1, Joint

7  Exh. 16.)  By this quit claim, it appears that Madera released any of its interest in the 60 foot right

8  way back to Cascadel Ranch Property.

9       On December 22, 1967, Cascadel Ranch Property offered to dedicate the "street right of

10  way" of a 60 foot right of way.  (Doc. 131-1, Joint Exh. 17.)  This offer of dedication was made in

11  relation to "a deed dated September 18, 1955," which deed has not been provided to the Court.[8]

12  From the documents provided, it appears that Cascadel Ranch Property was not the owner of Lot 1

13  at the time of the offer of dedication because Lot 1 had been conveyed to 3Ps on September 12,

14  1967.  But it appears that Cascadel Ranch Property was the "owner" of the right of way, because

15  Madera had quitclaimed the right of way to Cascadel Ranch Properties on November 7, 1967

16  (assuming Madera got the right of way in the September 1967 deed.)  The December 22 offer of

17  dedication by Cascadel Ranch Properties to Madera was not recorded until 1969 ("1969 Offer of

18  Dedication"), and it is undisputed that the 1969 Offer of Dedication has never been accepted by

19  Madera.

20       On April 29, 1968, 3Ps deeded Lot 1 to New Life Foundation. (Doc.131-1, Joint Exh. No

21

22

23  [7] There is no evidence as to whether 3Ps had notice that Cascadel Ranch Properties had deeded a sixty foot right of way to Fresno County a day prior.  California is a race-notice jurisdiction and requires every conveyance of real property to be recorded in order to be valid against a subsequent purchaser of the same property. *See In re Weisman*, 5 F.3d 417 (9th

24  Cir. 1993); Cal.Civil Code § 994 ( an instrument is enforceable between the parties even though it is not recorded) and § 1214.  However, an unrecorded instrument is valid as between the parties thereto and those who have notice of it. Cal.Civil

25  Code § 1217.  A person receiving a deed to, or a deed of trust on, property acquires his or her title or lien subject to all previous transfers of title and previously created liens and encumbrances of which he or she has actual or constructive

26  knowledge. Civ. Code, § 1217 (concerning actual knowledge of an unrecorded instrument), Civ. Code, § 1213 (constructive knowledge of recorded instruments).

27

28  [8] The offer of dedication was made relative to the applications for Parcel Maps 43 and 44, and the relation to Lot 1 is not fully explained to the Court.

18.)  Whatever interest 3Ps held was transferred to New Life Foundation, and there is no mention of

the right of way in the deed.  The parties agree that 3Ps owned the underlying fee to the road and

therefore that is what was transferred to New Life Foundation.  On June 13, 1968, both deeds (the

deed of September 12, 1967 granting Lot 1 from Cascadel Ranch Property to 3Ps, and the deed of

April 29, 1968 granting Lot 1 from 3Ps to New Life Foundation ) were recorded.

In 1972, the Houston/Barlow predecessor in property, Ralph and Helen Walton, acquired Lot

1 from New Life Foundation.  (Doc. 131-1, Exh. 19.)  Lot 1 had an exception for the 60 foot wide

roadway.  The 1972 Deed granted Lot 1 to the Ralph and Helen Walton, and excepted a 60 foot right

of way from the land transfer:

> For valuable consideration. . .Cascadel New Life Foundation, a
> corporation hereby grants to RALPH WALTON and HELEN
> WALTON, husband and wife the real property in the County of
> Madera, State of California, described as Lot No. 1 of Tract No. 119,
> Cascadel Woods Subdivision No. 4, . . . EXCEPTING THEREFROM
> any portion thereof which may lie within the bounds of the 60 foot
> road right of way offered to the County of Madera for dedication to
> public use by Cascadel Ranch Properties, Inc. recorded on July 11,
> 1969 [the 1969 Offer of Dedication] . . .

The 60 foot Right-Of-Way exception runs with every subsequent deed in the chain of title to Lot 1,

including the deed to the Houston/Barlow.  (Doc. 131-1, Joint Exh. 19, 26.)

**3.      Prior Quiet Title Action which resulted in the Houston Offer of Dedication**

The parties to this litigation were involved in a prior quiet title action as to the use of

Cascadel Road and the ownership of the underlying property.  That litigation did not reach

judgment.  Houston/Barlow claimed ownership to the underlying fee property of Cascadel Road as

the road passes over their property.  Houston/Barlow filed a civil action in Madera County Superior

Court against Madera County and Mark Stamas and Judy Castles, among others.  Houston/Barlow

and Madera settled the dispute ("Settlement Agreement") in which Houston/Barlow agreed to

abandon their claims against the County in exchange for the County's promise to execute a

Quitclaim deed releasing any of its interest in the 60 foot wide road and the underlying road property

("2007 Quitclaim").  Plaintiffs allege that the Settlement Agreement extinguishes Plaintiffs' and the

public's rights in the 60 foot right of way.  As part of the Settlement Agreement, Houston/Barlow

offered for dedication an area consisting of 12 foot wide portion of Cascadel Road as it passes

through the Houston/Barlow property ("Houston Offer of Dedication"). Plaintiffs allege the 2007

Quitclaim gave to Houston/Barlow the rights to gate the road and for road work to be exclusively

performed by the Houstons.   Plaintiffs allege that this 12 foot wide portion eliminates most of their

60 foot easement.

### 4.      Criminal Action against Stamas

On or about October 1 and 2, 2007, Stamas was having work done on the portion of Cascadel

Road that crosses Lot No. 1, including grading work, on behalf of Cascadel Woods Homeowners

Association.  No permits were applied for or obtained to do any of the work.  Stamas believed no

permits were needed for the work. Houston and Barlow did not believe that such work could be done

on the portion of Cascadel Road that crosses Lot No. 1 without proper permits being pulled.  It is

disputed whether Houston requested Stamas and the workers to cease working on Cascadel Road;

however, the work continued.

Houston called his attorney who called David Prentice, the Madera County Counsel.

Ultimately, Deputy County Counsel Dave Herman contacted Houston.  During Herman's telephone

conversation with Houston, Houston stated that Stamas had been out on Cascadel Road with

construction equipment, and that photos were taken.  On October 4, 2007, at 10:23 a.m., after

Houston's telephone conversation with Herman,[9] Houston sent an e-mail to Herman attaching 38

photos, and stating the following:

> My attorney Greg Chappel has advised me to send you a selection of photos my wife
> and I took during and after the intrusion by Mark Stamas on our section of Cascadel
> Road. I have attached 38 photos that have been reduced from their original size. I can
> send you the original photos on CD if you wish. I have also attached a PDF file
> (description.pdf) which described what the photos show and when they were taken.
> Please feel free to contact me or my wife, Linda Barlow, by phone or e-mail. If I am
> attempting more attachments than your email system can handle, I can divide the
> photos up into several emails. Thanks for your attention to this matter.

According to Houston/Barlow, Herman began researching and investigating whether Stamas may

have violated any Madera County Code Enforcement statutes or ordinances. Herman researched the

issue and determined that Title 10 of the Madera County Code forbade various activities on public

---

[9] Stamas disputes whether the Herman/Houston conversation occurred before or after the criminal complaint was filed, but does not dispute that Houston sent the email on the date the email indicates.

1   and county roads without a permit, and that such activities could be criminally prosecuted. Herman

2   also reviewed the photographs and discussed with County Counsel Prentice whether to proceed

3   criminally or civilly and whether it would be appropriate to pursue criminal charges against Stamas

4   for possible code enforcement violations.  (Doc. 128-1 (Reddie Decl.), Exh. 2 Herman Depo p. 20-

5   22, 25.) Stamas disputes the extent of this investigation because, among other reasons, Stamas was

6   not contacted and the Road department was not contacted.  (Doc. 150, Plaintiff's disputed fact

7   no.34.)  Herman determined that Stamas could be criminally charged with violations of the Madera

8   County Code.  There is no evidence that, aside from the email from Houston and the

9   Houston/Herman conversation, Houston had any further input into the filing of criminal charges.

10  Herman, as a Special Deputy District Attorney, filed a criminal complaint against Stamas for five

11  misdemeanor counts.[10]  Before being filed, Herman sent the complaint to the supervising Madera

12  County Deputy District Attorney, Karen Mitchell, for her approval.  She reviewed and approved the

13  complaint.   (Doc. 128-1 (Reddie Decl.), Exh. 2 Herman Depo p. 28-29.) Herman filed the complaint

14  on October 5, 2007.

15          At the trial on May 2, 2008, Stamas entered into a "Civil Settlement Agreement," which

16  resulted in the criminal charges being dismissed.   (Doc. 131-1, Joint Exh. 38.)  Specifically, the

17  transcript of that hearing provides, in relevant part:

18          MR. HERMAN: We have a settlement, your Honor. It's a civil settlement in good
            faith, your Honor, but in return for Mr. Stamas agreeing to certain conditions the
19          people are willing to dismiss all charges.

20          THE COURT: So somebody will state those for us or just kind of among friends.

21          MR. HERMAN: This is actually not a confidential settlement, your Honor, so we are
            willing to put the settlement on the record. The agreement actually will be stated by
22          Mr. Fiegel [Mr. Stamas' attorney].

23          MR. FIEGEL: Mr. Stamas will agree not to do any maintenance personally as an
            individual on the subject section of property. . . .
24
            . . . .
25
            THE COURT: All right. Mr. Stamas, did you understand what both your attorney and
26          the other two attorneys said?

27  _____

28          [10] Each Count involved violations of Madera County Code §10.24.020 for Obstructions and Damage to County
    highways.

1    MR. STAMAS: I do.

2    THE COURT: Is that your agreement?

3    MR. STAMAS: Yes, I personally agree to no longer to ever maintain – let me just say yes.

4
     THE COURT: Sometimes, you know, a simple question deserves a simple answer.
5    All right. Then, regardless of whether you are going to put this in writing, we do
     appear to have an agreement. That will be reflected, at least, briefly in a Court minute
6    order. 1, a civil settlement agreement. 2, the agreement to dismiss the charges
     pending. So this matter is dismissed. Thank you all.
7

8    Stamas admitted that, as part of the agreement to have the criminal charges dismissed, he agreed that

9    he would not do any maintenance on the portion of Cascadel Road that crosses Lot No. 1.  Stamas

10   further admitted that, absent that agreement, he believes he has the legal right to perform

11   maintenance on Cascadel Road.

12   **C.      The Parties' Requests for Adjudication**

13            The current motion by Houston/Barlow challenges the causes of action for Malicious

14   Prosecution and for Slander of Title.

15            The motion by Madera challenges the Due Process and Equal Protection constitutional

16   causes of action and the breach of contract cause of action.  In addition to these causes of action,

17   Madera seeks adjudication of the following facts:

18            1.       The 1888 Deed to the County of Fresno granted only an easement for a right of way,

19                     and not a fee;

20            2.       That the 1967 Offer of Dedication was not valid relative to Lot 1;

21            3.       That the County's 2007 quitclaim passed no interest;

22            4.       That the County has not abandoned any public right of way at issue;

23            5.       That the unaccepted Houston Offer does not alter or affect any other public or private

24                     rights.

25   Plaintiffs's motion seek adjudication of the following material facts:

26            1.       Cascadel Road and its Right-of-Way is a long-standing public road in use as

27                     intended, is the Deeded 1888 Wagner Right-of-Way, and splits Lot 1;

28            2.       The Houston "Offer-of-Dedication" ("Houston Offer") is illegal and therefore void;

1    3.    People v Stamas Case No. SCR007619 was procured and controlled by Houstons

2          through the illegal Houston Offer;

3    4.    Madera County is in Breach of Contract with Stamas.

**D.    Plaintiffs' Request for Judicial Notice**

Plaintiffs have asked this Court to take judicial notice of numerous documents.  (See Doc. 136-139 (Exh. A-P).)  The documents include various person's declarations filed in the prior Quiet Title action, *Houston v. Madera,* Case no. SCV 005012.

"Judicial notice" is the court's recognition of the existence of a fact without the necessity of formal proof.  *See United States v. Harrison*, 651 F.2d 353, 355 (5th Cir. 1981); *Castillo-Villagra v. I.N.S.*, 972 F.2d 1017, 1026 (9th Cir. 1992).  Facts proper for judicial notice are those facts not subject to reasonable dispute and either "generally known" in the community, or "capable of accurate and ready determination" by reference to sources whose accuracy cannot be reasonably questioned. Fed.R.Evid. 201;  *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (court may take judicial notice of official records and reports.  The court need not accept as true allegations that contradict facts which may be judicially noticed by the court.)  A court may take judicial notice of its own records.  *See e.g.*, *Day v. Moscow*, 955 F.2d 807, 811 (2nd Cir. 1992). Courts may take judicial notice of public records.  *Cachil Dehe Band of Wintun Indians of Colusa Indian Community v. State of Calif.*, 536 F.3d 1034, 1039–1040 & fn. 4 (9th Cir. 2008).  Judicial notice is particularly appropriate for the court's own records in prior litigation related to the case before it. *Amphibious Partners, LLC v. Redman*, 534 F.3d 1357, 1361–1362 (10th Cir. 2008) (district court was entitled to take judicial notice of its memorandum of order and judgment from previous case involving same parties).

The Court cannot take judicial notice of the declarations filed in *Houston v. Madera,* Case no. SCV 005012.  These  declarations are not judicially noticeable because they are not facts "generally known" in the community and are not "capable of accurate and ready determination." The Court may take judicial notice that declarations were filed in that action, but the Court may not take judicial notice of the underlying factual support.  Therefore, the Court will not take judicial notice of the factual support in the documents.

10

1    The remaining documents include a topographical map and a portion of the Madera County

2    Ordinance, Chapter 17.76.  The Court may take judicial notice of the ordinance.  The Court declines

3    to take judicial notice of the map.  There is no authentication, or indication of portion of the map that

4    may be relevant to this proceeding.

5    **E.      Expert Rob Rasmussen**

6    Stamas offers the declaration of Rob Rasmussen as an expert.  Mr. Rasmussen is a licensed

7    land surveyor.  In his declaration dated April 15, 2008, he states that "[m]y job was to locate and

8    depict the location of Cascadel Road as it exists today."  (Doc. 135-6, Rasmussen Decl. ¶ 8.)  He

9    states that he completed his work sometime in June 2008.

10   Houston/Barlow and Madera object to the declaration on the grounds that Mr. Rasmussen, as

11   a retained expert, has been stricken by the Court.  (Doc. 124, Order p.7.)  Plaintiffs had represented

12   that Mr. Rasmussen was designated as a non-retained expert who was involved in the controversy.

13   Mr. Rasmussen's deposition states he was retained as an expert for which he was being paid and

14   prepared a road map for purposes of litigation.

15   The Court will not consider whether to exclude the declaration or testimony of Mr.

16   Rasmussen at this time.  For reasons stated *infra*, the Court finds the declaration marginally relevant.

17   His declaration does not delineate the "ownership" or "public" interests in Cascadel Road, which

18   comprise the issues involved in these motions.  His declaration addresses the alignment of Cascadel

19   Road which is an issue of fact and an issue for the quiet title cause of action.

20                          <u>**ANALYSIS AND DISCUSSION**</u>

21                  <u>**SUMMARY JUDGMENT/ADJUDICATION STANDARDS**</u>

22   F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment

23   on all or part of the claim."  Summary judgment/adjudication is appropriate when there exists no

24   genuine issue as to any material fact and the moving party is entitled to judgment/adjudication as a

25   matter of law.  F.R.Civ.P. 56( c); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587,

26   106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626,

27   630 (9th Cir. 1987). The purpose of summary judgment/adjudication is to "pierce the pleadings and

28   assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec.,* 475 U.S.

11

1    at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d

2    1401, 1405 (9th Cir. 1985). On summary judgment/adjudication, a court must decide whether there is

3    a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested

4    matters.  F.R.Civ.P. 56 ( c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir.

5    1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970).

6           To carry its burden of production on summary judgment/adjudication, a moving party "must

7    either produce evidence negating an essential element of the nonmoving party's claim or defense or

8    show that the nonmoving party does not have enough evidence of an essential element to carry its

9    ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210

10   F.3d 1099, 1102 (9th Cir. 2000).  "[T]o carry its ultimate burden of persuasion on the motion, the

11   moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*,

12   210 F.3d at 1102.  "As to materiality, the substantive law will identify which facts are material.

13   Only disputes over facts that might affect the outcome of the suit under the governing law will

14   properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

15          "If a moving party fails to carry its initial burden of production, the nonmoving party has no

16   obligation to produce anything, even if the nonmoving party would have the ultimate burden of

17   persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct.

18   1598.  "If, however, a moving party carries its burden of production, the nonmoving party must

19   produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103.  "If the

20   nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the

21   moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex

22   Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56( c) mandates the entry of

23   summary judgment, after adequate time for discovery and upon motion, against a party who fails to

24   make the showing sufficient to establish the existence of an element essential to that party's case,

25   and on which that party will bear the burden of proof at trial.")

26   /////

27   /////

28   /////

1                          **<u>MOTION FOR SUMMARY JUDGMENT ON</u>**

2              **<u>MALICIOUS PROSECUTION AND SLANDER OF TITLE</u>**

3       Houston/Barlow move for summary judgment on the claim of Malicious Prosecution and for

4 Slander of Title.

5 **A.**     **Malicious Prosecution Elements**

6       The basic elements of the tort of malicious prosecution of a civil matter are (1) the initiation

7 of a prior proceeding, (2) without a reasonable belief in the possibility of the suit being successful

8 (i.e., probable cause), (3) termination of that proceeding in favor of the present plaintiff, and (4)

9 malice. *Drummond v. Desmarais*, 176 Cal.App.4th 439, 449 (2009); *Cantu v. Resolution Trust*

10 *Corp.*, 4 Cal.App.4th 857, 881 (1992) ("The termination must demonstrate the innocence of the

11 accused."); *accord Antounian v. Louis Vuitton Malletier,* 189 Cal.App.4th 438, 448, 117 Cal.Rptr.3d

12 3, 12 (2010).

13       Houston/Barlow argue that plaintiffs cannot establish that (1) the criminal complaint was

14 instituted at the direction of Houston/Barlow, (2) there was a favorable termination, or (3) malice.

15            **1.**       **<u>Instituted at the Direction of Defendants</u>**

16       Houston/Barlow argue that the tort fails because plaintiffs cannot establish Houston/Barlow

17 instituted the criminal action against Stamas. Houston/Barlow did not make any false report to the

18 County about Stamas' conduct on the property.  The report of Stamas' conduct on the property

19 resulted in Herman's own investigation, research and decision to file criminal charges.

20       Plaintiffs argue that Houston/Barlow procured the criminal complaint against Stamas.  (Doc.

21 149, Stamas Opposition p.2-5.)  Plaintiff argue that "without the Houston Offer, there would have

22 been no criminal charges filed" and that "the Houston's sought out the prosecution of Plaintiff

23 Stamas." (*Id.* at 3.)  Stamas notes that the criminal complaint "was based solely on the Houston

24 Offer" and it was used to threaten Stamas and try to stop the road maintenance Stamas was

25 performing.  (*Id.*)

26            **(A)**     **Falsity of Reporting**

27       As noted by the California Supreme Court, "[c]ases dealing with actions for malicious

28 prosecution against private persons require that the defendant has at least sought out the police or

prosecutorial authorities and falsely reported facts to them indicating that plaintiff has committed a crime." *Sullivan v. County of Los Angeles*, 12 Cal.3d 710, 720 (1974). Falsity of reporting is a significant factor. *See Rupp v. Summerfield*, 161 Cal.App.2d 657, 665 (1958) (defendant initiated the action by making a false report to law enforcement officer and intentionally and knowingly testified falsely at the preliminary hearing); *accord William v. Hartford Ins. Co.*, 147 Cal.App.3d 893, 898 (1983) (defendant caused its employees to make false statement to law enforcement personnel and caused them to testify falsely before the grand jury).

There is no evidence of falsity of information given by Houston/Barlow to Deputy County Counsel Herman. The information reported, that Stamas was conducting repair work on the road, was true. It is undisputed that Houston/Barlow reported Stamas was on Cascadel Road with a work crew performing some form of maintenance.[11] Houston/Barlow reported the activity to their attorney, who in turn contacted the County Counsel for Madera County. Deputy County Counsel Herman called Houston/Barlow who reported the bulldozers and earthmovers on the road. Houston/Barlow forwarded to Herman via email numerous pictures of Stamas and the work crew conducting repair work on the road. There is no evidence that the photographs falsely depict what was occurring on the road. There is no evidence that any information provided to Herman by Houston/Barlow was false or deceptive.

Stamas' underlying challenge to the criminal charges is his contention that the Houston Offer of Dedication is "an improper and illegal dedication." Stamas challenges the legality of the Offer of Dedication as the basis for his criminal prosecution. Stamas, however, cannot bootstrap a challenge to the Houston Offer of Dedication through a cause of action for malicious prosecution. In a malicious prosecution action, the focus is upon the actions of the defendant, here Houston/Barlow, in procuring the prosecution. The undisputed evidence shows that the Houston/Barlow sent an email to Herman and had conversation with Herman either before or after the email. That is the extent of the Houston/Barlow contact. There is no evidence that Houston/Barlow were further involved in the decision that criminal charges should be brought. Whether the Offer of Dedication ultimately turns

---

[11] The parties dispute whether the work on the road was "maintenance" or resulting in damage to the road. For purposes of the motion on the malicious prosecution claim, whether the road was maintained or damaged is not relevant.

1   out to be valid or invalid is irrelevant into whether Houston/Barlow falsely procured Stamas'

2   criminal prosecution.  There is simply no evidence that the conduct for which Mr. Stamas was

3   prosecuted, repairing the road, was false or falsely reported by Houston/Barlow and no evidence

4   Houston/Barlow perjured their testimony in any fashion.

5          Stamas argues that the criminal charges against him lacked merit.  He argues that the work

6   on the road was not "criminal" and that the prosecution was brought for an improper purpose.  (Doc.

7   149, Stamas Opposition p.8-9.)

8          The merit of the criminal charges is not relevant to the malicious prosecution claim because

9   plaintiff has not shown any falsity in the information that was provided by Houston/Barlow.  There

10  is no evidence Houston/Barlow made the decision to bring criminal charges against Stamas.

11  Houston/Barlow reported the road maintenance activity to Herman who in turn made the decision to

12  prosecute.  The malicious prosecution cause of action tests the actions of Houston/Barlow, not the

13  actions of employees of Madera.  Here, plaintiffs' evidence is lacking that Houston/Barlow falsely

14  did anything which resulted in charges against Stamas.[12]

15                      **(B)     Independent Investigation**

16         Houston/Barlow present evidence that the prosecution was independently procured.  They

17  did not "procure" the filing of the criminal complaint.  Houston/Barlow present evidence that

18  Herman conducted an investigation into the merits of the prosecution and independently determined

19  to prosecute.

20         "[A] person who merely alerts law enforcement to a possible crime and a possible criminal is

21  not liable if, law enforcement, on its own, after an independent investigation, decides to prosecute."

22  *Williams v. Hartford Ins. Co.*, 147 Cal.App.3d 893, 898 (1983).  Herman testified that he researched

23  Title 10 of the Madera County Code and determined that a permit was required to do the work on

24  the road that Stamas was performing. (Doc. 150, Plaintiff's disputed fact no. 33.)  Herman then

25

26         [12] Indeed, there is testimony from the Road Commissioner that while the work Stamas had done on the road did not
    "damage" the road, the pictures of the road work "showed the degree of work that is above what we normally do as routine
27  maintenance for a dirt road." (Doc. 155-1, Hoevertsz depo p. 23-24; Doc. 151-7, Exh.G, Hoevertsz depo p. 28-29 (no damage
    to road).)  The charges for which Stamas was prosecuted were for failing to obtain permits for work in excess of regular road
28  maintenance.  (Doc.131-1, Exh. 35.)

1   decided, after consultation with County Counsel, to file criminal charges.

2          Stamas argues that there was no independent investigation.  Stamas notes that the criminal

3   complaint was filed against him within 24 hours of the Houston/Barlow report.[13]  Stamas notes that

4   there are  inconsistencies in testimony between District Attorney Prentice and Deputy District

5   Attorney Herman as to who reviewed the criminal complaint, and who would take charge of

6   prosecution.  Stamas notes that there is failure of the pictures to show any road damage and that

7   there has not been any other criminal prosecution for similar type conduct.

8          It is undisputed that there was some independent investigation of the information originally

9   supplied by Houston/Barlow, and Herman independently chose whether and what crimes to

10  prosecute against Stamas.  Stamas disputes the scope of the investigation because he was not

11  contacted and that the short time frame from report of the road maintenance to filing the complaint.

12  But, Stamas does not point to any evidence by Houston or by Barlow which influenced what

13  otherwise was a independent decision of Herman to prosecute.  The evidence is undisputed that

14  Herman conducted an investigation and independent research.  He researched the County

15  Ordinances to determine which if any laws were violated.  He contacted Houston.  He reviewed

16  photographs and an old County file.  He had his complaint reviewed by a Deputy District Attorney.

17  Thus, the evidence shows an independent investigation.

18         Stamas disputes the independent investigation, but Stamas only points to evidence as to who

19  spoke to whom and when. While the scope of the investigation may not have been expansive, it is

20  undisputed that there was an investigation in which Herman independently determined to bring

21  criminal charges.  There were only two contacts between Herman and Houston/Barlow: (1) the

22  Email from Houston to Herman forwarding the emails, and (2) a telephone conversation between

23

24

25

26         [13]  Stamas argues "There is not enough time between 10:32 am on Thursday the fourth, and Friday at 3:25 pm on
    the  fifth, in Bass Lake, an hour from Madera, to perform "his own factual investigation"  and draw up a complaint and
27  deliver it to Bass Lake on a Friday afternoon. There was no scene of the "crime" visit, no phone calls to Stamas, the
    Association,  the contractor or anyone else, least of all County Code Enforcement who normally handles code violations."
28  Doc. 150, Plaintiffs' Disputed Fact no. 34.)

1   Herman and Houston.[14]  There is undisputed evidence that Herman "passed the complaint by" the

2   supervising Deputy District Attorney, before Herman filed the complaint.   Stamas does not identify

3   evidence which refutes the investigation Herman identified he performed before filing the criminal

4   charges.  Accordingly, there is no issue of fact the Houston/Barlow criminal proceedings were

5   instituted against Stamas because Herman conducted an independent investigation.

6                                   **2.     No Favorable Termination**

7          Houston/Barlow argue Stamas cannot show a favorable termination of the criminal

8   proceedings.  The hearing transcript establishes that the charges were dismissed because the parties

9   entered into a "Civil Settlement Agreement."  Houston/Barlow argue that the transcript indicates

10  that the charges were not dismissed because Stamas was innocent, but rather the charges were

11  dismissed in return for Stamas agreeing not to do any maintenance on the road.  The dismissal does

12  not indicate in any way that Stamas was innocent of the charges.  (Doc. 125-1, Houston/Barlow

13  P&A  p.17.)

14         The favorable termination element of a malicious prosecution action is established by

15  showing that termination of the underlying lawsuit reflected on the merits of the action and the

16  plaintiff's innocence of the misconduct alleged.  *Ross v. Kish*, 145 Cal.App.4th 188, 51 Cal.Rptr.3d

17  484 (2006).  In order to show termination, the plaintiff need not show a verdict or a final

18  determination on the merits; legal termination is enough. The termination of the prior proceeding

19  must reflect on the merits of the prior action (*Berman v. RCA Auto Corp.*, 177 Cal.App.3d 321, 222

20  Cal.Rptr. 877 (1986)) and reflect the plaintiff's innocence of the alleged misconduct.  *Warren v.*

21  *Wasserman*, *Comden, & Casselman*, 220 Cal.App.3d 1297, 271 Cal.Rptr. 579 (1990).

22         A settlement of an action is not generally a "favorable termination."

23                 "A dismissal resulting from a settlement generally does not constitute
                   a favorable termination. In such a case the dismissal reflects
24                 ambiguously on the merits of the action because it results from the
                   joint action of the parties, leaving open the question of the defendant's
25

26         [14]  Stamas disputes that the telephone conversation with Houston occurred before Herman filed the criminal
    complaint. See Doc. 150, Plaintiffs' Disputed fact no. 28 ("The email reads as an initial contact stating, in part, near the end
27  "Please feel free to contact me or my wife, Linda Barlow, by phone or email." ... There is no indication of a previous phone
    call or follow up to a call. ... This supports the argument that his email to Herman was an initial contact.') Regardless of the
28  timing of the call, there is evidence of some investigation of legal issues involved in Stamas' conduct.

1    guilt or innocence."

2    *Fuentes v. Berry*, 38 Cal.App. 4th 1800, 1808 (1995).  The test is whether or not the termination

3    tends to indicate the innocence of the defendant or simply involves technical, procedural or other

4    reason that are not inconsistent with the defendant's guilt.  *Haight v. Handweiler,* 199 Cal.App.3d

5    85, 88-89, 244 Cal.Rptr. 488 (1988).

6    Here, there is no dispute as to the termination of the prosecution.  The prosecution was

7    terminated on the record, with a court transcript and resulted in a dismissal of charges for a civil

8    settlement.  The transcript shows that the resolution of the criminal proceeding was accomplished in

9    open court, with a Superior Court judge presiding.  (Doc.131-1, Exh. 38 Transcript p. 4-6.)  The

10   transcript indicates that "in return for Mr. Stamas agreeing to certain conditions the people are

11   willing to dismiss all charges."  (Doc.131-1, Exh. 38 Transcript p.3.)  The main agreement was that

12   "Mr. Stamas will agree not to do any maintenance personally as an individual on the subject section

13   of the property."  (Doc.131-1, Exh. 38 Transcript p.3.) The Judge of the Superior Court took the

14   settlement and agreement on the record.  (*Id.)* The Court supervised the settlement agreement and

15   authorized the resolution of the criminal action through the settlement.  The transcript does not

16   indicate a finding of "innocence" for Stamas' actions.   A settlement generally will not be considered

17   a favorable termination, because there was nothing that established the innocence of the malicious

18   prosecution plaintiff.

19   Stamas argues that a favorable termination occurred because a voluntary dismissal or failure

20   to prosecute is considered a favorable outcome, citing *MacDonald v. Joslyn*, 275 Cal.App.2d 282,

21   289 (1969).  In *MacDonald*, the court observed that a voluntary dismissal of a civil action ordinarily

22   is not a dismissal on technical grounds and therefore may constitute a favorable termination which

23   will support an action for malicious prosecution.  *Id.* at p. 289.  Stamas argues that he entered into a

24   civil settlement agreement with Madera and Madera agreed to affect a dismissal of the criminal

25   charges.  (Doc. 149, Stamas P&A p.10.)

26   The dismissal of the criminal proceeding is not a "favorable" termination.  *MacDonald v.*

27   *Joslyn* is distinguishable because it involved a civil proceeding where the underlying civil action

28   was voluntarily dismissed by the then-plaintiff/later-named-defendant.  Here, the criminal action

was not "voluntarily dismissed" at the request of Houston/Barlow and even if it were, the voluntary dismissal is not favorable.  It is undisputed that Stamas agreed to no longer perform road maintenance, the very actions for which he was charged, in exchange for dismissal of the charges. This agreement does not indicate "innocence."  *Cantu v. Resolution Trust Corp*., 4 Cal.App.4th 857, 881 (1992) ("The termination must demonstrate the innocence of the accused.")

Plaintiff argues the termination was "favorable" to plaintiff because he received what he wanted - code compliant access - and then the action was dismissed.  (Doc. 149, Stamas Opposition p.10.)  Plaintiff contends it was indicative of his innocence of the charges and prevailing with code compliant access.

Where a proceeding is terminated other than on its merits, the reasons underlying the termination must be examined to see if they reflect the opinion of either the court or the prosecuting party that the action would not succeed.  "[W]hen the underlying action is terminated in some manner other than by a judgment on the merits, the court examines the record 'to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed.' "  *Ross v. Kish*, 145 Cal.App.4th at 198 (underlying action was dismissed as a discovery sanction).  Should a conflict arise as to the circumstances of the termination, the determination of the reasons underlying the dismissal is a question of fact. *Id.*

Stamas' argument of "fully code compliant" access does not raise an issue of fact of favorable termination.  As stated in the Court's discussion of the breach of contract cause of action, *infra*, the term "fully code compliant" meant "road maintenance;" any such road maintenance would be "fully code compliant."  The term did not mean creating a 60-foot roadway.  The prosecution terminated with Stamas agreeing not to perform road maintenance, the misdemeanor for which he was charged.  In exchange, Stamas would get road maintenance performed by Houston which was fully code compliant.  This termination does not raise an issue of fact of innocence.  Accordingly, there is no issue of fact as to whether the criminal action was favorably terminated in Stamas' favor.

### 3.   **Showing of Malice**

Houston/Barlow argue that they "legitimately believed Mark Stamas was breaking the law and causing damage to their property."  (Doc. 125-1, Houston/Barlow p.17.)  Houston/Barlow argue

1   there is no evidence of malice.

2        The court does not reach this issue.  The Court finds that the malicious prosecution action

3   cannot proceed because of the failure of evidence on the elements that the criminal complaint was

4   instituted at the direction of Houston/Barlow, and on the element of a favorable termination.

5   **B.        Slander of Title Cause of Action**

6        The slander of title cause of action challenges the Houston Offer of Dedication.  (Doc. 85,

7   TAC ¶52.)

8        Slander of title occurs when there is an unprivileged publication of a false statement which

9   disparages title to property and causes pecuniary loss.  *Stalberg v. Western Title Ins. Co.*, 27

10  Cal.App.4th 925, 929, 32 Cal.Rptr.2d 750, 752 (1994).  Elements of slander of title are: (1) a

11  publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes

12  direct and immediate pecuniary loss.  *Manhattan Loft, LLC v. Mercury Liquors, Inc*., 173 Cal. App.

13  4th 1040, 93 Cal. Rptr. 3d 457 (2009).

14       Houston/Barlow argue that Stamas is not able to establish several elements of the cause of

15  action.  Houston/Barlow argue that Stamas cannot show "falsity" because there are no facts to

16  support a finding that anything in the Houston Offer of Dedication is false.  Houston/Barlow argue

17  that Stamas cannot not establish "title" to the property.  To the extent Stamas contends he has an

18  "interest" in Cascadel Road, Stamas cannot establish he had proper title to any interest in Cascadel

19  Road as there has been no prior judicial determination that Stamas acquired title to or an interest in

20  Cascadel Road.  (Doc. 125-1 Houston/Barlow p.20.)  Houston/Barlow also argue that Stamas cannot

21  establish damage, as their property has never been for sale or decreased in value.  Finally,

22  Houston/Barlow argue that the Houston Offer was a privileged communication and proceed under

23  47(b)(3) because it was made a part of an official proceeding authorized by law.

24       Stamas argues that the Houston Offer legally has the effect of a blank piece of paper. It was

25  unilaterally drawn up and recorded by persons with no greater legal interest in the Right of Way than

26  the general public. Ultimately, although it purports to eliminate Plaintiffs' interest in the easement,

27  its effect is not binding.  (Doc. 149, Stamas Opposition p.15-16.)

28       **1.        Falsity of the Houston Offer**

20

1    Houston/Barlow argue that the claim for slander of title must fail because there are no facts

2    contained in the Houston Offer of Dedication which are false.  (Doc. 125-1, Moving papers p. 20.)

3        The recordation of an instrument facially valid but without underlying merit will give rise to

4    an action for slander of title.  *Seeley v. Seymour,* 190 Cal.App.3d 844, 857 (1987).   A recorded

5    document may have no effect on title yet still give rise to a slander of title cause of action. *Id.*

6    (Rejecting argument that if the recorded document is facially insufficient to create a legal "cloud,"

7    the party whose property is affected is deprived of an action for wrongful disparagement of title.)

8        Houston/Barlow attempt to distinguish *Seeley* on the basis that the Houston Offer of

9    Dedication has not shown up in title reports.  Houston/Barlow argue that in *Seeley* the purported

10   lease agreement showed up on title reports.  Houston/Barlow argue the Houston Offer has no legal

11   impact because it has never been accepted, there is no evidence it has appeared on any title reports

12   in connection with Lot 38 and it has had no impact on Plaintiffs' ability to sell their property.  (Doc.

13   154, Houston/Barlow Reply p.9.)

14       It is undisputed that the Houston Offer of Dedication has been recorded.  It is undisputed that

15   Houston Offer of Dedication affects Cascadel Road.  Because the quiet title cause of action has not

16   been adjudicated, the Court cannot determine if title or interest in the road is impacted.

17              **2.       Title in the Property or Interest in the Property**

18       Houston/Barlow argue that Stamas does not have an interest in the property.  They argue that

19   Stamas' interest has arisen from adverse possession which does not support a claim for slander of

20   title.  Houston/Barlow argue that because Stamas is not the owner of the property allegedly

21   slandered, Stamas cannot maintain the cause of action.

22       A recorded document may have no effect on title yet still give rise to a cause of action for

23   slander of title. *Gudger v. Manton*, 21 Cal. 2d 537, 543,134 P.2d 217 (1943) (if the publication as

24   reasonably understood casts doubt on the existence and extent of another's interest in property, it is

25   disparaging to his or her title where it is so understood by the person to whom it is published)

26   (overruled in part on other grounds by, *Albertson v. Raboff*, 46 Cal. 2d 375, 295 P.2d 405 (1956)).

27   "[T]he key to whether the defendant's conduct is actionable is not whether he has succeeded in

28   casting a legal cloud on the plaintiff's title, but whether he could reasonably foresee that 'the conduct

21

of a third person as purchaser or lessee ... might be determined thereby.' " *Seeley*, 190 C.A.3d at 857.

It is undisputed that the Houston Offer of Dedication has been recorded.  It is undisputed that Houston Offer of Dedication affects Cascadel Road.  Because the quiet title cause of action has not been adjudicated, the Court cannot determine if title or interest in the road is impacted.

### 3.   <u>Showing Damages from Slander of Title</u>

To establish liability for slander of title the owner of the property interest must suffer an economic loss as the direct result of the slanderous publication.  *Hill v. Allan*, 259 Cal.App.2d 470, 489, 66 Cal.Rptr. 676, 689 (1968).  In an action for wrongful disparagement of title, a plaintiff may recover (1) the expense of legal proceedings necessary to remove the doubt cast by the disparagement, (2) financial loss resulting from the impairment of vendability of the property, and (3) general damages for the time and inconvenience suffered by plaintiff in removing the doubt cast upon his property.  *Seeley v. Seymour*,  190 Cal.App.3d 844, 865, 237 Cal.Rptr. 282, 293 (1987). The damage usually consists of a loss of prospective purchaser or lessee and the expense of litigation to remove the doubt cast on the title.  *Wright v. Rodgers*, 172 Cal.App.2d 349, 366 (1959)Rest. Torts, §633.  It is not necessary, however, to show that a particular pending deal was hampered or prevented, since recovery may be had for the depreciation in the market value of the property.  *Hill*, 259 Cal.App.2d at 489. The disparagement and ensuing damage may be established by other than showing a loss of a particular potential sale.  *Glass v. Gulf Oil Corp.*, 12 Cal.App.3d 412 (1970).

Here, plaintiff has not introduced evidence that it has either lost a potential sale (impairment of vendability) or that the property has depreciated in market value.[15]  There is no evidence of the loss of any current or potentially future sale.  There is no evidence of the loss of value of the plaintiffs' property from the Houston Offer of Dedication.

There is authority that plaintiff may recover the expense of legal proceedings necessary to remove the doubt cast by the disparagement (*See Forte v. Nolfi*, 25 Cal.App.3d 656, 687-88, 102 Cal.Rptr. 455 (1972), but plaintiffs do not offer such evidence.  (See Doc. 135, Plaintiff's facts; Doc.

---

[15]  Houston/Barlow note that Stamas does not have an expert witness who could opine as to the depreciation in market value from the Houston Offer of Dedication.

149, Plaintiffs' Opposition p.16-17; Doc. 150, Plaintiffs' Response facts.)  Therefore, there is no competent evidence before the court as to the damages plaintiffs may have suffered as a result of the recording of the Houston Offer of Dedication.

Stamas argues that the damage is the "Lot 38 no longer has sufficient legal access so long as the Houston Offer and its enforcers cloud the record."  Stamas further argues that he is prevented from ever building upon or improving their lot and the access endangers their wildfire escape route, citing testimony of County Counsel Prentice.[16]  (Doc. 149, Stamas Opposition p.16.)

Plaintiff misconceives the damages recoverable under a claim for slander of title.  Plaintiff must show a "financial loss from 'impaired vendability' of the property."  *Seeley*, 190 Cal.App.3d at 865.  Plaintiffs have not cited to any authority, and the Court has not found any, which permit recovery for "impaired access" of an easement, absent some showing of impaired vendability or property depreciation.  Here, there is no evidence of impaired salability, even considering the evidence in the light most favorable to plaintiffs.  Even accepting the evidence of County Counsel Prentice at face value, there is nothing that relates his statement to the Houston Offer of Dedication.  This evidence does not show that plaintiff's property has suffered any loss in salability or depreciation in value.  It would be speculative for this Court to conclude that the property has been damaged without appropriate testimony establishing a loss in value.  Therefore, plaintiffs have not carried their burden of proof on this element.

### 4.   <u>Litigation Privilege</u>

Houston/Barlow argue that the Houston Offer was a privileged communication and protected under 47(b) because it was made a part of an official proceeding authorized by law.

There is no liability for a slander of title if the defendant was privileged in making the disparaging statement.  Cal.Civ.Proc. 47(b) provides:

> "b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in
> any other official proceeding authorized by law, or (4) in the initiation

---

[16] Stamas also refers to a letter from the Department of Forestry for the proposition that improvement could not take place on his property.  (Doc. 151, Exh.V.)  Accepting this letter as true, even in light of the absence of necessary foundation and the hearsay character, the letter states that "[a] mere offer of dedication does not trigger the road width requirement."  This language indicates that the Houston Offer of Dedication would not require compliance with specific road widths for purposes of improvements.

1                      or course of any other proceeding authorized by law and reviewable
                     pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of

2                      Part 3 of the Code of Civil Procedure . . ."

3 Section 47(b) promotes access to the courts for the redress of grievances unhampered by the fear of

4 derivative tort liability. *Silberg v. Anderson*, 50 Cal.3d 205, 213, 266 Cal.Rptr. 638 (1990)

5 ("Although originally enacted with reference to defamation [citation], the privilege is now held

6 applicable to any communication, whether or not it amounts to a publication [citations], and all torts

7 except malicious prosecution. [Citations .]")

8        A communication to an official agency which is designed to prompt action is deemed part of

9 an official proceeding for purposes of statutory litigation privilege. *Ghafur v. Bernstein*, 131

10 Cal.App.4th 1230, 1235, 32 Cal.Rptr.3d 626 (2005) (letter to superintendent of schools requesting

11 investigation).  A statement must be made to an official agency having the power to address the

12 complaint made. *Katz v. Rosen*, 48 Cal. App. 3d 1032, 121 Cal. Rptr. 853 (1975) (letter to local bar

13 association complaining of an attorneys alleged unethical conduct). Official proceedings include

14 proceedings "which resemble judicial and legislative proceedings" such as those within and before

15 county boards of supervisors. *Young v. County of Marin*, 195 Cal.App.3d 863, 872 (1987).  The

16 privilege extends to preliminary communications to such boards or agencies designed to induce or

17 influence their actions. *Id.*

18        The offer of dedication is a communication to an official agency.  Real property may be

19 dedicated to a city or county for any public purpose by the recording of an offer of dedication

20 executed and acknowledged by the owner in the same manner as any conveyance of real property.

21 Gov.Code §7050 (dedication by conveyance for public purposes).  The offer may be for use of the

22 property for streets, highways, paths, alleys, access or abutter's rights, drainage, open space, parks,

23 or any other public use. *Id.* A separate instrument of dedication under this statute is an alternative to

24 any other procedure for dedication authorized by law. *Id.*  Once the offer is recorded, it is

25 irrevocable and can be accepted by the city council or board of supervisors of the city or county. *Id.*

26 The owner may specify the purpose of the dedication in the recorded offer, and the public entity

27 would be restricted to this purpose. *Id.*  Madera has enacted Municipal Code §17.76 which

28 establishes the procedure for Madera to receive, review and decide upon offers of dedication.  (See

1  Doc. 139, Exh. P.)  The Municipal Code includes an application process, review considerations,

2  approval criteria and an appeal process.  (See Doc. 139 Exh. P (§§17.76.010 - 17.76.090.))

3      Here, the Court finds that the offer of dedication is a privileged communication.  The

4  Houston Offer of Dedication is a document offered to induce action by the County of Madera.  It is

5  designed to prompt action by Madera.  The offer of dedication and the Madera proceeding are

6  authorized by law.  *Loshonkohl v. Kinder*, 109 Cal.App.4th 510, 514, 135 Cal.Rptr.2d 114, 116

7  (2003) (creates an absolute privilege from liability for a publication made in any legislative or

8  judicial proceeding or "any other official proceeding authorized by law."), *cert. denied,* 541 U.S.

9  938 (2004).  Therefore, it falls within the privilege for official proceedings.

10      **MOTION FOR SUMMARY JUDGMENT ON**

11      **DUE PROCESS, EQUAL PROTECTION AND BREACH OF CONTRACT**

12      Madera challenges the causes of action for violation of Due Process, for violation of Equal

13  Protection and for Breach of Contract.

14  **A.      Federal Constitutional Violations**

15      The First and Second Causes of Action are for violation of Civil Rights, 42 U.S.C. §1983, for

16  deprivation of Due Process and Equal Protection.  Plaintiffs allege that they have been denied due

17  process and equal protection in the access right or easement afforded by Cascadel Road up to the

18  originally granted 60 feet width.  Plaintiffs allege that they have been deprived of their property

19  right to the 60-foot wide easement.  Plaintiffs contend that the Houston Offer of Dedication and the

20  Madera's quit claim in 2007 deprived plaintiff of the 60 foot easement by irrationally creating,

21  recording and enforcing the Houston Offer without notice or hearing, eliminating Plaintiffs'

22  Easement, and narrowing the road to a mere twelve (12) feet.

23      County contends that looking at the known history of the Right of Way, the Madera's 2007

24  quit claim could not have deprived plaintiff of any easement rights they had in the road over Lot 1,

25  the Houston/Barlow property.

26      **1.      Claim of Violation of Substantive Due Process**

27      Substantive due process addresses improper governmental interference with property rights

28  and irrational actions by government decision makes.  *County of Sacramento v. Lewis*, 523 U.S. 833,

25

845, 119 S.Ct. 1708 (1998).

The essence of a claim for substantive due process is that the governmental action is unreasonable and bears no rational relationship to a legitimate state interest.  The Supreme Court explained that a governmental action will violate substantive due process if it is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."  *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S. Ct. 114 (1926). The touchstone of due process is protection of the individual against arbitrary action of government. *County of Sacramento v. Lewis*, 523 U.S. at 845.

### (A)   A Property Right Must be Deprived

The United States Supreme Court has recognized that property rights are not created by the Constitution.  To state a claim for violation of substantive due process, a land owner must have a protected property interest.  *American Mfgrs Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 59 119 S.Ct 977 (1999):

> "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.' . . .Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process." (Citations omitted.)

Property rights are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law, rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); *Barthuli v. Board of Trustees*, 19 Cal.3d 717, 722, 139 Cal. Rptr. 627, 566 P.2d 261 (1977) (same).  Indeed, to determine whether a protected property interest exists in a given instance, courts look to state law.  *WMX Techs, Inc. V. Miller*, 80 F.3d 1315, 1318 (9th Cir. 1996) ("We look to state law to define the dimension of a protected property interest.")   Property rights cannot be created by a person's unilateral needs. To have a property interest in a benefit, a person must clearly have more than an abstract need or desire for it, or a unilateral expectation of it. Instead, the person must have a legitimate claim of entitlement to the benefit. *See*, *generally*, *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

**(B)     The 1888 Deed for Right of Way**

On June 16, 1888, George Wagner signed a deed with convey to the County "the Right of Way for a Public Road, and all incidents there to" and described as "A Strip of land sixty feet wide" as located by the lost road survey.

Plaintiffs contend this conveyance was a "fee" conveyance as opposed to a lesser interest.

Fee simple title generally is presumed to pass by the grant of real property unless it appears from the grant that a lesser estate was intended. Civ.Code § 1105.   The general presumption of fee title conveyance is subject to more specific statutory presumptions applicable to certain types of real property acquisitions.   Under Civ.Code §§ 831, 1112, an easement (rather than fee title) is presumed to pass by grant of property to government for use as public highway.

Here, the Court finds the 1888 Deed conveyed a right of way.   The plain language of the 1888 Deed indicates a right of way was conveyed and not a fee simple.   The 1888 Deed refers to a "right of way" to be used for a public road.   Therefore, the original grant in the 1888 Deed was for a right of way.

The road's location is the bane of this litigation.   The parties dispute whether the right of way conveyed in the 1888 Deed encompasses some or all of what is now Cascadel Road.   County acknowledges that the 1888 right of way was an accepted dedication.   (Doc. 133-1, Madera P&A p. 21.)   There is no evidence before the Court that the 1888 Deed was part of the county highway system or maintained by Fresno County.   It is undisputed that Cascadel Road or the 1888 Deed right of way was incorporated into the Madera County highway system.[17]   The Court cannot make the determination as to Cascadel Road's location as a matter of law on the evidence before it.

**(C)     Inability to Adjudicate Subsequent Transfers**

The parties dispute the effect of various transfers of right of ways, offers of dedications, exceptions in deeds, as to whether Cascadel Road is or should be 60 foot wide, is a public road or a private road, or something else.

Public use "quit claimed away"

---

[17] The term "county highway" includes any public highway, road, street, avenue, alley, lane, drive, way, place etc. Str.& Hwy §960.5.

In 1956, when Madera quitclaimed the right of way described in the 1888 Deed to the developer of the Cascadel Subdivision, Cascadel Ranch Properties, Inc., presumably the right to public use did not get quitclaimed away.  However, there is no evidence of this fact and the Court is not cited to controlling authority.  In 1955, the Legislature amended Streets and Highways Code § 941 to provide that no road would become a highway by public use.  The court in *Western Aggregates, Inc. v. County of Yuba*, 101 Cal. App. 4th 278, 130 Cal. Rptr. 2d 436 (2002) held that this statutory change did not invalidate existing roads. If a road was accepted for public use by maintenance and repair by the public prior to 1955, no formal acts of acceptance were made necessary by the amendments to § 941.  The Court cannot determine what interest exactly was quitclaimed away based on what is before it.

Stamas argues that the 1967 quitclaim from the County to Cascadel Ranch Properties, for the 60 foot right of way was invalid because it attempted to abandon improperly a public right of way. But Stamas has not cited the applicable Streets and Highways Code on the date of the 1967 quitclaim.  The Court cannot determine whether the 1967 quitclaim property impermissibly abandoned the right of way, just as the 1956 quit claim may have done.  The parties have not carried their burdens on the interest Madera may have held in the road during these time frames, and in relation to the quit claims which purported to quit claim Madera's interests.

Public Road Significance

Plaintiffs place much significance to Madera's admission that Cascadel Road is a "public" road.  Plaintiffs argue that "[t]he fact that Cascadel Road/the 60 foot Right of Way is a public highway has been admitted by the County of Madera."  (Doc. 134-1, Plaintiff's Motion p.9.)  The confusion plaintiff seems to have is equating a "public" road with that of a "county" road.[18]

Use by the public may be acceptance <u>by the public</u>, but it "does not cast any maintenance or

---

[18]  Plaintiffs summarize Madera's arguments as follows:  It appears as if the County is arguing that it quitclaimed "its" interest in the 1888 Road, despite the Road being public, but did not grant away the public's interest in the Road. But, the two are inseparable, and by "quitclaiming" its interest in the Road, the County gave the public's interest to the Houstons. Further, although the County attempts to make an argument that they only quitclaimed "whatever property interest it may have had in Lot 1," the County has already admitted that this interest was meant to encompass the 60 foot Right of Way offered for dedication by Cascadel Ranch Properties.  (Doc. 158, Plaintiffs' Reply p.3.)

1   liability burden on the County" until the road "has been explicitly accepted <u>by the County</u>."

2   *Hanshaw v. Long Valley Road Assn*, 116 Cal.App.4th at 480 (emphasis in original).   "Although a

3   road is a 'public street' and subject to 'public control,' it need not necessarily be maintained by the

4   local governing entity. All roads over which the public has a right to travel, whether express or

5   prescriptive, are 'public' roads. 'Public' roads, however, are not 'county' roads until accepted as

6   such by appropriate resolution of the board of supervisors.   Streets. & Hy. Code, § 941; *See Hays v.*

7   *Vanek*, 217 Cal.App.3d 271, 284, 266 Cal.Rptr. 856, 862 (1989) (The inference that public use

8   constitutes acceptance of an offer of dedication is dependent in large part on the fact that the public

9   is using the piece of property offered).

10          Without an accepted offer of dedication, the full 60-foot wide easement did not become a

11   county road. Public use may be proof of the roads' acceptance.  *Hanshaw v. Long Valley Road*

12   *Ass'n*, 116 Cal. App. 4th 471, 11 Cal. Rptr. 3d 357 (2004) (The filing of a subdivision map

13   delineating a street thereon is an offer to dedicate the land identified; use of the land so identified by

14   the public for such purposes over a reasonable period of time constitutes an acceptance of the offer

15   so made.)  There is no evidence that Madera ever maintained the Road.  Private roads over which

16   the public has the right to travel are "public" roads, but they do not become county roads until they

17   are accepted by appropriate resolution of the board of supervisors. 45 Op.Atty.Gen. 98.

18          The statutes do not impose an obligation on the County to accept, improve, repair, maintain

19   or exercise any control over the streets shown on the subdivision map until the County, in its

20   discretion, by action of its board of supervisors, should determine to accept such streets as party of

21   the county road system.  *Kern County v. Edgemont Dev. Corp.*, 222 Cal.App.2d 874, 878-879

22   (1964); Sts. & Hy Code § 941 ( no road may become a highway by public use).  The conditional

23   acceptance of the subdivision map does not constitute the streets as part of the county road system.

24   *Kern County*, 222 Cal.App.2d at 879.  A dedication is a mere offer.  *Kern County*, 222 Cal.App.2d at

25   879. See *Copeland v. City of Oakland*, 19 Cal.App.4th 717, 722, 23 Cal.Rptr.2d 719 (1993) (no

26   liability for a road until dedication is unconditionally accepted by public entity).  Thus, while

27   Cascadel Road may be a "public" road, it may not be "county" road, for which Madera has no

28   property interest.

1      It is undisputed that the 1969 Offer of Dedication of a 60 foot road has not been accepted.

2  Plaintiffs' cannot claim that they have a constitutional right in an Offer of Dedication.  This Court

3  has already held, in a motion to dismiss, that plaintiffs' do not have a property interest in an offer of

4  dedication.  (See Doc. 41, August 17, 2009 Order p. 12-13 ("As a matter of law, plaintiffs cannot

5  allege that they have a property interest in the Offer of Dedication."))

6      Nonetheless, here, the Court cannot determine as a matter of law that Madera lacked a

7  property interest in Cascadel Road and acted in some fashion to deprive plaintiff of an easement

8  interest.  The record of title simply is not explained adequately to the Court.  Many of the pertinent

9  documents are illegible.  The parties offer minimal expert testimony of the meaning of terminology

10 shown on deeds or their effect in relation to, for instance, the Subdivision Map Act (Cal.Gov.Code

11 §66410 e seq.), and the prior versions of the Map Act in existence during the history of the road.

12 For instance, the parties jointly submitted testimony of Stephen Jones, a land surveyor, who

13 reviewed deed and maps in relation to the road.  (Doc. 131-1, Jones Decl. Exh. 29.)  He opines as to

14 the effect of certain conveyances:

15      "Research of the records discloses that at the time of the execution of
        the offer of dedication the party making the offer of dedication,
16      Cascadel Ranch Properties, Inc., was not the owner of the Houston
        parcel.  Attached here to as Exhibit A is a copy of the deed divesting
17      Cascadel Ranch Property, Inc. of its ownership of the Houston
        property.  (*Id.* (Emphasis in original.))

18

19 The parties, however, did not attach exhibits referred to in his declaration.  The Court declines to

20 speculate to which exhibits Mr. Jones refer from among the voluminous documents submitted in

21 these three motions.  Further, Mr. Jones does not address the right of way that Cascadel Ranch

22 Properties was granted at the time it made the dedication and what impact on the road dedication this

23 may have had.  (See the 1956 Madera Quitclaim and the 1967 quitclaim.)  As a further example of

24 lack of evidence is Mr. Rasmussen's declaration, even if the Court were to consider the declaration

25 over the objections.  Mr. Rasmussen does not trace the history of the road.  He was retained as an

26

27

28

1    expert to opine as to the physical location of the original 1888 Deed right of way.[19]

2        The Court, at this point, need not resolve the uncertainties of Cascadel Road.  The Court is

3    confident that if the public had a right to a 60 foot road, and it is not clear that it did, that right still

4    exists.  Madera cannot abrogate the public's rights.  However, the Court cannot, on the record

5    presented, determine the extent or location of the public's right and the effect of Madera's

6    conveyances.  This determination will be left to resolution in the quiet title cause of action.

7                    **(D)    Advance Any Legitimate Governmental Purpose**

8        "To state a substantive due process claim, the plaintiff must show as a threshold matter that a

9    state actor deprived it of a constitutionally protected life, liberty or property interest."  *Shanks v.*

10   *Dressel*, 540 F.3d 1082, 1087 (9th Cir.2008) (citing *Action Apartment Ass'n, Inc. v. Santa Monica*

11   *Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007)).  However, the protection from governmental

12   action provided by substantive due process has most often been reserved for the vindication of

13   fundamental rights.  *See Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 812, 127 L.Ed.2d 114

14   (1994) ("The protections of substantive due process have for the most part been accorded to matters

15   relating to marriage, family, procreation, and the right to bodily integrity.").  Where, as here, the

16   plaintiffs rely on substantive due process to challenge governmental action that does not impinge on

17   fundamental rights, "we do not require that the government's action actually advance its stated

18   purposes, but merely look to see whether the government could have had a legitimate reason for

19   acting as it did."  *Halverson v. Skagit County*, 42 F.3d 1257, 1262 (9th Cir. 1994).

20       If deprivation of property is shown, and this Court assumes for purposes of Madera's motion

21   that plaintiff has made this showing, "the 'irreducible minimum' of a substantive due process claim

22   challenging land use action is failure to advance any legitimate governmental purpose."  *Shanks*, 540

23   F.3d at 1088.  In the land use context, "only egregious official conduct can be said to be arbitrary in

24   the constitutional sense: it must amount to an abuse of power lacking any reasonable justification in

25   the service of a legitimate governmental objective."  *Shanks*, 540 F.3d at 1088 (internal quotation

26

27       [19] Mr. Stamas offers his testimony, and prepared maps, of the location and history of Cascadel Road.  From the
     Court's review of Mr. Stamas' testimony, and considering the objections, Mr. Stamas does not have the expertise to describe
     the subdivision maps meanings and interpretations.  The graphic depictions provided by Mr. Stamas were of visual assistance,
28   but the Court cannot rely upon the statements made therein or his interpretations of the Subdivision Maps.

marks omitted); *accord North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 485 (9th Cir.2008) (In order to succeed on their substantive due process claim, plaintiffs "must show that the City's delays in processing its application lacked a rational relationship to a governmental interest.") When determining whether the constitutional line has been crossed, the fact finder should consider "the need for the governmental action in question, the relationship between the need and the action, the extent of harm inflicted, and whether the action was taken in good faith or for the purpose of causing harm." *Plumeau v. School Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir.1997).

Assuming, *arguendo*, that Plaintiffs had a protectable property right, plaintiffs cannot show the deprivation of that interest resulted from an abuse of governmental power of sufficient degree to be deemed a constitutional violation. Entering into the settlement agreement, executing the Madera 2007 Quitclaim, and the Houston Offer of Dedication were not arbitrary and capricious under the Due Process clause. As discussed above, if a public right existed in the roadway, Madera could not quitclaim away the public's right. Madera takes the position, and the Court agrees, that Madera could only quitclaim the interest it possessed in the road, not the public's interests and not the plaintiffs' interest.[20]

Madera has submitted evidence showing that it acted in good faith in an effort to advance legitimate governmental interests. The governmental interest involved was the existence of an uncertain title and rights to a roadway which provided access to residents of the Cascadel Woods subdivision. As shown from the above discussion regarding the roadway, it is entirely uncertain who owns what and to what extend the road exists in its current alignment. In *Shanks,* the court stated that official decisions that rest on an erroneous legal interpretation are not necessarily constitutionally arbitrary. *Shanks*, 540 F.3d at 1089; *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 864 F.2d 1475, 1486 (9th Cir.1989) ("mere errors of judgment, or actions that are mistaken or misguided, do not violate due process"). The governmental interest was Madera's desire to protect a private easement, to protect public safety and keep the peace. Houston/Barlow claims

---

[20] If the 2007 quitclaim operated as a rejection of the 1969 Offer of Dedication, plaintiffs cannot state a constitutional violation of the rejection of the offer of dedication. As stated above and in prior Court orders, plaintiff does not have a constitutional right in the 1969 Offer of Dedication.

ownership to the fee and right of way and threatened to gate the road.  They filed suit to do so.
Madera elected to settle to extract itself from contentious litigation and preserve passage over the
historical road.  This conduct does not show that Madera acted in a constitutionally arbitrary or
irrational manner.

Further, plaintiffs have not shown an illegitimate reason for Madera's actions.  Plaintiff have
not shown bias, prejudice or personal animosity by the County against them or any other illegitimate
reasons for Madera's action.  As to the relevant declarations, plaintiff's "evidence" consists of
Stamas' declaration in which he argues that there was no rational basis for Madera's decisions and
that he had a right to the roadway.  Plaintiffs, however, do not present independent evidence which
would create a genuine dispute as to the defendants' intentions and/or motivations.  Stamas argues
that the Houston Offer of Dedication violates state law and Madera ordinances because it permits a
roadway less than 60 feet wide.  State and local law violations do not rise to a constitutional
violation.  Every state law violation does not give rise to a substantive due process claim:
"substantive due process is not a 'font of tort law' that superintends all official decision making."
*Shanks*, 540 F.3d at 1089.

Stamas cites *Simi Inv. Co., Inc. v. Harris County, Tex.*, 236 F.3d 240 (5th Cir. 2000),
clarified, 256 F.3d 323 (5th Cir.), *cert. denied*, 534 U.S. 1022 (2001) for the proposition that Madera
"irrationally sought to protect and defend the private interests of the Houstons as stipulated in their
privately negotiated Settlement Agreement." (Doc. 147, Plaintiff's opposition p. 13.)  In *Simi*,
plaintiff acquired commercial property which abutted a street.  Plaintiff requested access to the street
via a proposed driveway but was rejected by defendant county on the basis that the narrow strip of
land separating plaintiff's property from the Street was a county-owned park. The district court
granted summary judgment for the plaintiff on the due process claim, which was affirmed on appeal.
The court found that, given the historical evidence of the strip of land, the County had invented the
existence of the park to block the access by plaintiff and benefit other owners. County did not
present evidence that a park had ever been planned and County could not offer any legitimate reason
for blocking the access.  "Measured against the rational basis test, a nonexistent park used by
County officials to interfere with private property interests is clearly arbitrary, capricious, and

1   violative of due process." *Simi*, 236 F.3d at 253-354.

2       Stamas argues that this case is like *Simi* because Madera's "'invention' of an illegitimate

3   non-compliant 'offer of dedication' solely to 'enforce' their newly entered private contract is

4   arbitrary and capricious."  (Doc. 157, Opposition p. 14.)

5       *Simi* is distinguishable.  In *Simi*, the court found that the county had not acted with a rational

6   basis by "inventing" a park to block access to the street by the plaintiffs. Here, the title to the land

7   and to the right of way is disputed and uncertain.  It has been uncertain for longer than plaintiffs

8   have owned their property.  Indeed, there is some evidence that parcel maps submitted in the 1950s

9   were denied because the road was disputed.  The disputed rights to the road over its long history

10  provides a legitimate governmental interest in protecting public access to the road.

11      Given that plaintiff's burden of proof on this claim is "exceedingly high" requiring plaintiff

12  to show that defendants' conduct was irrational, almost egregious and amounted to an abuse of

13  power, the Court finds that plaintiff cannot meet this burden on the evidence before it.

14          **2.    Procedural Due Process**

15      Plaintiffs claim a denial of procedural due process because they were not given notice of the

16  Settlement Agreement and Houston Offer of Dedication which, they contend, would reduce their

17  easement rights and restrict their right to maintain the easement.

18      "To obtain relief on a procedural due process claim, the plaintiff must establish the existence

19  of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by

20  the government; and (3) lack of process.' " *Shanks*, 540 F.3d at 1090.  In *Halverson v. Skagit*

21  *County*, 42 F.3d 1257 (9th Cir.1994), the court pointed out that procedural due process claims do not

22  "deal with the substance of the challenged decisions, but with the process by which they were

23  reached," and further points out that due process of law requires notice and opportunity to be heard

24  before a deprivation.

25      The procedural due process claim hinges upon the existence of deprivation of property

26  rights.  The Court has determined that it cannot rule upon the property right based upon the record

27  before it.  Whether process must have been given depends upon whether a Stamas/Castles property

28  right was involved.

1    It is undisputed that no process was given to Stamas/Castles for the Settlement Agreement

2  and Houston Offer of Dedication.  The County did not provide notice of any sort.  The Settlement

3  Agreement was entered during *Houston v. Madera*, Case No SCV 005012, the Houston/Barlow civil

4  action in Madera County Superior Court against Madera County.  There is no evidence that a good

5  faith settlement was entered in that litigation. Cal.Code Civ.Proc. §877.6.  The Ninth Circuit has

6  held that governmental decisions which affect large areas and are not directed at one or a few

7  individuals do not give rise to the constitutional procedural due process requirements of individual

8  notice and hearing; general notice as provided by law is sufficient.  *Halverson v. Skagit County*, 42

9  F.3d at 1261.  This settlement may fall within this kind of governmental decision or it may not.  On

10  this record, the Court cannot rule as a matter of law that procedural due process was satisfied.

11          **3.        Violation of Equal Protection**

12          A basic requirement for a violation of equal protection is that similarly situated property

13  must have been treated differently.  *Carpinteria Valley Farms, Ltd v. County of Santa Barbara*, 344

14  F.3d 822 (9th Cir. 2003).  Equal protection requires that land use decisions be rationally related to a

15  legitimate governmental purpose.  *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513

16  (1976).  When an equal protection claim is premised on unique treatment rather than on a

17  classification, the Supreme Court has described it as a "class of one" claim. *See Village of*

18  *Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000) (per curiam). To claim a violation

19  of equal protection in a class of one case, the plaintiff must establish that the County intentionally,

20  and without rational basis, treated the plaintiff differently from others similarly situated.  *North*

21  *Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

22          Stamas contends that (1) he was prosecuted for actions while other persons similarly situated

23  were not so prosecuted, (2) he is restricted from maintenance of the road as it passes over Lot 1,

24  while other portions of the road/homeowners do not have such restriction, and (3) the Houston

25  Settlement and Houston Offer of Dedication treat plaintiffs' property differently.  (Doc. 147, Stamas

26  opposition p.16-17.)

27          **(A)        Rational Basis for Prosecution**

28          Where an equal protection claim is based on "selective enforcement of valid laws," a

1   plaintiff can show that the defendant's rational basis for selectively enforcing the law is a pretext for

2   "an impermissible motive." *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1187-88 (9th Cir. 1995).

3   Disparate government treatment will survive rational basis scrutiny "as long as it bears a rational

4   relation to a legitimate state interest." *Patel v. Penman*, 103 F.3d 868, 875 (9th Cir.1996), *cert.*

5   *denied*, 520 U.S. 1240 (1927). Although "[s]elective enforcement of valid laws, without more, does

6   not make the defendants' action irrational," *Freeman*, 68 F.3d at 1188, there is no rational basis for

7   state action "that is malicious, irrational or plainly arbitrary." *Armendariz v Penman*, 75 F.3d 1311,

8   1326 (9th Cir. 1996), *overruled in part on other grounds as stated in Crown Point Dev., Inc. v. City*

9   *of Sun Valley*, 506 F.3d 851, 852-53 (9th Cir.2007) (holding that plaintiff's substantive due process

10  claim was preempted by other constitutional claims).

11        Stamas has not presented evidence suggesting Madera prosecuted him without a rational

12  basis. *Compare Armendariz*, 75 F.3d 1327 (plaintiff raised issue of fact of irrational conduct where

13  defendants were motived to devalue plaintiffs' property and acquire it more economically). As

14  shown above, Stamas was prosecuted for performing road work without proper permits. Madera

15  contends that Stamas was prosecuted under facially neutral Madera County Codes. (Doc. 133-1, p.

16  30.) Stamas acknowledges that the Madera County Codes are facially neutral. (Doc. 147, Stamas

17  opposition p. 16 ("the Codes themselves may be facially neutral, but the County was not neutral in

18  its application of enforcement.")). The Road Commissioner testified that the road work being

19  performed at Stamas' direction was beyond what was considered "routine road maintenance." The

20  Madera ordinance requires permits for the type of work that was performed. Houston/Barlow took

21  photographs, sent them to a deputy County Counsel who independently made the decision to

22  prosecute Stamas for the conduct, after research and some investigation. A governmental body has a

23  rational basis in enforcing its ordinances. *See Armendariz*, 75 F.3d at 1328 ("The City has an

24  obvious interest in preventing safety and sanitation hazards by enforcing the housing code.");

25  *Freeman*, 68 F.3d at 1188 (reasoning that the city reasonably denied a dance permit "for a reason

26  authorized by the city's ordinance").

27        Stamas argues that no one else has been prosecuted for performing road maintenance of the

28  kind with which he was charged. However, he does not present competent evidence on this fact.

36

Stamas offers evidence that the Cascadel Homeowners Association maintained the "road for years," but this evidence does not establish that it was the same road maintenance as was performed by Stamas. "[I]n an equal protection claim based on selective enforcement of the law, a plaintiff can show that a defendant's alleged rational basis for his acts is a pretext for an impermissible motive." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 591 (9th Cir. 2008). Stamas has not shown any malice by Madera or pretext for some other improper reason. He does not present evidence of fraud, bribery, or other improper favoritism. While Stamas argues that the prosecution was to "enforce the Houston Offer of Dedication," the fact remains that prosecution was authorized under Madera's ordinance. Selective enforcement of valid laws, without more, does not make the defendants' action irrational. *Freeman v. City of Santa Ana*, 68 F.3d at 1188 (rejecting argument that selective enforcement of facially valid ordinance denied equal protection); *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) ("the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.")[21]

### (B)   Rational Basis for Restricting Maintenance of the Road

There is a rational basis for restricting road maintenance solely to Houston/Barlow; the road crosses the Houston/Barlow property. Work done on the road has the potential of impacting Lot 1 from various environmental factors. Indeed, Madera has a rational basis for restricting maintenance work in that there is animosity among subdivision residents about the road and keeping the peace among residents is a rational basis for governmental conduct. Multiple lawsuits have arisen because of the road.

Plaintiffs argue that the Settlement Agreement with Houston and the Houston Offer of Dedication prevents others from maintaining, expanding, or improving the easement access to their property. (Doc. 147, Stamas Opposition p. 11.)

---

[21] Stamas relies upon a 2005 letter from Prentice which states, in substance, that the Homeowners' Association has the right to maintain the roadway. The letter does not mention the need to pull permits for road construction. This letter may have been used as a defense to the criminal prosecution, but in this equal protection case, it does not negate the validity of the Madera County ordinance or Madera County's right to enforce its ordinances.

In their opposition papers, plaintiffs do not cite any authority for the proposition that they have a due process right or are protected by an equal protection right for enforcement of easement maintenance rights.  California Civ.Code §845(a) states that an owner of an easement for a private right of way shall maintain it in repair.  Section 845(b) also states that if an easement is owned by more than one person that "the cost of maintaining it in repair shall be shared by each owner of the easement . . ."  Judicial action is authorized if:

> "Any owner of the easement, or any owner of land to which the easement is attached, may apply to any court where the right-of-way is located and that has jurisdiction over the amount in controversy for the appointment of an impartial arbitrator to apportion the cost."

Thus, a civil action is authorized for reimbursement of costs associated with maintaining the easement.  Nothing in §845 authorizes a private right of action.  "A statute creates a private right of action only if the enacting body so intended."  *Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal.3d 287, 305, 250 Cal.Rptr. 116 (1988).

Here, a California law does not recognize a protectable interest in the right to maintain an easement.  Therefore, the Constitution does not acknowledge such a right.

### (C)   Rational Basis for Houston Settlement and Houston Offer of Dedication

Stamas argues that Madera has violated plaintiffs' rights through the Settlement Agreement and related actions with Houston/Barlow.  Madera intentionally and without rational basis treated the plaintiff's property differently from other similarly situated property.  Stamas argues that by the County's actions the plaintiffs' home is the only property with a 12 foot right of way. (Doc. 147, Stamas opposition p. 15, 17.)

In this case, Madera had a legitimate interest in settling a dispute with Houston/Barlow over the disputed area of the road as it runs through the Houston/Barlow property.  As shown above, complicated and legally disputed rights to the road exist.  Houston/Barlow claimed exclusive rights to the underlying fee, as well as to the right of way.  Houston/Barlow also claimed the right to gate the road.  The Settlement Agreement was entered into to solidify the right of unobstructed access for the present-day 12 foot road.  "Private road agreement may be used to maintain public road that

1 have not been accepted into a county road system." *Hanshaw*, 116 Cal.App.4th at 481.  This is a

2 rational basis for Madera's action.

3 **B.      Sixth Cause of Action for Breach of Contract**

4          Madera argues the cause of action for breach of contract must be adjudicated in its favor.

5 Madera notes that it was not a named party to the action against Stamas, and therefore was not a

6 party to a contract.  Madera notes that the "contract" arose from the "settlement" of the criminal

7 action against Mr. Stamas, which was brought by the People of the State of California and not the

8 County of Madera.  Further, Special Deputy District Attorney Herman was acting as a district

9 attorney and has no authority to enter into any contract on behalf of Madera.  (Doc.133-1, Madera

10 P&A p.31.)  Madera argues that no consideration was given because Madera did not receive any

11 benefit from Stamas agreeing not to do any work on the road.[22]

12          Stamas argues that, pursuant to the transcript of the resolution of the criminal action, the

13 parties entered into a "Civil Settlement."  Stamas argues he was promised "fully code compliant

14 access to his property" through the 60-foot easement.  The access has not been performed and

15 plaintiffs have fully performed their obligations.

16          The elements for breach of contract are (1) the existence of a valid contract, (2) plaintiff's

17 performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to the

18 plaintiff.  *McKell v. Washington Mutual, Inc.,* 142 Cal.App.4th 1457, 1489 (2006).  The formation of

19 a binding contract requires: (1) parties capable of contracting; (2) mutual assent; (3) a lawful object;

20 and (4) sufficient consideration. See Cal. Civ.Code. §§ 1550, 1565.

21          **1.      Interpretation of the Language of the Contract**

22          "A settlement agreement is a contract, and the legal principles which apply to contracts

23 generally apply to settlement contracts."  *Weddington Productions, Inc. v. Flick*, 60 Cal.App.4th

24 793, 810-812 (1998).  Contract interpretation is solely a judicial function when "based on the words

25 of the instrument alone, when there is no conflict in the extrinsic evidence, or a determination was

26 ────────────────

27 [22] The Court summarily disposes of this "lack of consideration" argument.   All governmental entities have an
interest in preserving the peace between neighbors and considering the evidence light most favorable to plaintiffs, this is
28 consideration.

made based on incompetent evidence." *See City of Hope Nat. Medical Center v. Genentech, Inc.,* 43 Cal.4th 375, 395, 75 Cal.Rptr.3d 333 (2008).  Absent evidence indicating the parties intended a special usage, words used in a contract should be interpreted in their "ordinary and popular sense." Cal.Civ.Code § 1644.  In determining whether a provision has a "plain meaning," it must be read in the context of the entire contract: "The whole of a contract is to be taken together, so as to give effect to every part ... each clause helping to interpret the other." Cal.Civ.Code § 1641. Terms are to be interpreted "in their 'ordinary and popular sense,' unless used by the parties in a technical sense or a special meaning is given to them by usage.'" *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th 635, 647-648 (2003).

Here, the parties do not contend that any term of the Settlement Agreement is ambiguous. When terms are unambiguous, California law requires that the mutual intention of the parties is to be "inferred, if possible, solely from the written provisions of the contract." *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th at 647-648.  The mutual intention of the contracting parties at the time the contract was formed governs interpretation.  Cal. Civ. Code §1636.  "The parties' mutual intent is to be determined, if semantically possible, *solely* from the written provisions of the contract." *AIU Ins. Co. v. Sup.Ct., FMC Corp.*, 51 Cal.3d 807, 822, 274 Cal.Rptr. 820 (1990).  Therefore, the Court turns to the language used in the Settlement Agreement.

## 2.    The Term "Fully Code Compliant Access"

In stating the civil settlement on the record before the court, the charges were dismissed in exchange that "Mr. Stamas will agree not to do any maintenance personally as an individual on the subject section of property."  (Doc. 131-1, Joint Exh. 38, p.3.)  The agreement provided that Houston/Barlow would maintain that portion of the road: "And the County Roads Commissioner has stated his agreement to contract Mr. Houston, the adjacent property owner, who will perform maintenance on that section of road."   (Doc. 131-1, Joint Exh. 38, p.4.)

In relation to the provision relating to "fully code compliant," the agreement on the record states:

> "Mr. Feigel (Stamas' Attorney): . . .  And if the road maintenance is not correct, [Houston] will work with the County Road Commissioner to make sure that it is fully County road

1       compliant.

2       Mr. Stamas does require and the county has promised
3       to provide him with fully code compliant access to his
        property across subject portion of the property."

4   The Court:      When you say maintenance on property, what do we mean? We are
                    not talking about - -
5
    Mr. Feigel:     Grading roads, taking care of culverts, putting necessary riprap,
6                   removing debris, filling in pot holes, putting rock on the road.

7   The Court:      So repairs or improvements in regard to the physical nature of the
                    property itself?
8
    Mr. Feigel:     Correct.   (Doc. 131-1, Joint Exh. 38, p.4.)
9

10      The term of the agreement related only as to the maintenance of the road. The "civil

11  settlement" was entered in connection with the charges against Stamas for conducting road

12  maintenance in violation of County ordinances.  By the express terms of the agreement, the

13  agreement provides for road maintenance that is fully code compliant.  Stamas was charged

14  criminally for conducting road maintenance which did not comply with the County road

15  maintenance ordinance.  The settlement agreement provides that Stamas could not perform

16  maintenance but that any work performed on the road would comply with the County code.

17      Contrary to Stamas' argument, it would be patently unreasonable for any jury to conclude

18  from the words used in the transcript that the County was promising to alter the dimensions of the

19  road.  The entire subject of the dispute, and all charges against Stamas, involved the proper

20  maintenance of the road, and whether Stamas had performed maintenance in compliance with

21  County ordinances.  The dispute in no fashion involved the dimensions of the road.  There is no

22  statement or reasonable inference to be made that the County was promising to alter the road from

23  12-feet wide to 60-feet wide.  The reasonable interpretation is that Stamas was promised road

24  maintenance that was fully County Code complaint.  It would be an unreasonable interpretation, in a

25  road maintenance criminal case, to interpret the words "fully code compliant" as the County

26  promising to expand a historical, physically existing 12-foot road into a 60-foot roadway.

27      Stamas argues that "Stamas understood the agreement to mean fully code compliant access

28

41

1   all the way to his home."[23]   He then points out the Madera County Code §17.32.010 (right of way

2   minimum requirements) state that the minimum requirement for local road right of way is 60 feet

3   wide.  (Doc. 134-1, Stamas P&A p.12; Doc. 147, Stamas P&A p. 17-18.)

4          What Stamas "understood as the agreement" does not raise an issue of fact.  "California

5   recognizes the objective theory of contracts, [citation], under which '[i]t is the objective intent, as

6   evidenced by the words of the contract, rather than the subjective intent of one of the parties, that

7   controls interpretation.'"  *Cedars–Sinai Medical Center v. Shewry*, 137 Cal.App.4th 964, 980

8   (2006). "The parties' undisclosed intent or understanding is irrelevant to contract interpretation." *Id.*

9   "The existence of mutual consent is determined by objective rather than subjective criteria, the test

10  being what the outward manifestations of consent would lead a reasonable person to believe."

11  *Weddington Productions, Inc.*, 60 Cal.App.4th at 811. When terms are unambiguous, California law

12  requires that the mutual intention of the parties is to be "inferred, if possible, solely from the written

13  provisions of the contract."  *MacKinnon v. Truck Ins. Exchange*, 31 Cal.4th at 647-648;

14  Cal.Civ.Code §1636.  The language used in the context of the criminal proceedings does not lead to

15  any reasonable understanding that the road would be physically expanded from 12-feet to 60-feet as

16  part of the settlement.  "Fully code compliant" was referenced within the context of road

17  maintenance.   That is what Stamas was prosecuted for, failing to perform road maintenance that was

18  fully County code compliant. No reasonable jury could conclude from the transcript that the County

19  was promising to expand Cascadel Road beyond its current physical limits.

20          **3.      Authority to Bind**

21          Madera argues that it was not a party to the "settlement" and Herman had no authority to

22  bind Madera to an expanded road.      Madera notes that it was not a named party to the action

23  against Stamas, and therefore was not a party to a contract.  Madera notes that the "contract" arose

24  for the "settlement" of the criminal action against plaintiffs, which was brought by the People of the

25  State of California and not the County of Madera.  Stamas argues that "Herman was present and

26

27  [23] Mr. Stamas states: "One additional important point was included at my request, that the County would provide
fully code compliant access to my home in exchange. I understood this to mean what it says, a fully  code compliant road
on a fully code compliant right of way, meaning a two lane road on a right of way, sixty feet wide."  (Doc. 152, Stamas Decl.

28  ¶16.)

1    acting as an agent for the County."  (Doc. 147, Stamas P&A p.18.)

2           Plaintiffs have not shown, even if the agreement is as plaintiffs allege, that either Deputy

3    District Attorney Huston[24] or Special Deputy District Attorney Herman could so bind Madera.  No

4    liability is incurred by the principle for acts of the agent beyond the scope of the agent's actual or

5    ostensible authority, and a third party who deals with an agent and knows of the agency is under a

6    duty to ascertain its scope.  *Seneca Ins. Co. v. County of Orange*, 117 Cal.App.4th 611, 13

7    Cal.Rptr.3d 1 (2004).   "One who deals with the public officer stands presumptively charged with a

8    full knowledge of that officer's powers, and is bound at his ... peril to ascertain the extent of his ...

9    powers to bind the government for which he ... is an officer, and any act of an officer to be valid

10   must find express authority in the law or be necessarily incidental to a power expressly granted."

11   *Katsura v. City of San Buenaventura*, 155 Cal.App.4th 104, 65 Cal.Rptr.3d 762 (2007)

12          There is no evidence that either Deputy District Attorney Huston or Special Deputy District

13   Attorney Herman could bind Madera for anything other than what was involved in that litigation at

14   that time - proper road maintenance.  There is no evidence that either Huston or Herman had the

15   authority to bind the County to tear up the road and improve the roadway from a width of 12 feet to

16   that of 60 feet.  There is no evidence that either Huston or Herman could bind the County to road

17   improvements without approval of the Board or other departments with the County.  Thus, even if

18   the agreement is as plaintiffs allege, plaintiffs have not shown that Huston or Herman had the

19   authority to bind Madera.

20                                  **CONCLUSION AND ORDER**

21          For the foregoing reasons, the Court orders GRANTS the motions in part and DENIES the

22   motion in part, as follows:

23          1.     The Court GRANTS the County of Madera's and the Board of Supervisors' Motion

24                 as to the First Cause of Action for Violation of Substantive Due Process and DENIES

25                 the motion as to Procedural Due Process.

26          2.     The Court GRANTS the County of Madera's and the Board of Supervisors' Motion

27   _____

28   [24] Shawn **Huston** is a Deputy District Attorney for Madera County and was one of the attorneys on the criminal
     case.  Defendant Gerald **Houston** is the property owner in the Cascadel Woods Subdivision.

1    as to the Second Cause of Action for Equal Protection.

2        3.    The Court GRANTS Gerald Houston's and Linda Barlow's Motion as to the Third

3              Cause of Action for Malicious Prosecution.

4    /////

5    /////

6    /////

7    /////

8        4.    The Court GRANTS Gerald Houston's and Linda Barlow's Motion as to the Fourth

9              Cause of Action for Slander of Title.

10       5.    The Court GRANTS the County of Madera's and the Board of Supervisors' Motion

11             as to the Fifth Cause of Action for Breach of Contract.

12   IT IS SO ORDERED.

13   **Dated:**   **June 14, 2011**                    **/s/ Lawrence J. O'Neill**
                                          UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

44